ACCEPTED
13-15-00098-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/5/2015 3:24:11 PM
CECILE FOY GSANGER
CLERK

CAUSE NO. 13-15-00098-CV

IN THE THIRTEENTH COURT OF APPEALS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/5/2015 3:24:11 PM
CECILE FOY GSANGER
Clerk

HUDSON INSURANCE COMPANY, Appellant

v.

BRUCE GAMBLE FARMS, JIM GAMBLE FARMS, BRIAN JONES FARMS, AND CROPGUARD GROUP, INC., Appellees

Appealed from the 357th Judicial District Court of
Cameron County, Texas
Cause No.: 2014-DCL-03489-E

BRIEF OF APPELLEES

BRUCE GAMBLE FARMS, JIM GAMBLE· FARMS;· AND
BRIAN JONES FARMS

ADOLFO E. CORDOVA, JR.
State Bar No. 00787287
711 N. Sam Houston
San Benito, Texas 78586
Telephone: (956) 399-1299
Facsimile: (956) 399-4484

ATTORNEY FOR APPELLEES
BRUCE GAMBLE FARMS, JIM GAMBLE FARMS,
AND BRIAN JONES FARMS

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), Appellees, Bruce Gamble Farms, Jim Gamble Farms and Brian Jones Farms, submit the following list of names of all parties to the case, as well as the names and addresses of their respective counsel.

1. Defendant/Appellant:    Hudson Insurance Company

   Counsel:    Steve E. Couch
   State Bar No. 04875650
   Ken E. Kendrick
   State Bar No. 11278500
   Kelly, Sutter & Kendrick, P.C.
   3050 Post Oak Blvd., Suite 200
   Houston, Texas 77056-6570
   Telephone: (713) 595-6000
   Facsimile:   (713) 595-6001

2. Plaintiffs/Appellees:    Bruce Gamble Farms, Jim Gamble Farms, and Brian Jones Farms

   Counsel:    Adolfo E. Cordova, Jr.
   State Bar No.: 00787287
   Law Office of Adolfo E. Cordova, Jr.
   711 North Sam Houston
   San Benito, Texas 78586
   Telephone: (956) 399-1299
   Facsimile:   (956) 399-4484

3. Defendant/ Third Party Plaintiff / Appellee: Cropguard Group, Inc.

Counsel: Norton A. Colvin, Jr.
State Bar No. 04632100
Victor Rodriguez
State Bar No. 24041809
Colvin, Chaney, Saenz & Rodriguez, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Facsimile: (956) 541-2170

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ...........................................i

TABLE OF CONTENTS. .......................................................iii

INDEX OF AUTHORITIES.....................................................iv

RECORD REFERENCES AND PARTY ABBREVIATION ......................ix

STATEMENT OF THE CASE .............................................x

STATEMENT OF JURISDICTION........................................... xi

STATEMENT REGARDING ORAL ARGUMENT.................................. xii

PREAMBLE AND PRELIMINARY STATEMENT.................................. xiii

ISSUES PRESENTED ........................................................ xiv

STATEMENT OF FACTS................................................ 2

SUMMARY OF ARGUMENT............................................... 4

ARGUMENT AND AUTHORITIES ......:..........:........·.............6

CONCLUSION AND PRAYER ......................................... 23

CERTIFICATE OF SERVICE ......................................... 26

INDEX OF AUTHORITIES

Page

CASES:

United States Supreme Court

*AT&T Tech., Inc. v. Commc'ns Workers of Am.,*
    475 U.S. 643, 648, 106 S.Ct. 1415 89
    L.Ed.2d 648 (1986)............................................................16

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 at 944, 115 S.Ct. (1920) ........................ 4, 10, 14, 16

*Gilmer v. Interstate/Johnson Lane Crop.,*
    500 U.S.20, 111 S.Ct. 1647, 114 LED2d 26 (1991) ..........12

*Mitsubishi Motors Corp v. Soler Chrysler-Plymouth,*
    473 U.S. 614 105 S.Ct. 3346, 87 L.Ed.2d 444
    (1985) ......................................................... ...................... 12

*Perry v. Thomas,*
    482 U.S. 483, 493 n. 9, 107 S.Ct.2620 96 LEd2nd
    426 (1987).................................................................. 4

*United Steelworkers v. Warrior & Gulf Nav. Co.-,*
    363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2dn
    1409 (1960)................................................. .................... 16

*Volt Information Sciences, Inc. v. Board of Trustees of*
    *Leland Stanford Junior University*
    489 U.S. 468, 109 S.Ct. 1238, 103 L.Ed.32d 488
    (1989)............................................................................. 11

Federal Appellate Courts

*Fleetwood Enters., Inc. v. Gaskamp,*
    280 F.3d 1069, 1073 (5th Cir. 2002).....................................16

*Texaco Exploration & Prod.* Co. *v. AmC/yde Engineered*
    *Prods.,* Co.,
    243 F3d 906 (5th Cir. 2001) ...............................................11

Federal District Courts

*Mark Newby, et* a/. *v. Enron Corporation, et* a/.,
    391 F.Supp.2d 541 (S.D. Tex. 2005)....................................11

Texas Supreme Court

*Frankiewicz v. Nat'/ Comp.* Assoc.,
    633 S.W.2d 505 (Tex. 1982) ..............................................19

*Hanks v. GAB Bus. Servs., Inc.,*
    644 S.W.2d 707 (Tex. 1982)............................................... 22

*Hoover Slovacek LLP v. Walton,*
    206 S.W.3d 557 (Tex. 2006)...............................................10

*In Re Advance* PCS *Health L.P.,*
    172, S.W.3d, 603 (Tex. 2005)......................................... 4, ·10, 14

*In Re FirstMerit Bank,*
    52 S.W.3d 749 (Tex. 2001)............................................... 10

*In Re Halliburton,*
    80 S.W.3d at 566 (Tex. 2002)..............................................12

*In Re Merrill Lynch & Co., Inc.,*
    315 S.W.3d 888, n. 3 (Tex. 2010)
    (original proceeding)....................................................... xi

*In Re Poly America, L.P.,*
    262 S.W.3d 337 (Tex. 2008) (original proceeding) ..... 4, 10, 12, 14


*In Re Rubiola,*
    334 S.W.3d 220 (Tex. 2011) (original proceeding) ........... 16

*J.M. Davidson, Inc. v. Webster,*
    128 S.W.3d 223 (Tex. 2003) ........................................... 14, 16

*Meyer v. WMCO-GP, LLC,*
    211 S.W.3d 302 (Tex. 2006) ........................................... 14

*Olshan Foundation Repair* Co. *v. Ayala,*
    180 S.W.3d 212 ......................................................... 6, 10

*Patrizi v. McAninch,*
    269 S.W.2d 343 (Tex.1954) ........................................... 18

*Williams v. Williams,*
    569 S.W.2d 867 (Tex. 1979) ......................................... 18, 21, 22

## Texas Court of Appeals

*A/'s Formal Wear of Houston, Inc. v. David Sun,*
    869 S.W.2d 442 (Tex.App.-Houston ]1st Dist] 1993) ........ 17

*American Physicians Serv. Group, Inc. v. Port Lavaca*
    *Clinic* Assoc.,
    843 S.W.2d 675 (Tex.App.-Corpus Christi 1992,
    writ denied)............................................................. 18

*Ameriprise Financial Services, Inc. v. Farias,*
    2013 WL 6175330 at *2 (Tex.App.-Corpus
    Christi-Edinburg 2012, pet. denied) ................................xi

*Cappadonna Elec. Mgmt. v. Cameron Cnty.,*
180 S.W.3d 364 (Tex.App.-Corpus Christi 2005,
no pet) .............................................................. 14

*City of Beaumont v. Int'l Ass'n of Firefighters, Local*
*Union No. 399,*
241 S.W3d 208 (Tex.App.-Beaumont 2007, no pet.) .......... 19

*Jenkens & Gilchrist v. Riggs,*
87 S.W.3d 198, 201 (Tex.App.-Dallas 2002, no pet) .......... 16

*John R. Ray & Sons, Inc. v. Stroman,*
923 S.W.2d 80 (Tex.App.-Houston [14th Dist.] 1996,
writ denied).................................................... 19, 22

*NCR Corp. v. Mr. Penguin Tuxedo Rental & Sales, Inc.,*
663 S.W2d 107 (Tex.App.-Eastland 1983, writ
refd n.r.e) ...................................................... 18

*Pepe Inti's Dev. Co. v. Pub Brewing Co.,*
915 S.W.2d 985, 930 (Tex.App.-Houston [1st Dist.]
1996, no writ) ...................................................16

*Roe v. Ladymon,*
318 S.W.3d 502 (Tex.App.-Dallas 2010, writ denied) ......... 16

*Rogers v. Wolfson,*
763 S.W.2d 922 (Tex.App.-Dallas 1989, writ denied) ......... 19

*Withers-Busby Group v. Surety Indust., Inc.,*
538 S.W.3d 189 (Tex. Civ.App.-Dallas 1976, no writ)......... 18

**STATUTES:**

9 U.S.C. § 2 .......................................................... 4, 10

9 U.S.C. § 16 ..........................................................xi

Federal Arbitration Act Section 51.016 ...........................................xi

Tex. Bus & Com. Code§ 1.201(b)(10) ....................................... 14, 17

Tex. Civ. Prac. & Rem. Code §51.016............................................xi

Texas General Arbitration Act ..................................................... 17, 18

RULES:

Texas Rules of Appellate Procedure 28......................................... 1

Texas Rules of Appellate Procedure 38......................................... 1

REGULATIONS:

None

RECORD REFERENCES AND PARTY ABBREVIATIONS

References in Appelees' Brief are shown as follows:

Appendix: References to Appendix are by notation "App."

Clerk's Record: References to the Clerk's Record fro the Cameron County 357th District Court filings and proceedings are by noting "CR".

Supplemental Clerk's Record: References to the Supplemental Clerk's Records from the Cameron County District Court fiHngs and proceedings are by noting "Supp. CR"

Reporter's Record: Reference to the Reporter's Record reflecting hearings held in the Cameron County 357th District Court are by noting "RR"

The Order: Reference to "the Order", unless otherwise noted, shall refer to the Trial Court's February 23, 2015 Order which denied Hudson Insurance Company's Motion to Compel Arbitration and Motion to Stay; and Hudson Insurance Company's Motion to Compel Arbitration of CropGuard Group, Inc.'s Alleged Third-Party Claims.

"Hudson": References to "Hudson" shall mean Appellant Hudson Insurance Company.

"Plaintiffs": References to "Plaintiffs", unless otherwise noted shall refer to Plaintiffs, Bruce Gamble Farms, Jim Gamble Farms and Brian Jones Farms collectively.

"CropGuard": References to "CropGuard", unless otherwise noted, shall refer to Defendant and Third-Party Plaintiff CropGuard Group, Inc.

STATEMENT OF THE CASE

This case involves claims brought by Plaintiffs Bruce Gamble Farms, Jim Gamble Farms and Brian Jones Farms against Defendants CropGuard Group, Inc. and Hudson Insurance Group which resulted from what Plaintiffs claim was an overcharge of premiums for crop insurance they had with Defendant Hudson Insurance Company for Crop Year 2013. (CR: 13-22) Defendant CropGuard Group, Inc. was the agent for the Plaintiffs and for Defendant Hudson Insurance Company. (CR: 185-188) Defendant Hudson Insurance Company urged arbitration as per an arbitration provision contained on Page 31 of its 40 page crop insurance policy. (CR: 27-170 and Exhibit "A") Plaintiffs objected to the motion claiming that the arbitration provision was un onscionable and that the Plaintiffs had not been provided with the insurance polices which contained said .arbitration provision. (CR: 231-299 and 332-409). Appellees further contend that the subject matter of their claim· is not covered by the terms of the arbitration clause. The trial court denied Defendant Hudson Insurance Company's motion to compel arbitration and this appeal ensued. (CR: 505-506)

## **STATEMENT** OF JURISDICTION

This Court has jurisdiction pursuant to Texas Civil Practice and Remedies Code Section 51.016 and 9 U.S.C. § 16. Specifically, with regard to the Federal Arbitration {"FAA") Section 51.016 authorizes appeals of interlocutory orders in matters subject to the FAA "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.". Tex. Civ. Prac. & Rem. Code § 51.016; 9 U.S.C. § 16; *In ReMerri/1 Lynch & Co., Inc.,* 315S.W.3d 888,891, n. 3 {Tex. 2010) (orig. proceeding); *Ameriprise Financial Services, Inc. v. Farias,* 2013 WL 6175330 at *2 (Tex. App.-Corpus Christi-Edinburg 2012, pet. denied).

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that oral argument would be beneficial to the Court in resolving any questions which it may have. At the same time, Appellees believe that, in view of applicable and controlling law and the evidence of record, it is clear that the Trial Court properly ruled on Hudson's Motion to Compel Arbitration.

## PREAMBLE AND PRELIMINARY STATEMENT

Appellees, after reviewing the crop insurance policy in question, acknowledge that an arbitration clause is contained within the policy. Appellees claim, however, that they did not receive the insurance policy prior to entering the agreement and thus did not contractually agree to said clause. Appellees further state that the clause, as written into the policy, is unconscionable and against public policy; therefore not a "valid" clause (emphasis added) (See Exhibits "8", "C", and "D"). (CR: 231-299 and 332-409). In support of their claims, Appellees note that the policy contains an arbitration clause which limits Appellees statute of limitations time from four years to one year and precludes judicial review until after the parties have submitted to arbitration. (Exhibit "A"). Finally, Appellees believe that the subject matter in controversy does not fall within the purview of the arbitration clause.

## ISSUES PRESENTED

I.  The Trial Court correctly ruled in denying Hudson Insurance Company's Motion to Compel Arbitration of Plaintiffs' claims because Hudson Insurance Company failed to establish that a valid arbitration agreement existed wh'ich was not against public policy and which was not unconscionable.

II.  The Trial Court did not abuse its discretion in failing to compel arbitration under the direct benefits estoppel doctrine.

III.  The Trial Court did not abuse its discretion in failing to compel arbitration against the three Plaintiffs in this case as they did not agree to the terms of the insurance policy contract, specifically, the arbitration provision contained therein.

CAUSE NO. 13-15-00098-CV

IN THE THIRTEENTH COURT OF APPEALS

_____

HUDSON INSURANCE COMPANY, Appellant

v.

BRUCE GAMBLE FARMS, JIM GAMBLE FARMS, BRIAN JONES
FARMS, AND CROPGUARD GROUP, INC., Appellees

_____

Appealed from the 357th Judicial District Court of
Cameron County, Texas
Cause No.: 2014-DCL-03489-E

_____

BRIEF OF APPELLEES

BRUCE GAMBLE FARMS, JIM GAMBLE FARMS, AND
BRIAN JONES FARMS

_____

TO THE HONORABLE THIRTEENTH COURT OF APPEALS:

Pursuant to Texas Rules of Appellate Procedure 28 and 38, Appellees,

Bruce Gamble Farms, Jim Gable Farms and Brian Jones Farms, now file their

Appellees' Brief.

## STATEMENT OF FACTS

Appellees agree that policies for Plaintiffs' crops for year 2013 were issued by Appellant Hudson Insurance Company and that said policies purport to contain an arbitration provision that required the parties to submit to arbitration within one year of a dispute arising from the determination of what Appellees believe was Optional Units planting. (CR: 54-56)

Appellees further agree that Cropguard Group, Inc. was their insurance ·agent with respect to the polices in question and that suit was filed against Hudson Insurance Company and CropGuard Group, Inc. within one year from the date a question arose regarding the premiums charged for insurance by Hudson Insurance Company. (CR: 185-188) .Said suit was for breach of contract, breach of warranties, breach of duty of good faith and fair dealings as well as violations of the Texas Insurance code and DTPA. (CR: 13-22)

Appellees claims are based on a procedural dispute regarding preventive planting for Enterprise Unit type of planting and what procedures were required to fall within said category. (CR: 13-22) The necessary procedures were discussed with CropGuard Group, Inc. prior to the 2013 planting season and Appellees contend they followed said procedures (CR: 13-22) Appellant, Hudson, however, believes that the Appellees failed to

follow the procedures of the plan to qualify as a preventive planting Enterprise Unit which requires one billing method and instead qualified as an Optional Unit type of planting thus allowing them to charge a higher rate for the policy coverage. (CR: 23-26)

Appellees filed suit to determine whether Appellant wrongfully charged a higher amount (CR: 13-22) and Appellant eventually sought to have this issue referred to arbitration. (CR: 27-170) The trial court denied said request and this appeal ensued. (CR: 505).

## SUMMARY OF ARGUMENT

It is Appellees position that the trial court had sufficient information necessary to rule against Hudson's Motion to Compel Arbitration.

Section 2 of the FAA provides in part that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract."* 9. U.S.C § 2 (emphasis added). As such, a contract/agreement will be valid if it meets the criteria of contract law for its state. *In Re Poly-America, L.P.,* 262 S.W.3d 337 (Tex. 2008) (original proceeding) citing *In Re Advance PCS Health L.P.,* 172, S.W.3d. In *First Options of Chicago, Inc. V. Kaplan,* 514 U.S. 938, at 944, 115 S.Ct. 1920 and 9 U.S.C. §2 it was determined that courts must first apply state law with regard to contract formation in determining the validity of an arbitration agreement under FAA. Furthermore,·in *Perryv. Thomas,* 482 U.S. 483, 493 n. 9, 107 S.Ct.2620 96 L.Ed2d 426 (1987) the United States Supreme Court opined that state law is applicable in determining the validity of an agreement to arbitrate. *In Re Poly-America, L.P.,* 262 S.W.3d 337 (Tex. 2008) (original proceeding)

Appellees contend that they were never provided with the insurance policies until after a dispute arose as to the amount of premiums charged by

Appellant. (CR: 231-299 and 332-409). Furthermore, Appellees claim that the controversy in question is not the result of a claim for a loss, but rather a claim based on the calculation of the premium for the type of planting they followed. (CR: 13-22) This type of claim falls outside of the parameters of the arbitration agreement contained in the crop insurance policies. (Exhibit "A")

Additionally, Appellees claim that the arbitration clause contained in the crop policy falls short on conspicuousness and fair notice to them of said clause. (CR: 231-299 and 332-409).

Lastly, Appellees claim that arbitration clause itself is unconscionable in that it shortens Appellees statute of limitations to one year from a four-year statute of limitations.

## ARGUMENT AND AUTHORITIES

### The Standard of Review

Appellees agree with Appellant that the trial court's denial of a motion to compel arbitration is reviewed for an abuse of discretion and that all questions of law are reviewed de novo. *Olshan Foundation Repair* Co. *v. Ayala,* 180 S.W.3d 212 at 214.

Appellees contend that the arbitration provision contained in Hudson Insurance Company's crop insurance policy does not apply to them.

Appellees filed their suit against both Appellant Hudson Insurance Company and .against the Agent, Casey Clipson with CropGuard Group, Inc. (CR: 13-22) Prior to planting their 2013 crops, Appellees, in an attempt to follow proper procedure, inquired from the Agent CropGuard Group, Inc. about the specific requirements for planting a prevented planting Enterprise Unit System. (CR: 13-22) After clarification was obtained from the Agent, the Appellees proceeded to plant based on the specific requirements for prevented planting Enterprise Unit System of planting. (CR: 13-22) The vague language in the policy for planting under a prevented planting Enterprise Unit System is found on pages 23-28, 36 and 37 of the policy under Sections 27 and 34a(4). (Exhibit "A")

After Appellees planted their 2013 crop with the prevented planting Enterprise Unit System requirements, the Appellant Hudson Insurance Company, charged the Appellees a premium based on what appears to be Optional Units planting. (CR: 13-22) Therefore, by not charging the Appellees the preventive planting Enterprise Unity System of planting premium, Hudson charged almost double the premium for insurance. {CR: 13-22) Appellees noticed the error made by Hudson and immediately contacted Agent Casey Clipson with CropGuard Group, Inc. and apprised him of the "mistake". (CR: 13-22) At this point, the Appellees were told by the Agent that Hudson Insurance Company claimed that they had not followed the proper procedure to qualify for the prevented planting Enterprise Unit System and as such were charged a different premium. (CR: 13-22) Appellants, Bruce Gamble Farms, Brian Jones Farms, and Jim Gamble Farms were charged an additional amount of $40,000.00, $84,000.00, and $80,000.00 respectively on their premiums. (CR: 13-22)

The issue, therefore is whether the "procedure", as it pertains to the prevented planting Enterprise Unit System of planting, was properly followed by the Appellees. (CR: 13-22) Appellees contend that they did, however, Appellant Hudson Insurance Company disagreed. (CR: 23-26)

The issue in controversy, therefore, that needs to be resolved is addressed on Page 32 of the policy under Section 20a(1) which states as follows:

"(1) All disputes involving determinations made by us, except those specified in Section 20(d) or (e), are subject to mediation or arbitration. However. if the dispute in any way involves a policy or procedure interpretation. regarding whether a specific policy provision or procedure is applicable to the situation. how it is applicable. or the meaning of any policy provision or procedure. either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400. subpart X or such other procedures as established by FCIC." See copy of insurance policy attached hereto as Exhibit "A". (emphasis added)

The issue at hand involves a "policy or procedure interpretation" i.e. whether the proper method of planting was used by the Appellees in order to qualify for the preventive planting Enterprise Unit system of planting. It appears that the parties have a difference of opinion of what is contained in the policy in this respect, therefore, an interpretation should be sought from FCIC instead of arbitration. (See Exhibit "A" Page 32 §20a(1))

In pursuing and attempting to compel arbitration, the Appellant has failed to follow its own policy provisions since arbitration is not the proper avenue to follow as per the terms of its policy. Had the Appellant followed the proper procedure called for in the policy based on the specifics of Appellees' complaints, arbitration would not be invoked as a means to resolve

the pending dispute. Instead, at best, an interpretation should have been obtained fro the FCIC. (Exhibit "A" at Pg. 32 Section 20a(1))

In the event this Honorable Court decides that Section 20a(1) does not apply to the controversy in question, and that the FCIC does not need to make any determination, Appellees offer the following response to Appellant's Brief.

After Appellant filed its Motion to Compel Arbitration with the trial court, Appellees replied claiming that they were not given a copy of the crop insurance policy in question and that one of them (Bruce Gamble Farms) only received a copy after a dispute arose between the parties. (CR: 496-500) Appellees also contend that having reviewed the arbitration provision, the same is unconscionable and against public policy because it limits Appellees' statutory right to file suit within to one year. (Exhibit "A") Appellees also claim that the inconspicuousness of the arbitration clause also renders the same unconscionable. (CR: 332-409)

## Issue No.1

### I.

### The Trial Court Correctly Ruled in Denying Hudson Insurance Company's Motion to Compel Arbitration of Plaintiffs' Claims Because Hudson Insurance Company Failed to Establish that a Valid Arbitration Agreement Existed Which Was Not Against Public Policy and Which Was Not Unconscionable

The FAA (Federal Arbitration Act) provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. In other words; in order for it to be enforceable, the arbitration agreement must meet the requirements applicable to the state law where the agreement is being enforced. *In Re Poly-America, L.P.,* 262 S.W.3d 337 {Tex. 2008) (original proceeding) citing *In Re AdvancePCS Health L.P.,* 172 SW3d 603, 606 (Tex.2005) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 LED.2d 985 (1995)).

Whether a contract is unconscionable or contrary to public policy is a question of law. *In Re Poly-America, L.P.,* 262 S.W.3d 337 (Tex. 2008) (original proceeding) citing *Hoover Slovacek LLPv. Walton,* 206 S.W.3d 557, 562 (Tex.2006). Unconscionability is a defense to an arbitration agreement. *In Re FirstMerit Bank,* 52 S.W.3d 749, 756 (Tex.2001). The·defense of substantive unconscionability, in particular, must relate to the arbitration portion of the contract not the entire contract or the contract as a whole in order to defeat arbitration. */d.* at 757. The court in *Olshan Found Repair* Co. *v. Ayala,* 180 S.W.3d 212, 215 (Tex.App.-San Antonio 2005, pet. denied) stated that unconscionability refers to an agreement that is unfair because its so one-sided on its term(s). Appellees claim that the arbitration agreement

contained in the crop insurance policy is substantive unconscionable and against public policy because it limits Appellees statutory right to file suit against the Appellant to among other things one year. Furthermore, it allows Appellant to sit back, as in the case at bar, and ignore or put off any claims by Appellees until after the one year lapses, thereby precluding any claims by wronged parties.

In *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford JuniorUniv.,* 489 U.S. 468,479,476, 109 S.Ct. 1248, 103 L.Ed.32d 488 (1989)and *Mark Newby, eta/. v. Enron Corporation, eta/.,* 391 F.Supp.2d 541 (S.D.Tex. 2005) the courts cited the Supreme Court stating that the federal policy that favors arbitration does not override the contractual choices of the parties and no party can be required to submit to arbitration any dispute to which he has not agreed to submit since Arbitration under the FAA is a matter of consent,. not coercion, and parties are generally ·free to structure their arbitration agreements as they see fit". *Id* at 555. Furthermore, the court in *Newby* ruled that even though there is strong federal policy that favors the enforcement of arbitration, arbitration ultimately is a matter of contract that the parties must have expressly agreed to arbitrate before a court can compel said arbitration. *Jd* at Page 561. Citing *Texaco Exploration* & *Prod.* Co. *v. AmC/yde Engineered Prods.* Co., 243 F.3d 906, 909 (5th Cir. 2001). In the

case at bar, the Appellees claim that they did not negotiate the inclusion of an arbitration clause into the contract. The Appellees claim that they were not even provided with a copy of the policy. See Affidavits of Appellees attached hereto as Exhibits "8", "C", and "D" attached hereto and therefore, the most fundamental requirements of a valid contract are not present and therefore the arbitration does not apply.

In *In re Halliburton,* 80 S.W.3d at 572, the court held that an arbitration agreement covering statutory claims is valid as long as it does not waive the substantive rights and remedies that the statute affords and so long as the arbitration procedures are fair. *Id* at 572 Federal courts have noted that contracts are not enforceable when a party is forced to give up substantive rights afforded by statute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). While the FAA preempts state statutes that are inconsistent with its requirement to compel arbitration when its provided for in contract,· it was determined that if the agreement has a waiver of substantive remedies or any part of the agreement is found unconscionable the contract will be declared unenforceable. *In re Poly-America, L.P.,* 262 S.W.3d 337 (Tex., 2008) citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 LEd2d 26 (1991). The *Gilmer* court also mentioned that when a party

agrees to arbitrate a claim he/she/it agrees to submit that claim to arbitral resolution but doesn't necessarily give up his/her/its statutory rights. *Id.* at 628. Therefore, for the above stated reasons, Appellees believe the trial court correctly denied Appellant's Motion to Compel Arbitration.

In addition to failing because fundamental contract requirements were not present, Appellees contend that the arbitration clause found on pages 31-33 of the 40 page policy (Exhibit "A") is unconscionable. The clause itself requires the Appellees to arbitrate within one (1) year of the date Appellant rendered the determination to which the Appellees disagree. Page 32 Section 20b(1) of the crop insurance policy (Exhibit "A"). Furthermore, section 20b(3) found of page 32 of the crop insurance policy goes on to say that after arbitration is completed and if ..."judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered". Thereafter, Section 20e(3) the policy additionally states· "Under no circumstances can you recover any attorney fees or other expenses, or any punitive, compensatory or any other damages". (Exhibit "A" Page 23) Lastly, in a section of the policy that is not contained within the arbitration clause, Section 31 of the policy (Exhibit "A" Page 36) entitled Applicability of State and Local Statutes the policy states "If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy

provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy." {Exhibit "A" Page 36). All of these sections of the crop insurance policy, alone and in concert, are substantively unconscionable and should be ruled unenforceable, unconscionable and contrary to public policy as they do not conform with basic contract law of the State of Texas as required by *In Re Poly-America, L.P.,* 262 S.W.3d 337 {Tex. 2008) {original proceeding); *In Re AdvancePCS Health L.P.,* 172 SW3d 603, 606 {Tex.2005) {citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 {1995)).

A party that attempts to compel arbitration under the TAA must not only establish the existence of a "valid" arbitration agreement, but also the fact that the claim falls within the scope of the agreement. *Meyer v. WMCO-GP, LLC,* 211 S.W.3d 302, 305 (Tex. 2006). According to *Cappadonna Elec. Mgmt. v.. Cameron Cnty.,* 180 S.W.3d 364, 370 (Tex.App.-Corpus Christi 2005, no pet) A court may not order arbitration unless such "valid" agreement exists. (emphasis added). *Id.* at 170 The strong presumption in Texas favoring arbitration does not arise unless a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003).

Appellant Hudson Insurance Company claims that it established that a valid arbitration agreement existed between it and the Appellees. Appellant makes this claim stating that the existence of the arbitration was not contested therefore, since the Appellees did not deny the existence of the arbitration agreement, a "valid" arbitration agreement exists. (CR: 27-170) The fact that an arbitration agreement was contained within the policy is not the issue. Appellees acknowledge that such clause is contained within the 2013 crop insurance policy. Appellees deny, however, that the arbitration clause was agreed to by all parties and that the arbitration clause is "valid" (emphasis added) since the policy in question was not provided to the parties at the time the agreement was entered. (Exhibits "8", "C", and "D").

One of the defenses to the arbitration clause that the Appellees have brought forth is that they were not provided a copy of the insurance policy. (Exhibits "8", "C", and "D"). In Appellant's Motion to Compel Arbitration, Hudson Insurance Company claims that it issued insurance polices to the Plaintiffs which contained the arbitration provision pertinent to its Motion. (CR: 27-170) Plaintiff Bruce Gamble Farms was provided with a copy of the policy, but only after he requested a copy from the local agent, Defendant Crop Guard Group, Inc. (Exhibit "8"). Said request was made after a discord arose as to the calculation of premiums and the method of calculation and this

took place well after the purported policy was paid for and entered into by Defendants.  See copy of Bruce Gamble's Affidavit attached hereto as Exhibit "B". The other two Plaintiffs did not get a copy of the insurance policy ever. See Brian Jones' Affidavit and Jim Gamble's Affidavit attached hereto as Exhibits "C" and "D" attached hereto. As a general rule, a person must sign an arbitration agreement before he or she will be bound by it. *In Re Rubiola,* 334 S.W.3d 220, 224 (Tex. 2011).   In *Roe v. Ladymon,* 318 S.W.3d 502 at 510 (Tex. App. 2010) the court, citing *AT&T Tech., Inc. v. Commc'ns. Workers of Am.,* 475 U.S.643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Nav.* Co., 363 U.S.574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), stat s "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  According to *J.M. Davidson, Inc. v. Webster,* 128 S.W3d 223 citing  *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir.2002) federal policy that favors arbitration does not apply in determining whether a valid agreement to arbitrate exists, but rather ordinary contract principles apply.  Furthermore, according to *Jenkens & Gilchrist v. Riggs,* 87 S.W3d 198, 201 (Tex.App.-Dallas 2002, no pet); *Pepe Inti's Dev.* Co. *v. Pub Brewing* Co., 915 S.W.2d 925, 930 (Tex.App.-Houston [1st Dist.] 1996, no writ); and *First Options of Chicago, Inc. v. Kaplan,* 514 U.S.

938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) which held that when determining whether parties agreed to arbitrate "courts generally ...should apply ordinary state-law principles that govern the formation of contracts". *Id* at 228 Appellants did not agree to the arbitration provision contained in the contract, they were not initially aware of the contract since they were not provided with a copy of the policy containing the arbitration clause. (See Appellants Affidavits attached hereto as Exhibits "8", "C", and "D"). As such, they should not be bound to the arbitration provision o the contract.

Appellees contend that the arbitration provision Defendant Hudson Insurance Company was attempting to enforce is found on Page 32 of a 40 page of a voluminous policy that has additional documents attached to it making it a voluminous document. (A copy of said policy is attached hereto as Exhibit "A"). The Arbitration Provision is not conspicuously depicted as required by the Texas Business and Commerce Code Section 1.201(b)(10) and the Texas General Arbitration Act. It is not identified nor does it appear with a heading in capital letters, bold face, enlarged text, contrasting color, neither underlined nor depicted in any manner so as to apprize the Plaintiffs of the same. In *A/'s Formal Wear of Houston, Inc. v. David Sun,* 869, S.W.2d 442, 444 (Tex.App.-Houston [1st Dist] 1993), the court, citing the Texas General Arbitration Act, stated that the act specifically provides that an

agreement shall not be arbitrated unless the notice that a particular contract is subject to arbitration is "typed in underlined capital letters, or is rubber stamped prominently, *on the first page of the contracf'*. *Id* at 444 Citing Article 224-1, Texas General Arbitration Act (emphasis added). Therefore, since the Texas General Arbitration Act provides the necessary form of an arbitration clause in order for it to be enforceable, those contracts whose clauses to not conform must be found unenforceable. *Id* at 445, citing *Withers-Busby Group v. Surety Indust., Inc.,* 538 S.W.2d 189, 199 (Tex. Civ.App.-Dallas 1976, no writ); *American Physicians Serv. Group, Inc. v. Port Lavaca Clinic Assoc.,* 843 S.W.2d 675, 678 (Tex.App.-Corpus Christi 1992, writ denied); *NCR Corp. v. Mr. Penguin Tuxedo Rental* & *Sales, Inc.,* 663 S.W2d 107, 108 (Tex.App.-Eastland 1983, writ refd n.r.e.).

Appellees cite *Williams v. Williams,* 569, S.W.2d 867, 871 (Tex. 1979); *Hoover Slovacek,* 206 S.W.3d at 565 (citing RESTATEMENT (SECOND) OF CONTRACTS § 208 (1981)) where in it was determined that an unconscionable provision of a contract can be severed from the contract and not necessarily invalidate the entire contract if the provision being severed does not constitute the essential purpose of the contract. *Id* at 555 In looking at whether an unconscionable clause can be severed from a contract the court in *Patriziv. McAninch,* 153 Tex. 389,269 S.W.2d 343, 348 (1954); also

*City of Beaumont v. Int'l Ass'n of Firefighters, Local Union No. 399,* 241 S.W.3d 208, 215 (Tex.App.-Beaumont 2007, no pet.) (citing *Rogers v. Wolfson,* 763 S.W.2d 922, 925 (Tex.App.-Dallas 1989, writ denied)); *John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 86 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (citing *Frankiewicz v. Nat'l Comp. Assoc.,* 633 S.W.2d 505, 507-08 (Tex. 1982)) looked to determine whether or not the parties would have entered into the contract absent the unenforceable provisions. *Id* at 86 In this case, the answer is yes.

Appellees further contend, therefore that a finding of unconscionability by this Honorable Court would not invalidate the entire agreement, but only the arbitration clause.

Furthermore, aside from the unconscionability of the arbitration clause, Appellees deny that their claims fall within the scope of the arbitration provision in question. As mentioned herein above, Appellees believe that their claim is not one that is to be arb!trable as per the provisions of the policy. Section 20a(1) found on Page 32 of the policy, (See copy of policy attached hereto as Exhibit "A"), states that if a dispute arises which involves a policy or procedure interpreting or whether a specific policy provision or procedure is applicable to the situation and how it is applicable, either Appellant or Appellees must obtain an interpretation from FCIC. Exhibit "A", Page 32

Section 20a(1).   This is what Appellees contend   should have been the avenue taken by the Appellant; not arbitration.

## Issue No.2

## II.

## The Trial Court Did Not Abuse Its Discretion in Failing to Compel Arbitration Under the Direct Benefits Estoppel Doctrine

Appellees incorporate all arguments set out herein above and further state that the policy in question insures against crop losses and when losses are suffered, it pays claims to the insured.  The gist of the claim under which the Appellees sue the Appellant stems from Appellant's overcharge of premiums for the policy. (CR: 13-22) Since the logistics of how crop insurance policies work, the Appellees did not have the option of paying an agreed upon premium up front. (Exhibit "A" Pg 4) The way crop insurance works is that the premium is based ·on the type of planting chosen by the insured and the premium is charged after the crops are harvested. (Exhibit "A" Pg 4) A farmer can plant a Basic Unit, Enterprise Unit, Optional Unit, Whole Farm Unit, etc.  The method of planting can be preventive planting or regular crop planting.  In crop year 2013, the Appellees planted crops based on preventive planting Enterprise Unit method of planting. The Appellant took it upon itself to determine what the premium would be without regard to the

method of planting employed by the Appellees. The Appellees attempted to address the wrongfully charged premium, however, the Appellant refused to discuss it and after a suit was filed, attempted to force Appellees into an arbitration that was not agreed to by the Appellees. Appellees contend, therefore, that the arbitration provision in question, even if found enforceable, does not apply to this procedural determination and thus, the trial court correctly denied Hudson's motion to compel arbitration.

## Issue No.3

## III.

### The Trial Court Did Not Abuse Its Discretion in Failing to Compel Arbitration Against the Three Plaintiffs in this Case as They Did Not Agree to the Terms of the Insurance Policy Contract, Specifically, the Arbitration Provision Contained Therein

Appellees deny that they are bound by the arbitration provision simply because they are suing on the contract (crop insurance policies) that contains the arbitration provision. Appellees incorporate all arguments set out herein above and further state that the arbitration provision in question is unconscionable. As found in *Williams v. Williams* 569 S.W.2d 867, 871 (Tex. 1978) and *Hoover Slovacek* 206 S.W.3d at 565 (citing RESTATMENT (SECOND) OF CONTRACTS §208 (1981)) an unconscionable provision of a contract may be severed so long as it does not constitute the essential

purpose of the agreement. *Id* at 871 The arbitration clause contained in the insurance policies in question does not constitute the essential part of the agreement. The essential part of the agreement is that the Appellees' crops would be insured against loss by the policy issued by Appellant Hudson Insurance Company. In order to determine whether the invalid provision of a contract affects the rest of the contract the courts look to see if the remaining provisions of the contract can stand alone and specifically look at the language of the contract itself. *John R. Ray* & *Sons, Inc. v. Stroman,* 923 S.W.2d 80, 86 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (citing *Hanks v. GAB Bus. Servs., Inc.,* 644 S.W.2d 707, 708 (Tex. 1982)). Basically the bottom line is whether the parties would have entered in to the agreement absent the invalid/unenforceable provision (in this case the arbitration clause). In the case at bar, the answer is yes. In *Williams,* 569, S.W.3d at 871, the court allowed the severance of invalid (unconscionable) provisions since they were "only a part of the many reciprocal promises in the agreement" and "did not constitute the main or essential purpose of the agreement" between the parties. Therefore, Appellant's claim that the Appellees are bound by the contract simply by suing on the contract itself must fail and this Honorable Court should uphold the decision from the trial court.

CONCLUSION AND PRAYER

Appellants, Bruce Gamble Farms, Brian Jones Farms, and Jim Gamble Farms have established that there was no "valid" arbitration agreement and they were not provided with a copy of the policy containing the agreement. Even if they had been provided with copies of the policies, the Appellees have shown that the arbitration clause contained within the policies is unconscionable and against public policy and therefore not enforceable. Appellees claim that even if the unconscionable provision were to be severed from the remaining contract, the contract could stand alone and still meet its essential purpose.

Respectfully submitted,

LAW OFFICE OF ADOLFO E. CORDOVA, JR.
711 N. SAM HOUSTON
SAN BENITO, TEXAS 78586
coindarosignol@yahoo.com
(956) 399-1299
(956) 399-4484- FAX

BY:　/s/ Adolfo E. Cordova. Jr.
　　　ADOLFO E. CORDOVA, JR.
　　　STATE BAR #00787287
　　　ATTORNEY FOR APPELLEES
　　　BRUCE GAMBLE FARMS, BRIAN JONES
　　　FARMS, AND JIM GAMBLE FARMS

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, Appellant's counsel, Adolfo E. Cordova, Jr., certifies that Appellees' Brief was computer-generated via a proportionally spaced typed-faces using WordPerfect in 14 pt Arial. This will further certify that, per the computer program, the total word count is 4,718. In accordance with Rule 9.4(1), the total word count does not include the identity of parties and counsel, table of contents, index of authorities, record references and party abbreviation, statement of jurisdiction, statement of the case, statement regarding oral argument, preamble and preliminary statement, issues presented, this certificate of compliance, certificate/proof of service, and Appellant's appendix.

*Is/* Adolfo E. Cordova. Jr.
ADOLFO E. CORDOVA, JR.

## CERTIFICATE OF SERVICE

This is to certify that on the 4th day of June 2015, a true and correct copy of this pleading/documents/motion/instrument was served on counsel of record via as follows:

COLVIN, CHANEY, SAENZ & RODRIGUEZ, L.L.P.
ATTN: NORTON A. COLVIN, JR.
ATTORNEY AT LAW
1201 E. VAN BUREN
BROWNSVILLE, TEXAS 78522

(VIAE-FILE AND CMRRR # 7012 1010 0003 3812 2205)

KELLY, SUTTER, & KENDRICK, P.C.
ATTN: STEVE E. COUCH
ATTORNEY AT LAW
3050 POST OAK BLVD., SUITE 200
HOUSTON, TEXAS 77056-6570

(VIAE-FILE AND CMRRR # 7012 1010 003 3812 2212)

SIGNED THIS THE 4TH DAY OF JUNE, 2015.

*Is/* Adolfo E. Cordova. Jr.
ADOLFO E. CORDOVA, JR.
STATE BAR #00787287
ATTORNEY FOR APPELLEES

CAUSE NO. 13-15-00098-CV

IN THE THIRTEENTH COURT OF APPEALS

---

HUDSON INSURANCE COMPANY, Appellant

v.

BRUCE GAMBLE FARMS, JIM GAMBLE FARMS, BRIAN JONES FARMS, AND CROPGUARD GROUP, INC., Appellees

---

Appealed from the 357th Judicial District Court of
Cameron County, Texas
Cause No.: 2014-DCL-03489-E

---

APPENDIX TO BRIEF OF APPELLEES

BRUCE GAMBLE FARMS, JIM GAMBLE FARMS, AND
BRIAN JONES FARMS

---

ADOLFO E. CORDOVA, JR.
State Bar No. 00787287
711 N. Sam Houston
San Benito, Texas 78586
Telephone: (956) 399-1299
Facsimile: (956) 399-4484

ATTORNEY FOR APPELLEES
BRUCE GAMBLE FARMS, JIM GAMBLE FARMS, AND
BRIAN JONES FARMS

CONTENTS

EXHIBIT / TAB

     A.          2013 CROP INSURANCE POLICY

     B.          AFFIDAVIT OF BRUCE GAMBLE

     C.          AFFIDAVIT OF BRIAN JONES

     D.          AFFIDAVIT OF JIM GAMBLE

# EXHIBIT "A"

## CROP INSURANCE POLICY:.::_:_:.



**SUMMARY OF CHANGES FOR THE COMMON CROP INSURANCE POLICY**
**BASIC PROVISIONS- REINSURED VERSION (11-BR)**
**(Released April 2010)**

The following is a brief description of the changes to the Common Crop Insurance Policy Basic Provisions that will be effective for the 2011 crop year for all crops with a 2011 crop year contract change date on or after April 30, 2010, and for the 2012 crop year for all crops with a 2011 crop year contract change date prior to April 30, 2010. Please refer to the Basic Provisions for complete information.

Provisions have been revised to provide either revenue protection or yield protection for barley, canola and rapeseed, com, cotton, grain sorghum, rice, soybeans, sunflowers, and wheat. Revenue protection provides protection against loss of revenue caused by price changes or low yields or a combination of both (for corn silage and rapeseed, protection is only provided for production losses). Yield protection provides protection for production losses only. Crop Revenue Coverage (CRC), Income Protection (IP), Indexed Income Protection (liP), Revenue Assurance (RA), and Actual Production History (APH) plans of insurance previously available have been discontinued for these crops. A new policyholder must select either revenue protection or yield protection for these crops on their application for insurance. A new application is not required for carry-over policyholders. Carry-over policyholders who insured these crops under any of the discontinued revenue plans of insurance will automatically have revenue protection for the 2011 crop year. Carry-over policyholders who insured these crops under the APH plan of insurance will automatically have yield protection for the 2011 crop year. However, if a carry-over policyholder wishes to change or cancel the coverage that is automatically provided, the change must be made by the sales closing date or the policy must be canceled by the cancellation date. For all other crops covered under these Basic Provisions, the plans of insurance previously available will continue to be available.

For crops for which revenue protection is available, a projected price and a harvest price will be determined in accordance with the Commodity Exchange Price Provisions (CEPP). The CEPP includes the information necessary to derive the projected price and the harvest price including the applicable Commodity Exchange and the relevant futures trading days, if applicable. The CEPP will be available for public inspection on RMA's Web site at http://www.rma.usda.gov/, or a successor Web site, by the contract change date and will also be available in the agent's office. Crops for which revenue protection is not available will continue to use a price election or dollar amount of insurance, as applicable.

For yield protection, the yield protection guarantee will be determined by multiplying the production guarantee by the projected price. The projected price is also used to determine the premium, any replant payment or prevented planting payment, and to value the production to count. The harvest price is not used for yield protection.

For revenue protection, the revenue protection guarantee will be determined by multiplying the production guarantee by the greater of the projected price or the harvest price (if the harvest price exclusion is in effect, the revenue protection guarantee will be determined by multiplying the production guarantee by the projected price). The projected price is used to determine the premium, and any replant payment or prevented planting payment. The harvest price is used to value the production to count.

EXHIBIT "A"

Written agreements will be available under all plans of insurance. However, a written agreement cannot be used to establish revenue protection for a crop where the actuarial documents do not provide coverage for the crop in that State.

An enterprise unit will be available for yield protection and revenue protection. Enterprise units will be available for other plans of insurance only if provided for in the Special Provisions. A whole-fann unit will be available for revenue protection unless limited by the Special Provisions. A whole-farm unit will be available for other plans of insurance only if provided for in the Special Provisions.

Hail and fire coverage may be excluded under all plans of insurance. However, if the policyholder elected a whole-farm unit, hail and fire coverage may only be excluded if allowed by the Special Provisions.

Section 1 - Definitions

Added definitions of "Commodity Exchange Price Provisions (CEPP)," "Cooperative Extension System," "harvest price," "harvest price exclusion." "insurable interest," "Intended acreage report," "organic agricultural experts," "projected price," "revenue protection," "revenue protection guarantee (per acre),.. "RMA's Web site," "verifiable records," "yield protection," and "yield protection guarantee (per acre)."

Revised the definition of "actuarial documents" by removing RMA's Web site address because a new definition for RMA's Web site has been added which includes the Web site address. Also added references to "crop insurance policies" and "prices."

Revised the definition of "agricultural experts" "to reference the "Cooperative Extension System" rather than the "Cooperative State Research, Education and Extension Service."

Revised the definition of "assignment of indemnity" to specify producers may only assign their right to an indemnity to creditors or other persons to whom they have a financial debt or other pecuniary · obligation. The previous definition allowed producers to assign their right to an indemnity to any party of their choice.

Revised the definition of "average yield" to clarify which assigned yields are included when calculating the "average yield." Only the assigned yields determined In accordance with sections 3(f)(1) (failure to provide production report), 3(h)(1) (excessive yields), and 3(i) (second crop planted without double-cropping history on prevented planting acreage) are included. ·

Revised the definition of "catastrophic risk protection" to remove the provision that specified catastrophic risk protection is required before the producer may qualify for certain other USDA program benefits unless they execute a waiver of any eligibility for emergency crop loss assistance in connection with the crop. Also added a provision to specify catastrophic risk protection Is not available with revenue protection.

Revised the definition of "claim for indemnity" to specify it is a form that contains the information necessary to pay the indemnity as specified in the applicable FCIC issued procedures, and complies with the requirements in section 14. Removed the information regarding when the claim must be submitted because this information is already contained in section 14.

Revised the definition of "conventional farming practice" to remove the language referencing "generally recognized by agricultural experts for the area to conserve or enhance natural resources and the environment." This language is included in the definition of "sustainable fanning practice."

Revised the definition of "delinquent debr to specify it will have the same meaning as the term contained in 7 CFR part 400. subpart U.

Revised the definition of "enterprise unir by removing the qualification requirements. These provisions are included in section 34. The definition requires all insurable acreage of the same insured crop in the county insured to be included in one enterprise unit; therefore, all fall or winter and spring types of a crop will be included in one enterprise unit.

Revised the definitions of "generally recognized" and "good farming practices" by removing the phrase "the organic agricultural industry" and adding the phrase "organic agricultural experts" in its place.

Revised the definition of "liability" to specify it is the producers total amount of insurance. value of the production guarantee, or revenue protection guarantee for the unit detennined in accordance with the Settlement of Claim provisions of the applicable Crop Provisions.

Revised the definition of "limited resource fanner" to specify it has the same meaning as the term defined by USDA at http://www.lrftool.sc.egov.usda.gov/LRP-D.htm.

Revised the definition of "policy" by adding the phrase "the Commodity Exchange Price Provisions, if applicable," since these provisions are part of the policy.

Revised the definition of "prevented planting" for clarification. Also added language specifying failure to plant because of uninsured causes such as lack of proper equipment or labor to plant acreage, or use of a particular production method, is not considered prevented planting.··

Revised the definition of aprice election" to specify that a price election is not applicable for crops for which revenue protection is available.

Revised the definition of "production report" to specify supporting records must be in accordance with FCIC approved procedures.

Revised the definition of "share" to add the word "insurable" before the word "interest" and remove the word "percentage."' These changes make the terms in this definition consistent with the new definition of "insurable interest."

Revised the definition of "substantial beneficial interest" to refer to "the applicable State dissolution of marriage laws" rather than "State law" to detennine whether the spouse is considered to have a substantial beneficial Interest in the insured or applicant.

Revised the definition of "void" by removing the phrase "concealment, fraud or misrepresentation (see section 27) because a policy may be void for reasons other than those contained fn section 27.

Revised the definition of "whole-farm unit" by removing the qualification requirements. These provisions are included in section 34. The definition requires all insurable acreage of all the insured crops planted in the county for which whole-farm unit structure is available to be included in one

whole-farm unit; therefore, all fall or winter and spring types of a crop will be included in one whole-farm unit.

Removed the definition of "economic significance" because this definition Is in 7 CFR part 400, Subpart T and in the CAT endorsement. Also replaced the definition of "organic agricultural industry" with the definition of "organic agricultural experts."

Section 2(b)(1)- Clarified that an individual applicant operating as a business may report an Employer Identification Number (EIN), but must also report their Social Security Number (SSN).

Section 2(b)(4)- Revised the provisions to include references to revenue protection, yield protection and percentage of projected price.

Section 2(b)(5) - Added provisions specifying the consequences when an applicant provides an incorrect identification number. The policy will be void if an incorrect SSN or EIN Is not corrected, the producer corrects the SSN or EIN but cannot prove the error was inadvertent, it is determined the incorrect number would have allowed the producer to obtain disproportionate benefits under the crop insurance program, or the producer is determined to be ineligible for insurance or could avoid an obligation or requirement under any State or Federal law.

Section 2(b)(6) - Revised the provisions to specify the substantial beneficial interest (SBI) of an individual's spouse is presumed to be 50 percent. The provisions also specify a policy will be void if the identification number of a person with a SBI was omitted and is not provided, Is incorrect and is not corrected, is corrected but there is no proof the error was inadvertent, it is determined the incorrect number would have allowed the producer to obtain disproportionate benefits under the crop insurance program, or the SBI holder is determined to be ineligible for insurance or it is determined there is an attempt to avoid an obligation or requirement under any State or Federal law.

Section 2(b){7) - Revised the provisions to specify if the policy is void the producer will be required to pay an amount equal to 20 percent of the premium that the producer would otherwise be required to pay.

Section 2(b)(9)- Revised the provisions to specify if SBI holders change after the sales closing date. the application must be revised by the sales closing date for next crop year. However. if the information changes less than 30 days before the sales closing date for the current crop year, the application must be revised by the sales closing date for the next crop year.

Section 2(b)(10)- Revised the provisions to specify if the producer or a person with a SBIIn the producer is not eligible to obtain an SSN or an EIN, the producer must request an assigned number from the insurance provider for the purposes of the policy. If a number cannot be provided for someone with a SBI in the producer, the amount of coverage for all crops on the application will be reduced proportionately by the percentage interest in the producer of such persons.

Section 2(f)(2){i)(A) and {B)- Revised the provisions to specify for policies for which the sales closing date is prior to the tennination date. the policy will terminate for debt for the current crop year even If insurance attached prior to the termination date. Such termination will be considered effective as of the sales closing date and no insurance will be considered to have attached for the crop year.

Section 2(f)(2)(i){D) - Revised to clarify the crop year for which a policy will be terminated for failure to make a payment under any written payment agreement and added an example.

Section 2(g)(1) - Revised the provisions to specify if a married insured dies, disappears, or is judicially declared incompetent. the policy will automatically convert to the name of the spouse if the spouse was listed as having a SBI in the insured and has a share of the crop.

Sections 2(g)(2) and (3)- Revised the provisions to specify if a partner, member, shareholder, etc., of an insured entity, dies, disappears, or is judicially declared incompetent more than 30 days before the cancellation date and such event automatically dissolves the entity, the policy is automatically canceled as of the cancellation date and a new application must be submitted.  If such an event occurs 30 days or less before the cancellation date or after the cancellation date, the policy will continue In effect through the crop year, unless it Is canceled by the cancellation date. and will be automatically canceled as of the cancellation date immediately following the end of the insurance period for the crop year.

Section 2(g)(4) - Revised the provisions to specify if an insured entity is dissolved for reasons other than death. disappearance or judicially declared·incompetence, and such event occurs before the · cancellation date, the policy Is automatically canceled as of the cancellation date. If such event occurs on or after the cancellation date, the policy will continue in effect through the crop year immediately following the cancellation date and be automatically canceled as of the cancellation date · immediately following the end of the insurance period for the crop year.

Section 2(g)(5) - Added a provision requiring a remaining member of an insured person or a beneficiary to advise the insurance provider of a death, disappearance, judicial incompetence, or other event that causes dissolution of an entity.

Section 3 - Revised and refonnatted this section to include references to yield protection, revenue protection. and other plans of insurance.

Section 3(c)(2)- Added a provision specifying the producer's projected price and harvest price for revenue protection will be 100 percent of the projected price and harvest price issued by FCIC.

Section 3(c)(5)- Added provisions specifying what occurs when the projected price or harvest price cannot be calculated in accordance with the CEPP.

Section 4 - Revised the provisions to include references to the CEPP. Also, clarified that the producer may elect to receive documents and changes electronically, if available from the insurance provider.

Section 6(c)(1) - Revised the provisions to specify the acreage report must include the last date the crop was planted for all acreage in the unit planted by the final planting date and the date of planting and the amount of acreage planted per day for acreage planted during the late planting period.  If the producer does not report the number of acres planted in the late planting period on a daily basis, all acres planted in the late planting period will be presumed to have been planted on the last day planting took place in the late planting period.

Section 6(c)(5)- Added provisions regarding inclusion of a land identifier (e.g. legal description, FSA farm serial number or common land unit number. etc.) on the acreage report.

Section 6(d)(3)- Revised provisions regarding acreage measurement requests.

Sedion 6(g) - Removed the provisions that provided for a misreporting information factor when a producer misreported liability in excess of 10 percent of the correct liability. Also added provisions to specify if the producer's share is mlsreported and the share Is under-reported, any claim will be determined using the share the producer reported, or, if the share is over-reported, any claim will be determined using the share the Insurance provider determines to be correct.

Section 9(a) - Revised and reformatted the provisions. Added provisions to specify that insurable acreage must have been planted to an agricultural commodity other than a cover, hay • or forage crop (except com or sorghum silage), unless Insurance is for a hay or forage crop.

Section 10 - Revised and reformatted the provisions. Added provisions to clarify when the acreage or interest of the spouse, child, or household member will be included In the Insured's share. If it is determined that the spouse, child, or other member of the·household has a separate policy but does not have a separate fanning operation, the spouse's, child's, or other person's policy will be void and no premium will be due or no indemnity paid for those policies.

Section 11 - Clarified provisions regarding the end of the insurance period when insurance ends on a portion of a unit.

Section 12(a)- Added provisions to specify any act by any person that affects the yield, quality or price of the insured crop (e.g. chemical drift, fire, terrorism, etc.) is not an insured cause of loss.

Section 12(d)- Added provisions to clarify the inability to prepare the land for irrigation. using the producer's established irrigation method, is a covered cause of loss if the inability Is due to an insured cause of loss specified in the Crop Provisions.

Section 13(a) -Added provisions to specify if the crops to be replanted are in a whole-farm unit, the 20 acres or 20 percent requirement is to be applied separately to each crop to be replanted in the whole-farm unit.

Section 13(c)- Added provisions to specify the Special Provisions may indicate the amount per acre of a replant payment. Also added provisions to specify the Crop Provisions or Special Provisions may indicate actual costs will not be considered when detennining the amount of a replant payment.

Section 14- Reformatted the provisions to Improve readability and eliminate duplication.

Section 14(b) - Clarified that notice of damage or loss of production is required regardless of whether the producer has harvested the crop. Added provisions to specify for revenue protection, if there is no damage or loss of production, the producer must give notice of a revenue loss not later than 45 days after the latest date the last harvest price is released for any crop in the unit.

Section 14(e)- Added provisions specifying that for revenue protection, a claim must be submitted declaring the amount of the producer's loss by the later of 60 days after the latest date the harvest price is released for any crop in the unit or 60 days after the end of the insurance period.

Section 14(j) - Added a provision allowing preliminary indemnity payments to be made for revenue protection prior to the release of the harvest price, if the producer has not elected the harvest price exclusion.

Section 15(b)(1)- Added provisions to specify if the producer fails to provide verifiable records of harvested production. no indemnity will be paid and the producer will be required to return any previously paid indemnity for the unit that was based on an appraised amount of production.

Section 15(1) - Added provisions regarding record requirements for double cropping. When a producer uses their own records of double cropping, the double cropping exemption may be used for any acreage in the producer•s farming operation. However, if another producers records are used. the exemption can only be used for the specific acreage that was previously double cropped. These same changes are included in section 17(f)(4).

Section 17(a)(1)- Moved the provisions regarding "failure to plant when other producers In the area were planting" from this section to section 17(d)(2). These provisions were moved to section 17(d)(2) so they only apply in cases where the cause of foss is not drought related. In a drought situation. some producers may elect to plant anticipating the retum of nonnal precipitation, even though all requirements for a prevented planting payment (extended period of drought. insufficient soil moisture. etc.) have been met.

Section 17(b)(4)- Revised the provisions to specify a producer cannot increase their elected or assigned prevented planting coverage level if a cause of foss that could prevent·planting (even though it is not known whether such cause will actually prevent planting) occurred during the prevented planting insurance period and prior to the time the increase was requested.

Section 17(e)- Reformatted the provisions to improve readability.

Section 17(e)(1)(i) and (ii)- Clarified that a producer will be considered to have planted a crop in one of the last four crop years if their APH database contains actual planted acres.

Section 17(e)(1)(i)(C)- Added provisions regarding increasing eligible irrigated acres when a producer adds irrigation facilities to their own acreage or obtains additional irrigated acreage.

Section 17(e)(1)(ii)(A)(2)- Added provisions allowing a producer to submit an intended acreage report within 10 days of obtaining acreage in a county if the producer did not have ny acreage in the county on or before the sales closing date.

Section 17(f)(1) -Added provisions specifying for a whole-fann unit. the rule requiring 20 acres or 20 percent of the insurable acreage be prevented from being planted is applied separately for each crop.

Section 17(f)(4)(ii) - Revised provisions to require double cropping records of the crop that was prevented from being planted. The previous provisions required double cropping records of the first insured crop.

Section 17(f)(6) - Added provisions to clarify that cover plants seeded. transplanted. or that volunteer more than 12 months prior to the final planting date will be considered pasture or forage that is in place.

Section 17(f)(9) - Clarified provisions regarding proof of inputs to produce the insured crop.

Section 17(h)- Revised provisions to limit prevented planting payments to the amount payable for the crop that was actually prevented from being planted. when there are insufficient eligible acres for the

insured crop, but there are remaining eligible acres for a crop with a higher prevented planting payment amount.

Section 18(c)(3) and (4)- Added provisions indicating if a written agreement is for a county where revenue protection Is not available for the crop. but revenue protection is available for the crop in the State. the written agreement will contain the Information used to establish the projected price and harvest price. as applicable. If revenue protection is not available in the State, but Is available in another State, the written agreement will be for yield protection only and will contain the information needed to determine the projected price.

Section 18(1)-Added provisions specifying the written agreement will be denied unless the insurance provider accepts the written agreement offer.

Section 18(o) - Added provisions to clarify when producers may obtain administrative review or appeal when they disagree with determinations made by FCIC regarding written agreements.

Section 20(d) - Clarified provisions to specify insurance providers will make decisions regarding what constitutes a good farming practice. If a producer disagrees with the insurance provider's decision, they must request a determination from FCIC. If the determination is adverse to the producer. the producer may request reconsideration or file suit against FCIC. The provisions have also been changed to·allow a producer to file suit against FCIC without first seeking reconsideration of FCIC's adverse determination.

Section 20(k)- Moved and clarified provisions previously contained in section 20(a)(1)(iii) regarding any determination made by FCIC that Is a matter of general applicability is not subject to administrative review or appeal. Also added provisions stating the producer must request a determination of non-appealability from the Director of the·National Appeals Division before seeking judicial review.

Section 21 - Revised the example to clarify the length of time production records must be kept. Also added provisions to specify yields that are knowingly misreported may be adjusted. regardless of whether the record retention period has expired.

Section 27(b)- Revised provisions to specify the producer will still be required to pay 20 percent of the premium that the producer would otherwise be required to pay in the event the policy has been voided.

Section 29 - Reformatted the provisions to improve readability. Revised the provisions to specify the producer may assign the producer's right to an indemnity for the crop year only to creditors or other persons to whom the producer has a financial debt or other pecuniary obligation. The producer may be required to provide proof of the debt or other pecuniary obligation before the insurance provider will accept the assignment of indemnity. Each assignment form may contain more than one creditor or other person to whom the producer has a financial debt or other pecuniary obligation. The insurance provider will not be liable for any financial debt or other pecuniary obligation if the producer failed to include such lienholder on the assignment form nor to pay any amount greater than the total amount of indemnity owed under the policy. The assignee may submit the claim for indemnity not later than 30 days after the period for filing a claim has expired.

Section 30 - Removed the provisions and reserved the section because there is no instance where the producer would have a right of subrogation against a third person where the loss would be covered under the policy.

Section 34(a)(1) and (2)- Added provisions to specify enterprise units may be elected only for crops for which revenue protection is available or if allowed by the Special Provisions. Also added provisions to specify whole-farm units may be elected only for crops for which revenue protection is elected and is In effect unless limited by the Special Provisions or if allowed by the Special Provisions.

Section 34(a)(3)(i) - Added provisions to allow a producer to elect an enterprise or whole-farm unit until the spring sales closing date in counties with fall or winter and spring sales closing dates, provided the producer does not have any insured fall planted acreage of the insured crop.

Section 34(a)(4)(i)- Revised the enterprise unit provisions to require at least two sections, section equivalents. FSA farm serial numbers. or units established by written agreement, whichever are the basis for optional units where the Insured acreage is located or are applicable to the Insured acreage. Added provisions to allow a combination of two or more sections, section equivalents, or FSA fann serial numbers, if more than one of these are the basis for optional units where the insured acreage is located or are applicable to the insured acreage (for example, a portion of the acreage is located In an area where sections are the basis for optional units and another portion of the acreage is located in an area where FSA farm serial numbers are the basis for optional units). Also added provisions to allow one section, section equivalent. or FSA farm serial number to qualify for an enterprise unit, based on whichever type of parcel is the basis for optional units where the Insured acreage is located, provided there are at least 660 planted acres of the insured crop in such section, section equivalent. or FSA farm serial number.

Section 34(a)(4)(ii) - Revised the provisions to specify that at least two of the sections, section equivalents, FSA farm serial numbers, or units established by written agreement,·whichever are the basis for optional units where the insured acreage is located or are applicable to the insured acreage, must each have planted acreage that constitutes at least the lesser of 20 acres or 20 percent of the Insured crop acreage in the enterpaise unit. Aleo sdded provisions that if there is planted acreage in more than two sections. section equivalents, FSA farm serial numbers or units established by written agreement, these parcels can be aggregated to form at least two parcels to meet this requirement.

Section 34(a)(4)(vii) - Revised the provisions to specify that if it is discovered on or before the acreage reporting date that the producer failed to qualify for an enterprise unit, basic or optional units will apply based on whichever unit structure the producer reported on their acreage report and qualifies for. If such discovery was made after the acreage reporting date. basic units will be assigned. Similar provisions were added to section 34(a)(5)(v) regarding unit structure that will apply when a producer fails to qualify for a whole-farm unit.

Section 34(a)(5)(i)(C) - Added provisions to specify planted acreage of at least two of the insured crops in a whole-farm unit must each constitute 10 percent or more of the total planted acreage liability of all insured crops in the whole-farm unit.

Section 35 - Restructured the provisions for clarity. Also added provisions specifying how to determine the amount of the actual loss for crops with and without revenue protection.

11-BR
(Released April 2010)

COMMON CROP INSURANCE POLICY
(This is a continuous policy.  Refer to section 2.)



This insurance policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act (Act) (7 U.S.C. 1501 et §!gJ. All provisions of the policy and rights and responsfbDftfes of the parties are specifically subject to the Act. The provisions of the polfcy may not be waived or varied In any way by us, our insurance agent or any other contractor or employee of ours or any employee of USDA unless the policy specifically authorizes a waiver or modification by written agreement. We will use the procedures (handbooks, manuals, memoranda and bulletins), as issued by FCIC and published on RMA's Web site at http:llwww.rrna.usda.gov/ or a successor Web site, in the administration of this policy, Including the adjustment of any loss or claim submitted hereunder. In the event that we cannot pay your loss because we are insolvent or are otherwise unable to perform our duties under our reinsurance agreement with FCIC, your claim will be settled in accordance with the provisions of this policy and FCIC will be responsible for any amounts owed. No state guarantee fund will be liable for your loss.

Throughout this policy, u·and )'our" refer to the named insured shown on the accepted application and 'We," "us,• and "our" refer to the insurance company providing Insurance. Unless the context indicates otherwise, use of the plural form of a word Includes the singular and use of the singular form of the word Includes the plural.

AGREEMENT TO INSURE: In return for the payment of the premium, and subject to all of the provisions of this policy, we agree with you to provide the insurance as stated In this policy. If there Is a conflict between the Act. the regulations published at 7 CFR chapter IV, and the procedures as issued by FCIC, the order of priority is: (1) the Act; (2) the regulations: and (3) the procedures as issued by FCIC, with (1) controlling (2), etc.  If there is a conflict between the policy provisions published at 7 CFR part 457 and the administrative regulations published at 7 CFR part 400, the policy provisions published at 7 CFR part 457 control. If a conflict exists among the policy provisions. the order of priority is: (1) the Catastrophic Risk Protection Endorsement, as applicable; (2) the Special Provisions; (3) the Commodity Exchange Price Provisions, as applicable: (4).the Crop Provisi and15lthese Basic Provisions, with (1) controlfing12), etc.

TERMS AND CONDITIONS
BASIC PROVISIONS

1. Definitions.
Abandon - Failure to continue to care for the crop, providing care so Insignificant as to provide no benefit to the crop, or failure to harvest in a timely manner, unless an Insured cause of loss prevents you from properly caring for or harvesting the crop or causes damage to it to the extent that most producers of the crop on acreage with similar characteristics in the area would not normally further care for or harvest it.

Acreage report - A report required by section 6 of these Basic Provisions that contains. in addition to other required. Information. your report of your share of an acreage of an insured crop in the county, whether insurable or not Insurable.

Acreage reporting date - The date contained in the Special Provisions or as provided In section 6 by which you are required to submit your acreage report.

Act- The Federal Crop Insurance Act (7 U.S.C. 1501 .§1 i§gJ.

Actual Production History (APH) - A process used to determine production guarantees in accordance with 7 CFR part 400, subpart (G).

Actual yield - The yield per acre for a crop year calculated from the production records or claims for indemnities. The actual yield Is determined by dividing total production (which includes harvested and appraised production) by planted acres.

Actuarial documents - The Information for the crop year which is available for public inspection fn your agent's office and published on RMA's Web site and which shows available crop insurance policies, coverage revels, information needed to determine amounts of insurance, prices, premium rates, premium adjustment percentages, practices. particular types or varieties of the Insurable crop, insurab!e acreage, and other related information regarding crop insurance in the county.

Additional coverage - A level of coverage greater than catastrophic risk protection.

Administrative fee - An amount you must pay for catastrophic risk protection, and additional coverage for each crop year as specified in section 7 and the Catastrophic Risk Protection Endorsement.

Agricultural commodity - Any crop or other commodity produced, regardless of whether or not it Is Insurable.

Agricultural experts - Persons who are employed by the Cooperative Extension System or the agricultural departments of universities, or other persons approved by FCIC, whose research or occupation is related to the specific crop or practice for which such expertise is sought.

Annual crop - An agricultural commodity that normally must be planted each year.

Application - The form required to be completed by you and accepted by us before insurance coverage will commence. This form must be completed and filed In your agenrs office not later than the sales closing date of the initial insurance year for each crop for which insurance coverage is requested. If cancellation or termination of Insurance coverage occurs for any reason, including but not limited to Indebtedness, suspension, debarment, disqualification. cancellation by you or us or violation of the controlled substance provisions of the Food Security Act of 1985, a new application must be filed for the crop.  Insurance coverage will not be

provided if you are ineligible under the contract or under any Federal statute or regulation.

Approved yield - The actual production history (APH) yield, calculated and approved by the verifier, used to determine the production guarantee by summing the yearly actual. assigned, adjusted or unadjusted transitional yfelds and dividing the sum by the number of yields contained in the database, which will always contain at least four yields. The database may contain up to 10 consecutive crop years of actual or assigned yields. The approved yield may have yield adjustments elected under section 36, revisions according to section 3, or other limitations according to FCIC approved procedures applied when calculating the approved yield.

Area - Land surrounding the Insured acreage with geographic characteristics, topography, son types and climatic conditions similar to the insured acreage.

Assignment of indemnity - A transfer of policy rights, made on our form, and effective when approved by us in writing, whereby you assign your right to an indemnity payment for the crop year only to creditors or other persons to whom you have a financial debt or other pecuniary obligation.

Average yield - The yield calculated by totaling the yearly actual yields, assigned yields in accordance wJth sections 3{f)(1) (failure to provide production report), 3(h)(1) (excessive yields). and 3(1) (second crop planted without double cropping history on pr$vented planted acreage), and adjusted or unadjusted transitional yields, and dividing the total by the number of yields contained in the database.

Basic unit - All insurable acreage of the insured crop in the county on the date coverage begins for the crop year:
(1)  In which you have 100 percent crop share; or
(2)  Which is owned by one person and operated by another person on a share basis. (Example: If, in addition to the land you own, you rent land from five landlords, three on a crop share basis and two on a cash b Jsis, you would be entitled to four units; one for each crop share lease and one that combines the two cash leases and the land you own.) Land which would otherwise be one unit may. In certain instances, be divided according to guidelines contained in section 34 of these Basic Provisions and In the applicable Crop Provisions.

Buffer zone - A parcel of land, as designated in your organic plan, that separates agricultural commodities grown under organic practices from agricultural commodities grown under non-organic practices, and used to minimize the possibility of unintended contact by prohibited substances or organisms.

Cancellation date - The calendar date specified in the Crop Provisions on which coverage for the crop will automatically renew unless canceled in writing by either you or us or terminated in accordance with the policy terms.

Catastrophic risk protection - The minimum level of coverage offered by FCIC. Catastrophic risk protection is not available with revenue protection.

Catastrophic Risk Protection Endorsement - The part of the crop insurance policy that contains provisions of insurance that are specific to catastrophic risk protection.

Certified organic acreage - Acreage in the certified organic farming operation that has been certified by a certifying agent as conforming to organic standards in accordance with 7 CFR part 205.

Certifying agent - A private or governmental entity accredited by the USDA Secretary of Agriculture for the purpose of certifying a production. processing or handling operation as organic.

Claim for Indemnity - A claim made on our form that contains the information necessary to pay the indemnity, as specified in the applicable FCIC issued procedures, and complies with the requirements In section 14.

Code of Federal Regulations (CFR) - The codification of general and permanent rules published in the Federal Register by the Executive departments and agencies of the Federal Government. Rules published in the Federal Register by FCIC are contained in 7 CFR chapter IV. The full text of the CFR is available In electronic format at http://{www.access.gpo.gov/ or a successor Web site.

Commodity Exchange Price Provisions (CEPP) – A part of the policy that Is used for all crops for which revenue protection is available. regardless of whether you elect revenue protection or yield protection for such crops. This document includes the information necessary to derive the projected price and the harvest price for the tnsured crop, as applicable.

Consent - Approval in writing by us allowing you to take a specific action.

Contract- (See "policy•).

Contract change date • The calendar date by which changes to the policy, if any, will be made available In accordance with section 4 of these Baste Provisions.

Conventional fanning practice - A system or process that is necessary to produce an agricultural commodity. excluding organic farming practices.

Cooperative Extension System - A nationwide network consisting of a State office located at each State's land-grant university, and local or regional offices. These offices are staffed by one or more agricultural experts, who work in cooperation with the Cooperative State Research, Education and Extens£on Service, and who provide infonnatfon to agricultural producers and others.

County - Any county, parish, or other political subdivision of a state shown on your accepted application, including acreage In a field that extends into an adjoining county if the county boundary Is not readily discermble.

Cover crop - A crop generally recognized by agricultural experts as agronomically sound for the area for erosion control or other purposes related to conservation or soil improvement A cover crop may be considered to be a second crop (see the definition of a second crop•).

Coverage - The insurance provided by this policy. against insured loss of production or value, by unit as shown on your summary of coverage.

Coverage begins, date - The calendar date insurance begins on the insured crop, as contained in the Crop Provisions. or the date planting begins on the unit (see section 11 of these Basic Provisions for specific provisions relating to prevented planting).

Crop Provisions - The part of the policy that contains the specific provisions of insurance for each insured crop.

Crop year - The period within which the insured crop is nonnally grown, regardless of whether or not it is actually grown, and designated by the calendar year in which the insured crop Is normally harvested, unless otherwise specified in the Crop Provisions.

Damage - Injury, deterioration, or loss of production of the Insured crop due to insured or uninsured causes.

Days - Calendar days.

Deductible - The amount detennined by subtracting the coverage level percentage you choose from 100 percent For example, If you elected a 65 percent coverage level, your deductible would be 35 percent (100% - 65% == 35%).

Delinquent debt - Has the same meaning as the term defined in 7 CFR part 400, subpart U.

Disinterested third party - A person that does not have any familial relationship (parents. brothers, sisters, chifdren, spouse, grandchifdren, aunts, uncles, nieces, nephews, first cousins, or grandparents, related by blood, adoption or marriage, are considered to have a familial relationship) with you or who will not benefit financially from the sale of the insured crop. Persons who are authorized to conduct quality analysis In accordance with the Crop Provisions are considered disinterested third parties unless there is a familial relationship.

Double crop - Producing two or more crops for harvest on the same acreage in the same crop year.

Earliest planting date - The initial planting date contained in the Special Provisions, which Is the earliest date you may plant an insured agricultural commodity and qualify for a replanting payment if such payments are authorized by the Crop Provisions.

End of Insurance period, date of - The date upon which your crop insurance coverage ceases for the crop year (see Crop Provisions and section 11).

Enterprise unit - AU insurable acreage of the same insured crop in the county in which you have a share on the date coverage begins for the crop year, provided the requirements of section 34 are met.

Field - All acreage of tillable land within a natural or artificial **boundary** roads, waterways, fences, etc.). Different planting patterns or planting different crops do not create separate fields.

Final planting date - The date contained in the Special Provisions for the insured crop by which the crop must initially be planted In order to be insured for the full production guarantee or amount of insurance per acre.

First Insured crop - With respect to a single crop year and any specific crop acreage, the first instance that an agricultural commodity is planted for harvest or prevented from being planted and is insured under the authority of the Act. For example, if winter wheat that Is not insured is planted on acreage that is later planted to soybeans that are insured, the first insured crop would be soybeans. If the winter wheat was insured, it would be the first insured crop.

FSA - The Farm Service Agency. an agency of the USDA, or a successor agency.

FSA farm serial number - The number assigned to the farm by the local FSA office.

Generally recognized - When agricultural experts or organic agricultural experts, as applicable, are aware of the production method or practice and there is no genuine dispute regarding whether the production method or practice allows the crop to make normal progress toward maturity a d produce at least the yield used to determine the production guarantee or amount of insurance.

Good farming practices - The production methods utilized to produce the insured crop and allow it to make normal progress toward maturity and produce at least the yield used to determine the production guarantee or amount of insurance, fnduding any adjustments for late planted acreage. which are: (1) For conventional or sustainable farming practices, those generally recognized by agricuHural experts for the area; or (2) for organic farming practices, those generally recognized by organic agricuHural experts for the area or contained in the organic plan. We may, or you may request us to, contact FCIC to determine whether or not production methods will be considered to be •good fanning practices.•

Harvest price - A price determined In accordance with the Commod"lty Exchange Price Provisions and used to value production to count for revenue protection.

Harvest price exclusion - Revenue protection with the use of the harvest price excluded when determining your revenue protection guarantee. This election is continuous unless canceled by the cancellation date.

Household - A domestic establishment including the members of a family (parents, brothers, sisters, chffdren. spouse, grandchildren, aunts, uncles, nieces, nephews, first cousins. or grandparents, related by blood, adoption or marriage, are considered to be family members) and others who live under the same roof.

Insurable In•rest - Your percentage of the Insured crop that is at financial risk.

Insurable loss - Damage for which coverage is provided under the terms of your poDcy, and for which you accept an indemnity payment.

Insured - The named person as shown on the application accepted by us. This term does not extend to any other person having a share ·or interest in the crop (for example, a partnership, landlord, or any other person) unless specifically Indicated on the accepted application.

Insured crop - The crop in the county for which coverage Is available under your policy as shown on the application accepted by us.

Intended acreage report - A report of the acreage you intend to plant, by crop, for the current crop year and used solely for the purpose of establishing eligible prevented planting acreage, as required In section 17.

Interplanted - Acreage on which two or more crops are planted In a manner that does not permit separate agronomic maintenance or harvest of the insured crop.

Irrigated practice - A method of producing a crop by which water is artificially applied during the growing season by appropriate systems and at the proper times. with the intention of providing the quantity of water

needed to produce at least the yield used to establish the irrigated production guarantee or amount of insurance on the irrigated acreage planted to the insured crop.

Late planted - Acreage initially planted to the insured crop after the final planting date.

Late planting period - The period that begins the day after the final planting date for the Insured crop and ends 25 days after the final planting date, unless otherwise specified in the Crop Provisions or Special Provisions.

Uablllty - Your total amount of Insurance, value of your production guarante. or revenue protection guarantee for the unit determined fn accordance with the Settlement of Claim provisions of the applicable Crop Provisions.

Umited resource farmer - Has the same meaning as the term defined by USDA at htto:/fwww.lrftool.sc.egov.usda.gov/LRP-D.htm.

Native sod - Acreage that has no record of being tilled (determined in accordance with FSA or other verifiable records acceptable to us) for the production of an annual crop on or before May 22, 2008, and on which the plant · cover is composed principally of native grasses, grass-like plants, forbs, or shrubs suitable for grazing and browsing.

Negligence - The failure to use such care as a reasonably prudent and careful person would use under similar circumstances.

Non-contiguous - Acreage of an Insured crop that is separated from other acreage of the same insured crop by land that is neither owned by you nor rented by you for cash or a crop share. However, acreage separated by only a public or private right-of-way, waterway, or an irrigation canal will be considered as contiguous.

Offset - The act of dedudlng one amount from another amount.

Organic agricultural experts - Persons who are employed by the following organizations: Appropriate Technology Transfer for Rural Areas, Sustainable Agriculture ReGearch and Education or the Cooperative Extension System, the agricuHural departments of universities, or other persons approved by FCIC, whose research or occupation is related to the specific organic crop or practice for which such expertise is sought.

Organic crop - An agricultural commodity that is organically produced consistent with section 2103 of the Organic Foods Production Ad of 1990 (7 U.S.C. 6502).

Organic farming practice - A system of plant production practices used to produce an organic crop that is approved by a certifying agent in accordance with 7 CFR part205.

Organic plan - A written plan, in accordance with the National Organic Program published in 7 CFR part 205, that describes the organic farming practices that you and a certifying agent agree upon annually or at such other times as prescribed by the certifying agent.

Organic standards - Standards in accordance with the Organic Foods Production Act of 1990 (7 U.S.C. 6501 ! l seq.) and 7 CFR part 205.

Perennial crop - A plant, bush, tree or vine crop that has a life span of more than one year.

Person - An individual, partnership, association, corporation, estate, trust, or other legal entity, and wherever applicable, a State or a poHtical subdivision or agency of a State. •person• does not include the United States Govemment or any agency thereof.

Planted acreage - Land In which seed, plants, or trees have been placed, appropriate for the insured crop and planting method, at the conect depth, into a seedbed that has been properly prepared for the planting method and production practice.

Polley- The agreement between you and us to Insure an agricultural commodity and consisting of the accepted application, these Basic Provisions, the Crop Provisions, the Special Provisions, the Commodity Exchange Price Provisions, if applicable, other appficable endorsements or options, the actuarial documents for the insured agricultural commodity. the Catastrophic Risk Protection Endorsement, if applicable, and the appDcabfe regulations published In 7 CFR chapter IV. Insurance for each agricultural commodity in each county will constitute a separate policy.

Practical to replant - Our detennfnation, after loss or damage to the insured crop, based on ·all factors, including, but not limited to moisture availabHity, marketing window, condition of the field, and time to crop maturity. that replanting the insured crop wHI allow the crop to attain maturity prior to the calendar date for the end of the insurance period. It Will be considered to be practical to replant regardless of availability of seed or plants, or the input costs necessary to produce the insured crop such as those that would be incurred for seed or plants. irrigation water, etc.

Prairie Pothole National Priority Area .. Consists of specific counties within the States of Iowa, Minnesota, Montana, North Dakota or South Dakota as specified on the RMA Web site at htto:/fwww.rma.usda.gov/, or a · successor Web site, or the Farm Service Agency, Agricultural Resource Conservation Program 2-CRP (Revision 4), dated April 28, 2008, or a subsequent publication.

Premium billing date … The earliast date UJJOn which you will be blUed for insurance coverage based on your acreage report. The premium billing date is contained fn the Special Provisions.

Prevented planting - FaHure to plant the insured crop by the final planting date designated In the Special Provisions for the insured crop in the county, or within any applicable late planting period, due to an insured cause of loss that is general to the surrounding area and that prevents other producers from planting acreage with similar characteristics. Failure to plant because of uninsured causes such as lack of proper equipment or labor to plant acreage, or use of a particular production method, is not considered prevented planting.

Price election - The amounts contained in the Special Provisions, or in an addendum thereto, that is the value per pound, bushel, ton. carton, or other applicable unit of measure for the purposes of determining premium and indemnity under the policy. A price election is not applicable for crops for which revenue protection is available.

Production guarantee (per acre) - The number of pounds, bushels. tons, cartons, or other applicable units of measure determined by multiplying the approved yield per acre by the coverage level percentage you elect.

Production report - A written record showing your annual production and used by us to determine your yield for Insurance purposes In accordance with section 3. The report contains yield infonnation for previous years, including planted acreage and production. This report must be supported by written verifiable records from a warehouseman or buyer of the insured crop, by measurement of farm-stored production, or by other records of production approved by us on an Individual case basis in accordance with FCIC approved procedures.

Prohibited substance - Any biological, chemical, or other agent that is prohibited from use or Is not included fn the organic standards for use on any certified organic. transitional or buffer zone acreage. Lists of such substances are contained at 7 CFR part 205.

Projected price - The price for each crop determined in accordance with the Commodity Exchange Price Provisions. The applicable projected price is used for each crop for which revenue protection is available, regardless of whether you elect to obtain revenue protection or yield protection for such crop.

Replanted crop - The same agricultural commodity replanted on the same acreage as the first insured crop for hatvest fn the same crop year if the replanting is specHically made optional by the policy and you elect to replant the crop and insure it under the policy covering the first insured crop. or replanting is required by the policy.

Replanting - Performing the cultural practices necessary to prepare the rand to replace the seed or plants of the damaged or destroyed insured crop and then replacing the seed or plants of the same crop In the same insured acreage. The same crop does not necessarily mean the same type or variety of the crop unless different types or varieties constitute separate crops or It is otherwise specified in the policy.

Representative sample - Portions of the insured crop that must remain In the field for examination and review by our loss adjuster when making a crop appraisal. as specified in the Crop Provisions. In certain instances we may allow you to harvest the crop and require only that samples of the crop residue be left in the field.

Revenue protection - A. plan of insurance that provides protection agafnst loss of revenue due to a production Joss. price decline or increase, or a combination of both. If the harvest price exclusion Is elected, the insurance coverage provides protection only against loss of revenue due to a production loss. price decfine, or a combination of both.

Revenue protection guarantee (per acre) - For revenue protection only, the amount determined by multiplying the production guarantee (per acre) by the greater of your projected price or your harvest price. If the harvest price exclusion is elected, the production guarantee (per acre) Is only multiplied by your projected price.

RMA's Web site - A Web site hosted by RMA and located at http://(www.rrna.usda.gov/ or a successor Web site.

Sales closing date - A date contained in the Special Provisions by which an application must be filed. The last date by which you may change your crop Insurance coverage for a crop year.

Second crop - WHh respect to a single crop year. the next occurrence of planting any agricultural commodity for hatvest following a first Insured crop on the same acreage. The second crop may be the same or a different agricultural commodity as the first Insured crop, except the tenn does not include a replanted crop. A cover crop, planted after a first insured crop and planted for the purpose of haying, grazing or otherwise hatveSting In any manner or that is hayed or grazed during the crop year, or that is otherwise hatvested Is considered to be a second crop. A cover crop that is covered by FSA's nonfnsured crop disaster assistance program (NAP) or receives other USDA benefits associated with forage crops will be considered as planted for the purpose of haying. grazing or otherwise hatvestfng. A crop meeting the conditions stated herein will be considered to be a second crop regardless of whether or not It Is · Insured. Notwithstanding the · references to haying and grazing as hatvesting fn these Basic Provisions. for the purpose of determining the end of the insurance period, hatvest of the crop will be as defined In the applicable Crop Provisions.

Section - For the purposes of unit structure, a unit of measure under a rectangular survey system describing a tract of land usually one mile square and usually containing approximately 640 acres.

Share - Your insurable interest in the insured crop as an owner, operator, or tenant at the time insurance attaches. However, only for the purpose of determining the amount of indemnity. your share will not exceed your share at the earlier of the time of loss or the beginning of harvest.

Special Provisions - The part of the poDcy that contains specific provisions of Insurance for each Insured crop that may vary by geographic area.

State - The state shown on your accepted appfication.

Substantial beneficial Interest - An Interest held by any person of at least 10 percent in you (!&. there are two partnerships that each have a 50 percent interest In you and each partnership is made up of two individuals, each with a 50 percent share in the partnership. In this case, each individual would be considered to have a 25 percent interest in you, and both the partnerships and the individuals would have a substantial beneficial interest in you. The spouses of the individuals would not be considered to have a substantial beneficial interest unless the spouse was one of the Individuals that made up the partnership. However. if each partnership is made up of six individuals with equal interests. then each would only have an 8.33 percent interest in you and although the partnership would still have a substantial beneficial interest in you, the individuals would not for the purposes of reporting In section 2). The spouse of any individual apptrcant or individual Insured will be presumed to have a substantial beneficial interest in the applicant or insured unless the spouses can prove they are legally separated or otheiWise legally separate under the applicable State dissolution of marriage laws. Any child of an individual applicant or individual insured will not be considered to have a substantial beneficial

interest In the appficant or insured unless the chHd has a separate legal interest in such person.

Summary of coverage .. Our statement to you, based upon your acreage report, specifying the insured crop and the guarantee or amount of insurance coverage provided by unit.

Sustainable fanning practice .. A system or process for producing an agricultural commodity, excluding organic farmfng practices, that Is necessary to produce the crop and is generally recognized by agricultural experts for the area to conserve or enhance natural resources and the environment.

Tenant- A person who rents land from another person for a share of the crop or a share of the proceeds of the crop (see the definition of ·share• above).

Termination date- The calendar date contained in the Crop Provisions upon which your Insurance ceases to be in effect because of nonpayment of any amount due us under the policy, including premium.

nlled .. The termination of existing plants by plowing, disking, buming, application of chemicals. or by other means to prepare acreage for the production of an annual crop.

nmely planted - Planted on or before the final planting date designated fn the Special Provisions for the insured crop in the county.

Transitional acreage - Acreage on which organic farming practices are being followed that does not yet qualify to be designated as organic acreage.

USDA - United States Department of Agriculture.

Verifiable records - Has the same meaning as the term defined in 7 CFR part 400, subpart G.

Void - When the policy is considered not to have existed for a crop year.

Whole-farm unit - All insurable acreage of all the· insured crops planted in the county in which you have a share on the date coverage begins for each crop for the crop year and for which the whole-farm unit structure is available In accordance with section 34.

Written agreement - A document that alters designated terms of a policy as authorized under these Basic Provisions. the Crop Provisions. or the Special Provisions for the insured crop (see section 18).

Yield protection - A plan of insurance that only provides protection against a production foss and is available only for crops for which revenue protection is available.

Yield protection guarantee (per acre) - When yield protection is selected for a crop that has revenue protection available, the amount determined by multiplying the production guarantee by your projected price.

2. Life of Polley, Cancellation, and Termination.
   (a) This is a continuous policy and will remain in effect for each crop year following the acceptance of the original application until canceled by you in accordance with the terms of the policy or terminated by operation of the terms of the poJicy or by us. In accordance with section 4, FCIC may change the coverage provided from year to year.
   (b) With respect to your application for insurance:
      (1) You must include your social security number (SSN) if you are an individual (if you are an

individual applicant operating as a business, you may provide an employer Identification number (EIN) but you must also provide your SSN); or
   (2) You must include your EIN if you are a person other than an Individual;
   (3) In addition to the requirements of section 2(b)(1) or (2), you must Include the following for all persons who have a substantial beneficial Interest in you:
      (I) The SSN for IndMduals; or
      (II) The EIN for persons other than individuals and the SSNs for all individuals that comprise the person wHh the EIN if such individuals also have a substantial beneficial interest In you:
   (4) You must include:
      (i) Your election of revenue protection, yield protection, or other available plan of insurance; coverage level; percentage of price elecUon or percentage of projected price, as applicable; crop. ·type, variety, or class; and any other material information required on the application to insure the aop; and
      (ii) All the infonnatfon required in section 2(b)(4)(1) or your application will not be accepted and no coverage will be provided;                              ·
   (5) Your application will not be accepted and no insurance wiD be provided for the year of application if the applfcatfon does ·not contain your SSN or EIN. If your application contains an incorrect SSN or EIN for you, your application will be considered not to have been accepted, no insurance will be provided for the year of application and for any subsequent' crop years, as applicable, and such policies will be void if:
      (i) Such r:aumber Is not corrected by you; or
      (ii) ·  You correct the SSN or EIN but:
         (A) You cannot prove that any error was inadvertent (Simply stating the error was inadvertent Is not sufficient to prove the error was inadvertent); or
         (B) It Is determined that the incorrect number would have allowed you to obtain disproportionate benefits under the crop Insurance program, you are detennined to be ineligible for insurance or you could avoid an obligation or requirement under any State or Federal law:
   (6) With respect to persons with a substantial beneficial interest in you:
      (i) The insurance coverage for all crops included on your application wm be reduced proportionately by the percentage interest in you of persons wHh a substantial beneficial interest In you (presumed to be 50 percent for spouses of individuals) if the SSNs or EINs of such persons are included on your application, the SSNs or EINs are correct. and the persons with a substantial

beneficial interest in you are ineligible for insurance;

(ii) Your policies for all crops included on your application, and for all applicable crop years, wm be void if the SSN or EIN of any person with a substantial beneficial Interest in you is incorrect or is not included on your application and:

(A) Such number is not corrected or provided by you, as appDcable;

(B) You cannot prove that any error or omission was inadvertent (Simply stating the error or omission was inadvertent is not sufficient to prove the error or omission was inadvertent); or

(C) Even after the correct SSN or EIN is provided by you, it Is determined that the incorrect or omitted SSN or EIN would have. allowed you to obtain disproportionate benefits under the crop insurance program, the person with a substantial beneficial interest in you Is determined to be ineligible for insurance. or you *or* the person with a substantial beneficial interest In you could avoid an obDgation or requirement under any State or Federal law; or

(iii) Except as provided in sections 2(b)(6)(ii)(B) and (C), your policies will not be voided if you subsequently provide the correct SSN or EIN for persons with a substantial beneficial Interest In you and the persons are eligible for insurance;

(7) When any of your policies are void under sections 2(b)(5) or (6):

(f) You must repay any indemnity, prevented planting payment or aeplant payment that may have been paid for all applfcable crops and crop years;

01) Even though the policies are void, you will still be required to pay an amount equal to 20 percent of the premium that you would otherwise be required to pay; and

(Iii) If you previously paid premium or administrative fees, any amount In excess of the amount required in section 2(b)(7)0i) will be returned to you;

(8) Notwithstanding any of the provisions in this section. if you certify to an incorrect SSN or EIN, or receive an Indemnity, prevented planting payment or replant payment and the SSN or EIN was not correct, you may be subject to civil, criminal or administrative sanctions;

(9) If any of the information regarding persons with a substantial beneficial interest in you changes after the sales closing date for the previous crop year, you must revise your application by the sales closing date for the current crop year to reflect the correct information. However, If such information changed less than 30 days before the sales closing date for the current crop year, you must revise your application by the sales closing date for the next crop year. If you fail to provide the required revisions, the provisions in section 2(b)(6) wm apply; and

(10) 1f you are, or a person with a substantial beneficial Interest in you is. not eligible to obtain a SSN or EIN, whichever Is required, you must request an assigned number for the purposes of this policy from us:

(i) A number will be provided only If you can demonstrate you are, or a person with a substantial beneficial interest In you is, eligible to receive Federal benefits;

Oi) If a number cannot be provided for you in accordance with section 2(b)(10)(i), your application wiD not be accepted; or

(iii) If a number cannot be provided for any person with a substantial beneficial Interest in you fn · accordance with section 2(b)(10)0), the amount·of coverage for all crops on the appUcation will be reduced proportionately by the percentage interest of such person in you.　·

(c) After acceptance of the application,· you may not cancel this policy for the initial aop year. Thereafter, the poffcy wfll continue in force for each succeeding crop year unless canceled or terminated as provided below.

(d) Either you or we may cancel this policy after the initial crop year by providing written notice to the other on or before the cancellation date shown in the Crop Provisions.

(e) Any amount due to us for any policy authorized under the Act will be offset from any indemnity or prevented planting payment due you for this or any other crop Insured with us under the authority of the Act.

\1) Even if your daim has not yet been paid, you must still pay the premium and administrative fee on or before the termination date for you to remain eligible for Insurance.

(2) If we offset any amount due us from an Indemnity or prevented planting payment owed to you, the date of payment for the purpose of determining whether you have a delinquent debt will be the date that· you submit the daim for indemnity in accordance with section 14(e) (Your Duties).

(f) A delinquent debt for any policy will make you ineligible to obtain aop insurance authorized under the Ad for any subsequent crop year and result in termination of all policies in accordance with section 2(f)(2).

(1) With respect to Ineligibility:

(i) Ineligibility for crop insurance will be effective on:

(A) The date that a policy was terminated In accordance with section 2(f)(2) for the crop for which you failed to pay premium, an administrative fee, or any related Interest owed, as applicable;

(B) The payment due date contained in any notification of indebtedness for any overpaid indemnity, prevented planting payment or replanting payment. if you fail to pay the amount owed, including any related interest owed, as applicable, by such due date:

(C) The termination date for the crop year prior to the crop year In which a scheduled payment is due under a written payment agreement if you fall to pay the amount owed by any payment date in any agreement to pay the debt; or

(D) The termination date the poficy was or would have been terminated under sections 2(f}(2)(i)(A), (B) or (C) if your bankruptcy petition is dismissed before discharge.

(D) If you are inefigible and a policy has been terminated in accordance with section 2(f)(2), yeu will not receive any indemnity, prevented planting payment or replanting payment, If applicable, and such ineligibility and termination of the policy may affect your eligibility for benefits under other USDA programs. Any indemnity, prevented planting payment or replanting payment that may be owed for the policy before it has been terminated will remain owed to you, but may be offset in accordance with section 2(e), unless your policy was terminated in accordance with sections 2(f)(2)(1)(A), (B), (D) or (E).

(2) With respect to termination:
(i) Termination will be effective on:
(A) For a policy with unpaid administrative fees or premiums, the termlnatiol'l data immediately subsequent to the billing date for the crop year (For policies for which the sales closing date is prior to the termination date, such policies will terminate for the current crop year even if insurance attached prior to the termination date. Such termination will be considered effective as of the sales closing date and no insurance will be considered to have attached for the crop year and no indemnity, prevented planting or replant payment will be owed);

(B) For a policy with other amounts due, the termination date Immediately following the date you have a delinquent debt (For policies for which the sales closing date is prior to ·the termination date, such policies will terminate for the current crop year even if insurance attached prior to the termination date. Such termination will be considered effective as of the sales closing date and no insurance will be

considered to have attached for the crop year and no indemnity, prevented planting or replant payment will be owed);

(C) For an other policies that are Issued by us under the authority of the Act, the termination date that coincides with the termination date for the policy with the delinquent debt or, if there is no coincidental termination date, the termination date Immediately following the date you become inellgib!e;

(D) For execution of a written payment agreement and failure to make any scheduled payment, the termination date for the crop year prior to the crop year In which you failed to make the scheduled payment (for this purpose only, the crop year will start the day after the termination date and end on the next termination date,· !dJu if the termination date Is November 30 and you fail to make a payment on November 15, 2011, your policy will terminate on November 30, 2010, for the 2011 crop year); or

(E) For dismissal of a bankruptcy petition before discharge, the termination date the policy was or would have been terminated under sections 2(f)(2)Q)(A), (B) or (C).

(ii) For all porfcies terminated under sections 2(f)(2)(i)(A), (B), (D) or (E), any indemnities, prevented planting payments or replanting payments paid subsequent to the termination date must be repaid.

(iii) Once the policy is terminated it cannot be reinstated for the current crop year unless the termination was in error. Failure to timely pay because of illness, bad weather, or other such extenuating circumstances Is not grounds for reinstatement In the current year.

(3) To regain eligibility, you must:
(i) Repay the delinquent debt In full;
(ii) Execute a written payment agreement and make payments in accordance with the agreement rNe will not enter Into a written payment agreement with you if you have previously failed to make a scheduled payment under the terms of any other payment agreement with us or any other insurance provider); or
(Iii) Flte a petition to have your debts discharged in bankruptcy (Dismissal of the bankruptcy petition before discharge wiD terminate all poflcies in effect retroactive to the date your policy would have been terminated in accordance with section 2(f)(2)(i)).

(4) After you become eligible for crop insurance, if you want to obtain coverage for your crops, you

must submit a new application on or before the sales closing date for the crop (Since applications for crop insurance cannot be accepted after the sales closing date, if you make any payment after the sales closing date, you cannot apply for insurance until the next crop year).

(5) For example, for the 2011 crop year, if crop A, wHh a termination date of October 31, 2010, and crop B, with a termination date of March 15, 2011, are insured and you do not pay the premium for crop A by the termination date, you are ineligible for crop insurance as of October 31,2010, and crop A's policy is terminated as of that date. Crop B's policy does not terminate until March 15, 2011, and an indemnity for the 2010 crop year may still be owed. If you enter into a written payment agreement on September 25, 2011, the earliest date by which you can obtain crop insurance for crop A is to apply for crop insurance by the Odober 31, 2011, sales closing date and for crop B Is to apply for crop insurance by the March 15, 2012, sales closing date. If you faD to make a payment that was scheduled to be made on April 1, 2012, your policy will terminate as of October 31, 2011, for crop A, and March 15, 2012, for crop B, and no Indemnity, prevented planting payment or replant payment will be due for that crop year for either crop. You will not be eligible to apply for crop insurance for any crop until after the amounts owed are paid in full or you file a petition to discharge the debt in bankruptcy.

(6) If you are determined to be ineligible under section 2(f), persons with a substantial beneficial interest in you may also be ineligible until you become eligible again.

(g) In cases where there has been a death, disappearance, judicially declared incompetence, *or* dissolution of any insured person:

(1) If any married indMdual insured dies, disappears, or is judicially declared Incompetent, the named insured on the policy will automatically convert to the name of the spouse if:

(i) The spouse was included on the policy as having a substantial beneficial Interest in the named insured; and

(ii) The spouse has a share of the crop.

(2) The provisions in section 2(g)(3) will be applfcable if:

(i) Any partner, member, shareholder, etc•• of an Insured entity dies, disappears, or is judicially declared incompetent, and such event automatically dissolves the entity; or

(ii) An individual, whose estate is left to a beneficiary other than a spouse or left to the spouse and the criteria in section 2(g)(1) are not met, dies, disappears, or is judicially declared incompetent.

(3) If section 2(g)(2) applies and the death, disappearance, or judicially declared incompetence occurred:

(i) More than 30 days before the cancellation date, the policy is automatically canceled as of the cancellation date and a new application must be submitted; or

(ll) Thirty days or less before the cancellation date, or after the cancellation date, the polfcy wHI continue in effect through the crop year immediately following the can.cellation date and be automatically canceled as of the cancellation date Immediately following the end of the Insurance period for the crop year, unless canceled by the cancellation date prior to the start of the insurance period:

(A) A new application for insurance must be submitted prior to the sales dosing date for coverage for the subsequent crop year; and

(B) Any fndetnnlty, replant payment or prevented planting payment will be paid to the person or persons detennfned to be beneffciaDy entiUed to the payment and such person or persons must comply with all policy provisions and pay the premium.

(4) If any insured entity fs dissolved for reasons other than death, disappearance, or judicially declared incompetence:

(i) Before the cancellation date, the policy is automatically canceled as of the cancellation date and a · new application must be submitted; or

(ii) On or after the cancellation date, the policy will continue In effed through the crop year immediately following the cancellation date and ba automatically canceled as of the cancellation date immediately following the end of the insurance period for the crop year, unless canceled by the· cancellation date prior to the start of the ·insurance period:

(A) A new application for Insurance must be submfUed prior to the sales closing date for coverage for the subsequent crop year; and

(B) Any indemnity, replant payment or prevented planting payment will be paid to the person or persons determined to be beneficially entitled to the payment and such person or persons must comply with all policy provisions and pay the premium.

(5) If secUon 2(g)(2) or (4) applies, a remaining member of the insured person or the beneficiary is required to report to us the death, disappearance, judicial incompetence, or other event that causes dissolution not later than the next cancellation date, except if section 2(g)(3)(ii) applies. notice must be provided by

the cancellation date for the next crop year. If notice is not provided timely, the provisions of section 2(g)(2) or (4) will apply retroactive to the date such notice should have been provided and any payments made after the date the policy should have been canceled must be returned.

(h) We may cancel your policy if no premium is earned for 3 consecutive years.

(Q) The cancellation and termination dates are contained In the Crop Provisions.

(0) When obtaining catastrophic, or additional coverage, you must provide information regarding crop insurance coverage on any crop previously obtained at any other local FSA office or from an approved insurance provider, including the date such insurance was obtained and the amount of the administrative fee.

(k) Any person may sign any document relative to crop insurance coverage on behalf of any other person covered by such a policy, provided that the person has a properly executed power of attorney or such other legally sufficient document authorizing such person to sign. You are still responsible for the accuracy of all Information provided on your behalf and may be subject to the consequences in section 6(g), and any other applicable consequences, if any information has been misreported.

3. Insurance Guarantees. Coverage Levels, and Prices.

(a) Unless adjusted or Umited fn accordance with your policy, the production guarantee or amount of insurance, coverage level, and price at which an indemnity will be determined for each unit will be those used to calculate your summary of coverage for each crop year.

(b) With respect to the insurance choices:
(1) For all acreage of the insured crop in the county, unless one of the conditions In section 3(b)(2) exists, you must seiad the same:
(i) Plan of insurance (§.&. yield protection, revenue protection, actual production history. amount of insurance, etc.);
(ii) Level of coverage (all catastrophic risk protection or the same level of additional coverage); and
(iii) Percentage of the available price election, or projected price for yield protection. For revenue protection, the percentage of price is specified in section 3(c)(2). If different prices are provided by type or variety, insurance will be based on the price provided for each type or variety and the same price percentage will apply to all types or varieties.
(2) You do not have to select the same plan of insurance, level of coverage or percentage of available price election or projected price if:
(i) The applicable Crop Provisions allow you the option to separately insure individual crop types or varieties. In this case, each individual type or variety insured by you will be subject to separate administrative fees. For example, if two grape varieties in California are insured under the Catastrophic Risk Protection Endorsement and two varieties are Insured under an additional coverage policy, a separate administrative fee will be charged for each of the four varieties; or
(ii) You have additional coverage for the crop in the county and the acreage has been designated as "high-risk• by FCIC. In such case, you Will be able to exclude coverage for the hfgh-risk land under the additional coverage policy and insure such acreage under a separate Catastrophic Risk Protection Endorsement, · provided the Catastrophic Risk Protection Endorsement is obtained from the same insurance provider from which the additional coverage was obtained. If you have revenue protection and exclude high-risk land, the catastrophic risk protection coverage will be yield protection only for the excluded high-risk land.

(c) With respect to revenue protection, if available for the crop: ·
(1) You may change to another plan of insurance and change your coverage level or elect the harvest price exclusion by giving written notice to us not later than the sales closing date for the insured crop;
(2) Your ·projected price and harvest price will be 100 percent of the projected price and harvest price issued by FCIC;
(3) If the harvest price exclusion is:
(i) Not elected, your projected price is used to initially determine the revenue protection guarantee (per acre). and if the harvest price is greater than the projected price, the revenue protection guarantee (per acre) will· be recomputed· using your hatvestprice;or
(ii) Elected, your · projected price is used to compute your · revenue protection guarantee (per acre);
(4) Your projected price is used to calculate your premium, any replant payment, and any prevented planting payment; and
(5) If the projected price or harvest price cannot be calculated for the current crop year under the provisions contained in the Commodity Exchange Price Provisions:
(i) For the projected price:
(A) Revenue· protection will not be provided and you will automatically be cover-ed under the yield protection plan of insurance for the current crop year unless you cancel your coverage by the cancellation date or change your plan of insurance by the sales closing date;
(B) Notice wm be provided on RMA•s Web site by the date specified In the applicable projected price definition

contained in the Commodity Exchange Price Provisions;

 (C) The projected price will be determined by FCIC and will be released by the date specified in the applicable projected price definition contained in the Commodity Exchange Price Provisions; and

 (D) Your coverage will automatically revert to revenue protection for the next crop year that revenue protection is available unless you cancel your coverage by the cancellation date or change your coverage by the sales closing date; or

 (ll) For the harvest price:

  (A) Revenue protectfon will continue to be available; and

  (B) The harvest price will be determined and announced by FCJC.

(d) With respect to yield protection, if available for the crop:

 (1) You may change to another plan of Insurance and change your percentage of price and your coverage level by giving written notice to us not later than the sales closing date for the insured crop;

 (2) The percentage of the projected price selected by you multiplied by the projected price issued by FCIC is your projected price that is used to compute the value· of your production guarantee (per acre) and the value of the production to count: and

 (3) *Since* the projected price may change each year. if you do not select a new percentage of the projected price on or before the sales closing date, we will assign a percentage which bears the same ·relationship to the percentage that was in effact for the preceding year (!&b. If you selected $100$ ·percent of the projected price for the previous crop year and you do not select a new percentage for the current crop year, we will assign $100$ pereent for the current crop year).

(e) With respect· to all plans of Insurance other than revenue protection and yield protection (B&. APH, dollar amount plans of insurance, etc.):

 (1) In addJtlon to the price election or amount of Insurance available on the contract change date, we may provide an additional price election or amount of insurance no later than 15 days prior to the sales closing date.

  (i) You must select the additional price election or amount of insurance on or before the sales closing date for the insured crop.

  (ii) These additional price elections or amounts of insurance will not be less than those available on the contract change date.

  (iii) If you elect the additional price election or amount of insurance, any claim settlement and amount of premium will be based on

your additional price election or amount of insurance.

 (2) You may change to another plan of insurance or change your coverage level, amount of insurance or percentage of the price election, as applicable, for .the following crop year by giving written notice to us not later than the sales closing date for the insured aop.

 (3) Your amount of Insurance will be the amount of insurance issued by FCIC multiplied by the coverage level percentage you elected. Your price election will be the price election issued by FCIC multlplfed by the· percentage of price you elected.

 (4) Since the amount of insurance or price election may change each year, if you do not select a new amount of insurance or percentage of the price election on or .before the safes closing date, we will assign an amount of Insurance or percentage of the price el on which bears the same relationship to the amount of insurance or percentage of the price election that was In effect for the preceding year (!&, if you selected $100$ percent of the price election for the previous crop year and }tou do not select a new percentage of the price eleCtion for the current crop year, we will assign $100$ percent of the price election for the current crop year).

(f) You must report all production of the crop (insured and uninsured) to us for the previous crop year by the earlier of the acreage reporting date ·or 45 days after the cancellation date, unless otherwise stated in the Special Provisions or as specified In section ·18: .

 (1) If you do not provide the required production report, we will assign a yield for th'e previous crop year. The yield assigned by us will not be more than 75 percent of the yield used by us to · determine your coverage for the· previous crop . year. The production report or assigned yield will be used to compute ·your approved yield for the purpose· of determining your coverage for 'the current crop year.

 (2) If you have filed a claim for any crop year, the documents signed by you which state the amount of production used to complete the claim for indemnity will be the production report for that year unless otherwise specified by FCIC.

 (3) Production and acreage for the prior crop year must be reported for each proposed optional unit by the production reporting date. If you do not provide the information stated above. the optional units will be combined into the basic unit.

 (4) Appraisals obtained from only a portion of the acreage in a field that remains unharvested after the remainder of the crop within the flefd has been destroyed or put to another use will not be used to establish your actual yield unless representative samples are required to be left by you in accordance with the Crop Provisions.

(g) It is your responsibility to accurately report all information that Is used to determine your approved yield.

    (1) You must certify to the accuracy of this information on your production report.

    (2) If you fail to accurately report any information or if you do not provide any required records, you will be subject to the provisions regarding misreporting contained fn section 6(g), unless the information Is corrected:

        (i) On or before the production reporting date; or

        01) Because the incorrect information was the result of our error or the error of someone from USDA.

    (3) If you do not have written verifiable records to support the information on your production report, you will receive an assigned yield in accordance with section 3(f)(1) and 7 CFR part 400, subpart G for those crop years for which you do not have such records.

    (4) At any time we discover you have mfsreported any material Information used to determine your approved yield or your approved yield is not correct, the foHowing actions will be taken, as applicable:

        (i) We will correct your approved yield for the crop year such information is not correct, and all subsequent crop years;

        ·(ii) We will correct the unit structure, if necessary;

        (Iii} Any overpaid or underpaid indemnity or premium must be repaid; and

        (iv) You wlll be subject to the provisions regarding misreporting contained In section 6(g)(1}, unless the incorrect information was the result of our error or the error of someone from USDA.

(h) In addition to any consequences In section 3(g), at any time the circumstances described below are discovered, your approved yield will be adjusted:

    (1) By including an assigned yield determined in accordance with section 3(f)(1) and 7 CFR part 400, subpart G, if the actual yield reported *in* the database is excessive for any crop year, as determined by FCIC under its procedures, and you do not provide verifiable records to support the yield in the database (If there are verifiable records for the yield in your database, the yield is significanUy different from the other yields in the county or your other yields for the crop and you cannot prove there is a valid basis to support the differences in the yields, the yield will be the average of the yields for the crop or the applicable county transitional yield if you have no other yields for the crop);

    (2) By reducing it to an amount consistent with the average of the approved yields for other databases for your farming operation *with* the same crop, type, and practfce or the county transitional yield, as applicable, if:

        (i) The approved APH yield Is greater than 115 percent of the average of the approved yields of all applicable databases for your farming operation that have actual yields in them or it Is greater than 115 percent of the county transitional yield if no applicable databases exist for comparison;

        (if) The current year's Insurable acreage (Including applfcabfe prevented planting acreage) Is greater than 400 percent of the average number of acres In the database or the acres contained In two or more Individual years in the database are each less than 10 percent of the' current year's insurable acreage in the unit (Including applicable prevented planting acreage); and

        (iii) We determine there is no valid agronomic basis to support the approved yield; or

    (3) To an amount consistent with the production methods actually carried out for the crop year if you use a different production method than was previously used and the production method actually carried out is likely to result 'In a yield lower than the average of your previous actual yields. The yield will be adjusted based on your other units where such production methods were carried out or tO the applicable county transitional yield for 1h'e production methods If other such units do not exist. You must notify us of changes in your production methods by the acreage reporting date. If you fall to notify us, in addition to the reduction of your approved yield described herein, you will be considered to have misreported information and you will be subject to the consequences in section 6(g). For example, for a non-irrigated unit, your yield is based upon acreage of the crop that is watered once prior to planting,· and the crop is not watered prior to planting for the current crop year. Your approved APH ·yield will be reduced to an amount consistent with the actual production history of your other non-Irrigated units where the crop has not been watered prior to planting or limited to the non-irrigated transitional yield for the unit if other such units do not exist

(i) Unless you meet the double cropping requirements contained In section 17(f)(4), if you elect to plant a second crop on acreage where the first insured crop was prevented from being planted, you will receive a yield equal to 60 percent of the approved yield for the first insured crop to calculate your average yield for subsequent crop years (Not appHcable to crops ff the APH is not the basis for the insurance guarantee). If the unit contains both prevented planting and planted acreage of the same crop, the yield for such acreage will be determined by:

    (1) Multiplying the number of insured prevented planting acres by 60 percent of the approved yield for the first insured crop;

(2) Adding the totals from section 3(i)(1) to the amount of appraised or harvested productfon for all of the insured planted acreage; and

(3) Dividing the total in section 3(1)(2) by the total number of acres in the unit

0) Hail and fire coverage may be excluded from the covered causes of foss for an Insured crop only if you select additional coverage of not less than 65 percent of the approved yield indemnmed at the 100 percent price election, or an equivalent coverage as established by FCIC, and you have purchased the same or a higher dollar amount of coverage for hail andfire from us or any other source. If you elected a whole-fann unit, you may exclude hail and fire coverage only if allowed by the Special Provisions.

(k) The appUcable premium rate, or formula to calculate the premfum rate, and transitional yield will be those contained In the actuarial documents except, in the case of high-risk land, a written agreement may be requested to change such transitional yield or premium rate.

4. Contract Changes.
(a) We may change the terms of your coverage under this policy from year to year.

(b) Any changes in policy provisions, amounts of insurance, premium rates, program dates, price elections or the Commodity Exchange Price Provisions, *if* applicable, can be vfewed on RMA's Web site not later than the contract change date contained in the Crop Provisions (except as allowed herein or as specified In section 3). We may only revise this information after the contract change date to correct clear errors the price for oats was announced at $25.00 per bushel instead of $2.50 per bushel or the final planting date shourd be May 10 but the final planting date in the Special Provisions states August 10).

(c) After the contract change date, all chRnges specified in section 4(b) will also be available upon request from your crcip insurance agent You will be provided, fn writing, a copy of the changes to the Basic Provisions, Crop Provisions, Commodity Exchange Price Provisions, if applicable, and Special Provisions not later than 30 days prior to the cancellation date for the insured crop. If available from us, you may elect to receive these documents and changes electronically. Acceptance of the changes wDI be conclusively presumed In the absence of notice from you to change or cancel your insurance coverage.

5. [Reserved]

6. Report of Acreage.
(a) An annual acreage report must be submitted to us on our form for each insured crop in the county on or before the acreage reporting date contained in the Special Provisions, except as follows:
(1) If you fnsure muHiple crops with us that have final planting dates on or after August 15 but before December 31, you must submit an acreage report for all such crops on or before the latest applicable acreage reporting date for such crops; and

(2) If you Insure multiple crops with us that have final planting dates on or after December 31 but before August 15, you must submit an acreage report for all such crops on or before the latest applicable acreage reporting date for such crops.

(3) Notwithstanding the provisions In sections 6(a)(1) and (2):
(I) If the Special Provisions desfgnate separate planting periods for a crop, you must submit an acreage report for each planting period on or before the acreage reporting date contained in the Special Provisions for the planting period; and

(ii) If planting of the insured crop continues after the final planting date or you are prevented from planting during the late planting period, the acreage reporting date wr11 be the later of:
(A) The acreage reporting date contained fn the Special Provisions;
(B) The date determined in accordance With sections (a}(1) or (2); or
(C) Rve (5) days after the end of the late planting period for the insured crop, if applicable.

(b) If you do not have a share in an insured crop in the county for the crop year, you must submit an acreage report, on or before the acreage reporting date, so indicating.

(c) Your acreage report must include the following information, if applicable:
(1). The amount of acreage of the crop in the county (insurable and not insurable) In which you have a share and the date the Insured crop was planted on the unit as follows:
(i) The last date any timely planted acreage was planted and the number oi acres planted by such date; and
(ii) The date of planting and the number of acres planted per day for acreage planted during the late planting period (If you fall to report the number of acres planted on a daily basis, all acreage planted in the late planting period will be presumed to have been planted on the last day planting took place in the late planting period for the purposes of·section 16);

(2) Your share at the time coverage begins;
(3) The practice;
(4) The type; and
(5) The land Identifier for the crop acreage (!Jb legal description, FSA fann serial number or common land unit number *if* provided to you by FSA, etc.) as required on our fonn.

(d) Regarding the ability to revise an acreage report you have submitted to us:
(1) For planted acreage, you cannot revise any information pertaining to the planted acreage after the acreage reporting date without our consent (Consent may only be provided when no cause of foss has occurred; our appraisal has

determined that the insured crop will produce at least 90 percent of the yield used to detennine your guarantee or the amount of insurance for the unit (including reported and unreported acreage), except when there are unreported units (see section 6(f)); the Information on the acreage report is clearly transposed: you provide adequate evidence that we or someone from USDA have committed an error regarding the Information on your acreage report; or if expressly permitted by the policy);

(2) For prevented planting acreage:

    0) On or before the acreage reporting date, you can change any Information on any initially submitted acreage report, except as provided In section 6(d)(2)(111) (!&. you can correct the reported share, add acreage of the insured crop that was prevented from being planted, etc.);

    (ii) After the acreage reporting date, you cannot revise any information on the acreage report (!&, If you have failed to report prevented planting acreage on or before the acreage reporting date, you cannot revise it after the acreage reporting date to include prevented planting acreage) but we will revise Information that Is clearly transposed or you provide adequate evidence that we or someone from USDA have committed an error regarding the information on your acreage report; and

    (iii) You cannot revise your inHially submitted acreage report at any time to change the insured crop, or type, that was reported as prevented from being planted;

(3) You may request an acreage measurement from FSA or a business that provides such measurement service prior to the acreage reporting date, submit documentation of such request and an acreage report with estimated acreage by the acreage reporting date, and if the acreage measurement shows the estimated acreage was incorrect, we wfll revise your acreage report to reflect the correct acreage:

    (I) If an acreage measurement is only requested for a portion of the acreage within a unit, you must separately designate the acreage for which an acreage measurement has been requested;

    (fi) If an acreage measurement is not provided to us by the time we receive a notice of loss, we may:

      (A) Defer finalization of the claim until the measurement is completed, and:

        (1) Make all necessary loss determinations. except the acreage measurement; and

        (2) Finalize the claim in accordance with applicable policy provisions after you provide the acreage measurement to us (If you fail to provide the measurement, your claim will not be paid); or

      (B) Elect to measure the acreage, and:

        (1) Analiza your claim in accordance with applicab!e policy provisions; and

        (2) Estimated acreage under this section will not be accepted from you for any subsequent acreage report; and

    (iii) Premium will still be due in accordance with sections 2(e) and 7. If the acreage is not measured as specified in section 6(d)(3)(li) and the acreage measurement Is not ·provided to us at least 15 days prior to the premium billing date, your premium will be based on the estimated acreage and will be revised, if necessary, when the acreage measurement Is provided. If the acreage measurement is_ not provided by the termination date, you will be precluded from providing any estimated acreage for all subsequent crop years.

(4) If there is an Irreconcilable difference between:

    0) The acreage measured by FSA or a measuring service and· our on-farm measurement, our on-fann measurement will be used; or

    (ii) The acreage measured by a measuring service, other than our on-farm measurement. and FSA, the . FSA measurement will be used; and

(5) If the acreage report has been revised In accordance wHh section 6(d)(1), (2), or (3}, the Information on the initial acreage report will not be considered mfsreported for the purposes of sactJon 6(g).

(e) We may elect to determine all premiums and indemnities based on the information you submit on the acreage report or upon the factual circumstances we determine to have existed subject to the provisions contained in section 6(g).

(f) If you do not submit an acreage report by the acreage reporting date, or if you fail to report all units, we may e!ect to detennlne by unit the insurable crop acreage, share, type and practice, or to deny liability on such units. If we· deny liability for the unreported units, your share of any production from the unreported units will be allocated, for loss purposes only, as production to count to the reported units fn proportion to the liability on each reported unil However, such production will not be allocated to prevented planting acreage or otherwise affect any prevented planting paymenl

(g) You must provide all required reports and you are responsible for the accuracy of an information contained in those reports. You should verify the Information on all such reports prior to submitting them to us.

    (1) Except as provided In section 6(g)(2), if you submit information on any report that Is different

than what is determined to be correct and such information results In:

(I) A lower liability than the actual liability determined, the production guarantee or amount of Insurance on the unit will be reduced to an amount consistent with the reported Information (In the event the insurable acreage is under-reported for any unH. all production or value from Insurable acreage in that unit will be considered production or value to count In determining the indemnity); or

(li) A higher liability than the actual llabDity determined, the information contained fn the acreage report will be revised to be consistent with the corred Information.

(2) If your share Is misreported and the share Is:

(i) Under-reported, any claim will be determined using the share you reported; or

(D) Over-reported, any claim will be determined using the share we determine to be correct.

(h) If we discover you have fncorrectly reported any Information on the acreage report for any crop year, you may be required to provide documentation In subsequent crop years substantiating your report of acreage for those crop years, Including. but not limited to. an acreage measurement service at your own expense. If the correction of any misreported information would affect an indemnity. prevented planting payment or replant payment that was paid in a prior crop year. such claim will be adjusted and you will be required to repay any overpaid amounts.

(l) Errors in reporting units may be corrected by us at the time of adjusting a loss to reduce our Dability and to conform to applicable unit divJsion guidelines.

7. Annual Premium and Administrative Fees.

(a) The annual premium is eomed and pa -able at the time coverage begins. You will be billed for the premium and administrative fee not earlier than the premium billing date specified in the Special Provisions.

(b) Premium or administrative fees owed by you wfll be offset from an indemnity or prevented planting payment due you in accordance with section 2(e).

(c) The annual premium amount is determined. as applicable. by either.

(1) Multiplying the production guarantee per acre times your price election or your projected price. as applicable. times the premium rate. times the insured acreage. times your share at the time coverage begins. and times any premium adjustment percentages that may apply; or

(2) Multiplying your amount of Insurance per acre times the premium rate. times the insured acreage. times your share at the time coverage begins. and times any premium adjustment percentages that may apply.

(d) The Information needed to determine the premium rate and any premium adjustment percentages that

may apply are contained In the actuarial documents or an approved written agreement.

(e) In addition to the premium charged:

(1) You. unless otherwise authorized in 7 CFR part 400, must pay an administrative fee each crop year of $30 per crop per county for all levels of coverage In excess of catastrophic risk protection.

(2) The administrative fee must be paid no later than the time premium Is due.

(3) Payment of an administrative fee will not be required if you fife a bona fide zero acreage report on or before the acreage reporting date for the crop. If you falsely file a zero acreage report you may be subject to criminal and administratiVe sanctions.

(4) The administrative fee will be waived if you request it and: '

(i) You qualify as a limited resource fanner; or

(ii) You were insured prior to the 2005 crop year or for the 2005 crop year and your administrative fee was waived for one or more of those crop years because you qualified as a limited resource farmer under a policy definition previously In effect. and you remain qualified as a limited resource farmer under the definition that was in effect at the time the administrative fee was waived.

(5) Failure to pay the administrative fees when due may make you fnelfgible ·for certain other USDA benefits.

(f) If the amount of premium (gross premium less premium subsidy paid on your behalf by FCIC) and administrative fee you are required to pay for any acreage exceeds the liability ·for the acreage. coverage for those acres wfll not be provided (no premium or administrative fee wlfl be due and no indemnity will be paid foi such acreage). ·

8. · Insured Crop. .

(a) The insured crop will be ·that shown on your accepted application and as specified In the Crop Provisions or Special Provisions and must be grown on insurable acreage.

(b) A crop which will NOT be insured will include. but wiD not be limited to. any crop:

(1) That is not grown on planted acreage (except for the purposes of prevented planting coverage). or that is a type. class or variety or where the conditions under which the crop Is planted are not generafly recognized for the area (For example. where agricultural experts detennine that planting a non-Irrigated com crop after a failed small grain crop on the same acreage In the same crop year is not appropriate for the area);

(2) For which the information necessary for insurance (price election. amount of insurance. projected price and harvest price, as applicable. premium rate. etc.) is not included In the aduarial documents. unless such information is

provided by a written agreement in accordance with section 18;

(3) That Is a volunteer crop;

(4) Planted following the same crop on the same acreage and the first planting of the crop has been harvested in the same crop year unless specifically permitted by the Crop Provisions or the Special Provisions (For example, the second planting of grain sorghum would not be Insurable if grain sorghum had already been planted and harvested on the same acreage during the crop year);

(5) That is planted for the development or production of hybrid seed or for experimental purposes, unless permitted by the Crop Provisions or by written agreement to Insure such crop; or

(6} That is used solely for wildlife protection or management If the lease states that specific acreage must remain unharvested, only that acreage is uninsurable. If the lease specifies that a percentage of the crop must be left unharvested, your share will be reduced by such percentage.

(c) Although certain policy documents may state that a' crop type, class, variety or practice is not insurable, It does not mean all other crop types, classes. varieties or practices are insurable. To be insurable the crop type, class, variety or practice must meet all the conditions in this section.

9. Insurable Acreage.

(a} All acreage planted to the insured crop in the county · in which you have a share:

(1) Except as provided in section 9(a)(2), is insurable if the acreage has been planted and harvested or insured (including insured acreage that was prevented from being planted) in any one of the three previous crop years. Acrea!]e that has not been planted and harvested (grazing is not consic;tered harvested for the purposes of section 9(a)(1)} or insured in at least one of the three previous CI'9P years may still be insurable if:

(i) Such acreage was not planted:

(A) In at least two of the three previous crop years to comply with any other USDA program;

(B) Due to the crop rotation, the acreage would not have been planted In the previous three years _ a crop rotation of com, soybeans, and alfalfa; and the alfalfa remained for four years before the acreage was planted to com again); or

(C) Because a perennial tree, vine, or bush crop w s on the acreage in at least two of the previous three crop years;

(ii) Such acreage constitutes five percent or less of the insured planted acreage In the unit;

(iii) Such acreage was not planted or harvested because it was pasture or rangeland, the crop to be insured is also pasture or rangeland, and the Crop Provisions, Special Provisions, or a written agreement specifically allow insurance for such acreage; or

(iv) The Crop Provisions, Special Provisions, or a written agreement specifically allow insurance for such acreage; or

(2) Is not insurable if:

(i) The only crop that has been planted and harvested on the acreage in the three previous crop years is a cover, hay (except wheat harvested for hay) or forage crop (except ·insurable sHage). However, such acreage may be insurable only if:

(A) The crop to be insured is a hay or forage crop and the Crop Provisions, Special Provisions, or · a written agreement specifically allow insurance for such acreage; or

(B) The hay or forage crop was part of a crop rotation;

(ii) The acreage has been strip-mined. However, such acreage may be insurable only if:

(A) An agricultural commodity. other than a cover, hay (except wheat harvested for hay), or forage crop (except insurable silage) has been harvested from the acreage for at least five crop years after the strip-mined land was reclaimed: ot

(B) A written agreement specifically allows insurance for such acreage;

(iii) The actuarial documents do not provide the information necessary to determine the premium rate, unless Insurance Is allowed by a written agreement;

(iv) The insured ·crop is damaged and It is practical to replant the Insured crop, but the insured crop is.not replanted;

(v) The acreage is interplanted, unless Insurance is allowed by the Crop Provisions; ·

(vi) The acreage is otherwise restricted by the Crop Provisions or Special Provisions;

(vii) The acreage is planted in any manner other than as specified in the policy provisions for the crop unless a written agreement specifically allows insurance for such planting;

(viii) The acreage is of a second crop, if you elect not to insure such acreage when an indemnity for a first insured crop may be subject to reduction in accordance with the provisions of section 15 and you intend to collect an indemnity payment that is equal to 100 percent of the insurable loss for the first insured crop acreage. This election must be made on a first Insured crop unit

basis if the first insured crop unit contains 40 planted acres that may be subject to an Indemnity reduction, then no second crop can be Insured on any of the 40 acres). In this case:

(A) If the first insured crop Is insured under this poHcy, you must provide written notice to us of your election not not to insure acreage of a second crop at the time the first Insured crop acreage is released by us (if no acreage in the first insured crop unit Is released, this election must be made by the earlier of the acreage reporting date for the second crop or when you sign the claim for indemnity for the first insured crop) or, if the first Insured crop is insured under the Group Risk Protection Plan of Insurance or successor provisions (7 CFR part 407), this election must be made before the second crop Insured under this policy is planted, and if you fall to provide such notice, the second crop acreage will be insured in accordance with the applicable policy provisions and you must repay any overpaid indemnity for the first insured crop;

(B) In the event a second crop Is planted and insured with a different insurance provider, or planted and fnsured by a different person, you must provide written notice to each Insurance provider that a second crop was planted on acreage on which you had a first insured crop; and

(C) You must report the crop acreage that will not be insured on the applicable acreage report; or ·

(ix) The acreage Is of a crop planted following a second crop or following an insured crop that is prevented from being planted after a first insured crop, unless it Is a practice that is generally recognized by agricultural experts or organic agricultural experts for the area to plant three or more crops for harvest on the same acreage in the same crop year, and additional coverage Insurance provided under the authority of the Act is offered for the third or subsequent crop in the same crop year. Insurance will only be provided for a third or subsequent crop as follows:

(A) You must provide records acceptable to us that show:
(1) You have produced and harvested the insured crop following two other crops arvested on the same acreage in the same crop year in at feast two of the last four years In which you produced the Insured crop; or

(2) The applicable acreage has had three or more crops produced and harvested on it in the same crop year In at least two of the last four years in which the insured crop was grown on the acreage; and

(B) The amount of insurable acreage will not exceed 100 percent of the greatest number of acres for which you provide the records required in section 9(a){2)(Jx)(A).

(b) If insurance is provided for an Irrigated practice, you must report as Irrigated only that acreage for which you have adequate facilities and adequate water, or the reasonable expectation of receMng adequate water at the time coverage begins, to carry out a good irrigation practice. If you knew or had reason to know that your water may be reduced before coverage begins, no reasonable expectation exists.

(c) Notwithstanding the provisions in section 8(b)(2), if acreage Is Irrigated and a premium rate is not provided for an irrigated practice, you may either report and insure the irrigated acreage as cnon-Irrigated,• or report the irrigated acreage as not insured (If you elect to insure such acreage under a non-irrigated practice, your irrigated yield wnr only be used to detennfne your approved yield if you continue to use a good irrigation practice. If you do not use a good irrigation practice, you will receive a yield detenninecf in accordance with section 3(h)(3)).

(d) We may restrict the amount of acreage that we will Insure to the amount allowed under any acreage limitation program established by the United States Department of Agriculture If we notify you of that restriction prior to the sales closing date.

(e) Notwithstanding the provisions In section 9(a)(1), if the Governor of a State designated within the Prairie Pothole NatJonal Priority Ar&a elects to make saction 508(o) of the Act effective for the State, any native sod acreage greater than ·five acres located In a county contained. within the Prairie Pothole National Priority Area that has been tiffed after May 22, 2008, is not insurable for the first five crop years of planting following the date the native sod acreage is tilled.

(1) If the Govemor makes this election after you have received an indemnity or other payment for native sod acreage, you will be required to repay the amount received and any premium for such acreage will be refunded to you.

(2) If we detennine you have tilled less than five acres of native sOd a year for more than one crop year, we will add all the native sod acreage tilled after May 22, 2008, and all such acreage will be ineligible for insurance for the first five crop years of planting following the date the cumulative native sod acreage tilled exceeds five acres.

10. Share Insured.
(a) Insurance will attach:
(1) Only if the person completing the application has

a share in the insured crop; and

(2) Only to that person's share, except that insurance may attach to another person's share of the insured crop if the other person has a share of the crop and:
  (i) The application clearly states the insurance is requested for a person other than an individual (§JL. a partnership or a joint venture): or
  (ii) The application clearly states you as landlord will insure your tenanfs share, or you as tenant will Insure your landlord's share. If you as a landlord will insure your tenant's share, or you as a tenant wifl Insure your landlord's share, you must provide evidence of the other parfYs approval Oease, power of attorney, etc.) and such evidence will be retained by us:
    (A) You also must clearly set forth the percentage shares of each person on the acreage report; and
    (B) For each landlord or tenant, you must report the landlord's or tenant's social security number, employer Identification number, or other identification number we assigned for the purposes of this policy, as applicable.
(b) With respect to your share:
  (1) We will consider to be included in your share under your policy, any acreage or interest reported by or for.
    (i) Your spouse, unless such spouse can prove he/she has a separate fanning operation, which includes, but is not limited to, separate land (transfers of acreage from one spouse to another Is not considered separate land), separate capital, separate inputs, separate accounting, and saparate maintenance of proceeds; or
    (ii) Your child who resides fn your household or any other member of your househo!d, unless such chi!d or other member of the househo!d can demonstrate such person has a separate share In the crop (Children who do not reside in your household are not included in your share); and
  (2) If It is determined that the spouse, child or other member of the household has a separate policy but does not have a separate farming operation or share of the crop, as applicable:
    (I) The policy for one spouse or child or other member of the household will be void and the policy remaining in effect will be detennined in accordance with section 22(a)(1) and (2);
    (ii) The acreage or share reported under the policy that is voided will be included under the remaining policy; and
    (iii) No premium wilt be due and no indemnity will be paid for the voided policy.

(c) Acreage rented for a percentage of the crop, or a lease containing provisions for BOTH a minimum payment (such as a specified amount of cash, bushels, pounds. etc.,) AND a crop share will be considered a crop share lease.
(d) Acreage rented for cash, or a lease containing provisions for EITHER a minimum payment OR a crop share (such as a 50/50 share or $100.00 per acre. whichever Is greater) will be considered a cash lease

11. Insurance Period.
  (a) Except for prevented planting coverage (see section 17), coverage begins on each unit or part of a unit at the later of:
    (1) The date we accept your application (For the purposes of this paragraph, the date of acceptance is the date that you submit a property executed appHcatfon in accordance with section 2):
    (2) The date the insured crop is planted; or
    (3) The calendar date contained in the Crop Provisions for the beginning of the insurance periOd.
  (b) Coverage·ends on each unH or part of a unit at the earliest of:
    (1) Total deStruction of the insured crop;
    (2) Harvest of the insured crop;
    (3) Anal adjustment of a loss on a unit;
    (4) The calendar date contained in the Crop Provisions or Special Provisions for the end of the insurance period;
    (5) Abandonment of the insured crop; or
    (6) As otherwise specffted in the Crop Provisions.
  (c) Except as provided In the Crop Provisions or applicable endorsement, In addition to the requirements of section 11(b), coverage ends on any acreage within a unit once any event specffied in section 11(b) occurs on· that acreage. ·Coverage onlY remains in effect ·on acreage that has not been affected by an event specified In section 11(b).

12. Causes of Loss.
  Insurance is provided only to protect against unavoidable, naturally occurring events. A fist of the covered naturally· occurring events is contafned In the applicable Crop Provisions. AJI other causes of loss, including but not limited to the following, are NOT covered:
  (a) Any act by any person that affects the yield, quality or price of the Insured crop (g&, chemical drift, fire, terrorism, etc.);
  (b) Failure to follow recognized good farming practices for the fnsured crop;
  (c) Water that is contained by or within structures that are designed to contain a specffic amount of water, such as dams, locks or reservoir projects, etc., on any acreage when such water stays wHhin the designed limits (For example, a dam is designed to contain water to an elevation of 1,200 feet but you plant a aop on acreage at an elevation of 1,100 feet. A storm causes the water behind the dam to rise to an elevation of 1,200 feel Under such circumstances, the resulting damage would not be

caused by an insurable cause of loss. However, if you planted on acreage that was above 1,200 feet elevation, any damage caused by water that exceeded that elevation would be caused by an insurable cause of loss);

(d) Failure or breakdown of the Irrigation equipment or facilities, or the inability to prepare the land for Irrigation using your established irrigation method (!&. furrow irrigation), unless the failure, breakdown or JnabHity is due to a cause of loss specified In the Crop Provisions.

   (1) You must make all reasonable efforts to restore the equipment or f cilities to proper working order within a reasonable amount of time unless we detennlne it Is not practical to do so.

   (2) Cost wiD not be considered when detennfning whether it is practical to restore the equipment or facHities:

(e) Failure to carry out a good irrigation practice for the Insured crop, if applicable; or

(f) Any cause of loss that results In damage that Is not evident or would not have been evident during the Insurance period, including. but not limited to, damage that only becomes evident after the end of the insurance period unless expressly authorized in the Crop Provisions. Even though we may not inspect the damaged crop until after the end of the insurance period, damage due to insured causes that would have been evident during the insurance period will be covered.

13. Replanting Payment.

(a) If allowed by the Crop Provisions, a replanting payment may be made on an insured crop replanted after we have given consent· and the acreage replanted is at least the lesser of 20 acres or 20 percent of the insured planted acreage for the unit (as detennfned on the final planting date or within the late planting period if a late planting period is applicable). If the crops to be replanted are In a whole-fann .unit, the 20 acres or 20 percent requirement is to be applied separately to each crop to be replanted in the whole-farm unit.

(b) No replanting payment will be made on acreage:

   (1) On which our appraisal establishes that production will exceed the level set by the Crop Provisions;

   (2) InitiaUy planted prior to the earliest planting date established by the Special Provisions; or

   (3) On which one replanting payment has already been allowed for the crop year.

(c) The replanting payment per acre will be:

   (1) The lesser of your actual cost for replanting or the amount specified in the Crop Provisions or Special Provisions; or

   (2) If the Crop Provisions or Special Provisions specify that your actual cost will not be used to determine your replant payment, the amount determined in accordance with the Crop Provisions or Special Provisions.

(d) No replanting payment will be *paid* if we determine it is not practical to replant.

14. Duties In the Event of Damage, Loss, Abandonment, Destruction, or Alternative Use of Crop or Acreage. Your Duties:

(a) In case of damage or loss of production or revenue to any insured crop, you must protect the crop from further damage by providing sufficient care.

(b) Notice provisions:

   (1) For a planted crop, when there is damage or loss of production, you must give us notice, by unit, within 72 hours of your Initial discovery of damage or foss of production (but not later than 15 days after the end of the insurance period, even if you have not harvested the crop).

   (2) For crops for which revenue protection is elected, if there is no damage or loss of production, you must give us notice not later than 45 days after the latest date the harvest price is released for any crop in the unit where there is a revenue loss.

   (3) In the event you are prevented from planting an insured crop that has prevented planting coverage, you must notify us within 72 hours after:

      (i) The final planting date,' if you do not intend to plant the ·Insured crop during the late planting period or if a late planting period is not applicable; or

      (il) You de,errnine you will not be able to plant the insured crop within any applicable late planting period.

   (4) All notices required In this section that must be received by us within 72 hours may be made by telephone or In person to your crop Insurance agent but must be confirmed in writing within 15 days.

   (5) If you fail to comply with these notice requirements, any loss or prevented planting claim will be considered solely due to an uninsured cause of loss _for f!le acreage for which such failure occurred, ·unless we determine that we have the ability to accurately adjust the *loss.* If we determine that we do not have the abUity to accurately adjust the foss:

      (i) For any prevented planting claim, no prevented planting coverage will be provided and no premium will be owed or prevented planting payment will be paid; or

      (ii) For any claim for Indemnity, no Indemnity will be paid but you will still be required to pay all premiums owed.

(c) Representative samples:

   (1) If representative samples are required by the Crop Provisions. you must leave representative samples of the unharvested crop intact

      (i) If you report damage less than 15 days before the time you will begin harvest or during harvest of the damaged unit; or

      (ii) At any time when required by us.

   (2) The samples must be left intact until we inspect them or until 15 days after completion of harvest on the remainder of the unit, whichever is earlier.

(3) Unless otherwise specified in the Crop Provisions or Special Provisions. the samples of the crop in each field in the unit must be 10 feet wide and extend the entire rength of the rows, if the crop is planted in rows, or if the crop is not planted in rows, the longest dimension of the field.

(4) The period to retain representative samples may be extended if it is necessary to accurately determine the loss. You will be notified In writing of any such extension.

(d) Consent:

(1) You must obtain consent from us before, and notify us after you:

    (i) Destroy any of the insured crop that Is not haiVested;

    (H) Put the insured crop to an alternative use;

    (iff) Put the acreage to another use; or

    (iv) Abandon any portion of the Insured crop.

(2) We will not give consent for any of the actions fn section 14(d}(1)Q) through (iv) If it is practical to replant ·the crop or until we have made an appraisal of the potential production of the crop.

(3) Failure to obtain our consent will result In the assfgnment of an amount of production or value to count in accordance with the Settlement of Claim provisions of the applicable Crop Provisions.

(e) Claims:

(1) Except as otherwise provided in your policy, you must submit a claim declaring the amount of your loss by the dates shown in section 14(e}(3), unless you:

    (i) Request an extension In writing by such date and we agree to such request (Extensions will only be granted if the amount of the loss cannot be determined wi'.hfn such time period because the information needed to determine the amount of the loss is not available); or

    (ii) Have haiVested farm-stored grain production and elect, in writing. to delay measurement of your farm-stored production and settlement of any potential associated claim for indemnity (Extensions will be granted for this purpose up to 180 days after the end of the insurance period).

        (A) For policies that require APH. if such extension continues beyond the date you are required to submit your production report. you will be assigned the previous year's approved yield as a temporary yield In accordance with applicable procedures.

        (B) Any extension does not extend any date specified in the policy by which premiums, administrative fees. or other debts owed must be paid.

        (C) Damage that occurs after the end of the insurance period (for example. while the haiVested crop production is In storage) is not covered; and

(2) Failure to timely submit a claim or provide the required Information necessary to determine the amount of the dalm will result In no Indemnity, prevented planting payment or replant payment

    (i) Even though no indemnity or replant payment is due, you will still be required to pay the premium due under the policy for the unit; or

    (ii) Failure to timely submit a prevented planting claim will result In no prevented planting coverage and no premium will be due.

(3) You must submit a claim not later than:

    (i) For policies other than revenue protection, 60 days after the date the Insurance period ends for aD acreage in the unit (When there is acreage fn the unit where the insurance ·period ended on different dates, It is the last date the insurance period ends on the unit For example, if a unit has com acreage that was put to another use on · July 15 and com acreage where haiVest was completed on September 30, the claim must be submitted not later than 60 days after·September 30); or

    (ii) For revenue protection. the later of:

        (A) 60 days after the last date the haiVest price is released for any aop in the unit; or

        (B) The date detennined in accordance with section 14(e)(3)(i).

(4) To receive any Indemnity (or receive the rest of an Indemnity In the case of acreage that is planted to a second crop), prevented planting payment or replant payment, you must, if applicable:

    (i) Provide:

        (A) A complete harvasting. production, and marketing record of each insured crop by unit fncludfng separate records showing the same information for production from any acreage not insured.

        (B) Records as indicated below if you Insure any acreage that may be subject to an indemnity reduction as specified in section 15(e)(2):

            (1) Separate records of production from such acreage for all insured crops planted on the acreage (1&. if you have an fnsurabfe toss on 10 acres of wheat and subsequently plant cotton on the same 10 acres, you must provide records of the wheat and cotton production on the 10 acres separate from any other wheat and cotton production that may be planted in the same unit). If you fail to provide separate records for such acreage, we will allocate the production of each crop to the

acreage in proportion to our Hability for the acreage; or

(2) If there is no loss on the unit that includes acreage of the second crop. no separate records need to be submitted for the second crop and you can receive the rest of the Indemnity for the first insured crop.

(C) Any other information we may require to settJe the claim.

(ii) Cooperate with us in the investigation or settlement of the claim, and, as often as we reasonably require:

(A) Show us the damaged crop;

(B) Allow us to remove samples of the insured crop; and

(C) Provide us with records and documents we request and permit us to make copies.

(Oil) Establish:

(A) The total production or value received for the Insured crop on the unit;

(B) That any loss occurred during the insurance period;

(C) That the loss was caused by one or more of the Insured causes specified In the Crop Provisions: and

(D) That you have complied with all provisions of this policy.

(iv) Upon our request, or that of any USDA employee authorized to conduct Investigations of the crop Insurance program, submit to an examination under oath.

(5) Failure to comply with any requirement contained In section 14(e)(4) will result in denial of the claim and any premJum will still be owed, unless the claim denied is for prevented planting.

Our Duties:

(f) If you have complied with all the policy provisions,. we will pay your loss within 30 days after the later of:

. (1) We reach agreement with you;

(2) Completion of arbitration, reconsideration of determinations regarding good farming practices or any other appeal that results In an award In your favor, unless we exercise our right to appeal such decision;

(3) Completion of any Investigation by USDA, if applicable, of your current or any past claim for indemnity if no evidence of wrongdoing has been found (If any evidence of wrongdoing has been discovered, the amount of any Indemnity, prevented planting or replant overpayment as a result of such wrongdoing may be offset from any indemnity or prevented planting payment owed to you); or

(4) The entry of a final judgment by a court of competent jurisdiction.

(g) In the event we are unable to pay your loss within 30 days, we will give you notice of our Intentions within the 30-day period.

(h) We may defer the adjustment of a loss until the amount of loss can be accurately determined. We will not pay for additional damage resufting from your failure to provide sufficient care for the crop during the deferral period.

(i) We recognize and apply the loss adjustment procedures established or approved by the Federal Crop Insurance Corporation.

(j) For revenue protection, we may make preHminary Indemnity payments for crop production losses prior to the release of the harvest price if you have not elected the harvest price exclusion.

(1) First, we may pay an Initial indemnity based upon your projected price, in accordance with the applicable Crop Provisions provided that your production to count and share have been established; and

(2) Second, after the harvest price is released, and if it is not equal to the projected price, we will recalculate the Indemnity payment and pay any additional indemnity that may be due.

15. Production Included In DetennlnIng an Indemnity and Payment Reductions.

(a) The total production to be counted for a unit wDI include all production determined In accordance with the policy.

(b) Appraised production will be used to calculate your claim if you are riot going to harvest your acreage. Such appraisals may be conducted after the end of the Insurance period. If you harvest the crop after the crop has been appraised:

(1) You must provide us with the amount of harvested produCtion (If you fail to provide verifiable records of harvested production, no indemnity will be paid and you will be required to retum any previously paid indemnity for the unit that was based on an appraised amount of production): and

(2) !f the harvested productlun exceeds the appraised production, claims will be adjusted using ·the harvested production, and you will be required to repay any overpaid Indemnity; or

(3) If the harvested production is less than the appraised production, and:

(i) You harvest after the end of the insurance period, your appraised production will be used to adjust the loss unless you can prove that no additional causes of loss or deterioration of the crop occurred after the end of the Insurance period; or

(if) You harvest before the end of the insurance pe od, your harvested production will be used to adjust the loss.

(c) If you elect to exdude hail and fire as insured causes of foss and the insured crop Is damaged by hail or fire, appraisals will be made as described in our form used to exclude hall and fire.

(d) The amount of an Indemnity that may be determined · under the applicable provisions of your policy may be reduced by an amount, determined in accordance with the Crop Provisions or Special Provisions, to reflect out-of-pocket expenses that were not incurred

by you as a result of not planting, caring for, or harvesting the crop. Indemnitfes paid for acreage prevented from being planted will be based on a reduced guarantee as provided for in the policy and will not be further reduced to reflect expenses not incurred.

(e) With respect to acreage where you have suffered an insurable rOSS to planted acreage of your first insured crop in the crop year, except in the case of double cropping described In section 15(h):

(1) You may elect to not plant or to plant and not insure a second crop on the same acreage for harvest In the same crop year and collect an indemnity payment that is equal to 100 percent of the Insurable rOSS for the first Insured crop; or

(2) You may elect to plant and insure a second crop on the same acreage for harvest in the same crop year (you will pay the full premium and, if there is an insurable loss to the second crop, receive the full amount of indemnity that may be due for the second crop, regardless of whether there Is a subsequent crop planted on the same acreage) and:

(I) Collect an indemnity payment that is 35 percent of the insurable foss for the first insured crop;

(li) Be responsible for premium that is 35 percent of the premium that you would otherwise owe for the first insured crop; and

(iii) If the second crop does not suffer an insurable loss:

(A) Collect an indemnity payment for the other 65 percent of insurable loss that was not previously paid under section 15(e)(2)(i); and

(B) Be responsible for the remainder of the premium for the first insured crop that you did not pay under section 15(e)(2)(ii).

(f) With respect to acreage where you were prevented from planting the first insured crop in the crop year, except in the case of double cropping described in sectlon 15(h):

(1) If a second crop is not planted on the same acreage for harvest fn the same crop year. you may collect a prevented planting payment that is equal to 100 percent of the prevented planting payment for the acreage for the first insured crop; or

(2) If a second crop is planted on the same acreage for harvest in the same crop year (you will pay the full premium and, if there is an insurable loss to the second crop, receive the full amount of indemnity that may be due for the second crop. regardless of whether there is a subsequent crop planted on the same acreage) and:

(I) Provided the second crop is not planted on or before the final planting date or during the late planting period (as applicable) for the first insured crop, you may conect a prevented planting payment that is 35

percent of the prevented planting payment for the first insured crop; and

(ii) Be responsible for premium that is 35 percent of the premium that you would otherwise owe for the first insured aop.

(g) The reduction In the amount of indemnity or prevented planting payment and premium specified in sections 15(e) and 15(f), as applicable, will apply:

(1) Notwithstanding the priority contained in the Agreement to Insure section, which states that the Crop Provisions have priority over the Basic Provisions when a conflict exists, to any premium owed or · indemnity or prevented planting payment made In accordance with the Crop Provisions, and any applicable endorsement.

(2) Even if another person plants the second crop on any -acreage where the first insured crop was planted or was prevented from being planted, as applicable.

(3) 'For prevented planting only:

(i) ·· If a volunteer aop or cover crop is hayed or grazed from the same acreage, after the late planting period (or after the final planting date if a late planting period is not applicable) for the first Insured crop In the same crop year, or is otherwise harvested anytime after the late planting period (or after the final planting date if a late planting period is not applicable); or

(li) If you receive cash rent for any acreage on which you were prevented from planting.

(h) You may receive a full indemnity, or a full prevented planting payment for a first insured crop when a second crop Is planted on the same·acreage In the same crop year, regardless of whether or not the second crop Is insured or sustains an Insurable loss, if each of the follo·wing conditions are met:

(1) It is a practice that is generally recognized by agricultural experts or organic agricultural experts for the area to plant two or more crops for harvest in the same crop year;

(2) The second· or more crops are customarily planted after the first insured crop for harvest on the same acreage in the same crop year in the area;

(3) Additional coverage insurance offered under the authority of the Act Is available in the county on the two or more·crops that are double cropped;

(4) You provide records acceptable to us of acreage and production that show you have double cropped acreage in at least two of·the last four crop years in which the first insured crop was planted, or that show the applicable acreage was double cropped in at least two of the last four crop years in which the first insured crop was grown on it; and

(5) In the case of prevented planting, the second crop is not planted on or prior to the final planting date or, if applicable, prior to the end of the late planting period for the first insured crop.

(i) The receipt of a full indemnity or prevented planting payment on both crops that are double cropped is limited to the number of acres for which you can demonstrate you have double cropped or that have been historically double cropped as specffied In section 15(h).

  (1) If the records you provided are from acreage you double cropped in at least two of the last four crop years, you may apply your history of double cropping to any acreage of the insured crop in the county (§&b if you have double cropped 100 acres of wheat and soybeans in the county and you acquire an additional 100 acres in the county, you can apply that histoty of double cropped acreage to any of the 200 acres in the county as long as it does not exceed 100 acres); or

  (2) If the records you provided are from acreage that another producer double cropped in at least two of the last four crop years, you may only use the history of double cropping for the same physical acres from which double cropping records were provided if a neighbor has double cropped 100 acres of wheat and soybeans in the county and you acquire your neighbor's 100 double cropped acres and an additional 100 acres in the county, you can only apply your neighbor's history of double cropped acreage to the same 100 acres that your neighbor double cropped).

0) If any Federal or State agency requires destruction of any insured crop or crop production, as applicable, because it contains levels of a substance, or has a condition, that is injurious to human or animal health in excess of the maximum amounts allowed by the Food and Drug Administration, other public health organizations of the UnHed States or an agency of the appUcable State, you must destroy the insured crop or crop production, as applicable, and certify that such Insured crop or crop production has been destroyed prior to receiving an Indemnity payment Failure to destroy the Insured crop or crop production, as applicable, will result In you having to repay any Indemnity paid and you may be subject to administrative sanctions in accordance with section 515(h) of the Act and 7 CFR part 400, subpart R, and any applicable civil or criminal sanctions.

16. Late Planting.

Unless limHed by the Crop Provisions, insurance will be provided for acreage planted to the insured crop after the final planting date in accordance with the following:

(a) The production guarantee or amount of Insurance for each acre planted to the insured crop during the late planting period will be reduced by 1 percent per day for each day planted after the final planting date.

(b) Acreage planted after the late planting period (or after the final planting date for crops that do not have a late planting period) may be insured as follows:

  (1) The production guarantee or amount of Insurance for each acre planted as specified in this subsection will be determined by multiplying the production guarantee or amount of insurance that is provided for acreage of the insured crop that is timely planted by the prevented planting coverage level percentage you elected, or that is contained in the Crop Provisions If you dfd not elect a prevented planting coverage level percentage;

  (2) Planting on such acreage must have been prevented by the final planting date (or during the late planting period, *if* applicable) by an insurable· cause occurring within the insurance period for J)revented planting coverage; and

  (3) All production from Insured acreage as specified In this section will be Induded as production to count for the unit.

(c) The premium amount for Insurable acreage specified in this section will be the same. as that for timely planted acreage. If the amount of premium you are required to pay (gross premium less our subsidy) for such acreage exceeds the liability, coverage for those acres will not be provided (no premium will be due and no Indemnity will be paid).

(d) Any acreage on which an insured cause of loss is a material factor In preventing completion of planting, as specified In the definition of •planted acreage• (§&. seed is broadcast on the soil surface but cannot be incorporated) will be considered as acreage planted after the final planting date and the ·production guarantee will be calculated In accordance with section 16(b)(1).

17. Prevented Planting. ·

(a) Unless limited by the policy provisions, a prevented planting payment may be made to you for eligible acreage if: ·

  (1) You are prevented from planting the insured crop on insurable acreage by an insured cause of loss that occurs:

    (i) On or after the sales closing date contained In the Special Provisions for the insured crop *In* the county for the crop year the application for insurance is accepted; or

    (ii) · For any subsequent crop year, on or after the sales closing date for the previous crop year for the Insured crop In the county, · provided Insurance has been in force continuously since that date. cancellation for the purpose of transferring the policy to a different Insurance provider for the subsequent crop year will not be considered a break in continuity for the purpose of the preceding sentence;

  (2) You include on your acreage report any insurable acreage of the insured crop that was prevented from being planted; and

  (3) You did not plant the insured crop during or after the late planting period. Acreage planted to the insured crop during or after the late planting period is covered under the late planting provisions.

(b) The actuarial documents may contain additional levels of prevented planting coverage that you may purchase for the insured crop:

  (1) Such purchase must be made on or before the sales closing date.

  (2) If you do not purchase one of those additional revels by the sales closing date, you wffl receive the prevented planting coverage specified In the Crop Provisions.

  (3) If you have a Catastrophic Risk Protection Endorsement for any crop, the additional levels of prevented planting coverage will not be available for that crop.

  (4) You cannot increase your elected or assigned prevented planting coverage level for any crop year if a cause of foss that could prevent planting (even though it is not known whether such cause will actually prevent planting) has occurred during the prevented planting insurance period specified *in* section 17(a)(1)(i) or I) and prior to your request to change your prevented planting coverage level.

(c) The premium amount for acreage that is prevented from befng planted will be the same as that for timely planted acreage except as specified in section 15(1). If the amount of premium you are required to pay (gross premium less the subsidy) for acreage that Is prevented f m befng planted exceeds the liability on such acreage. coverage for those acres will not be provided (no premium will be due and no indemnity wiU be paid for such acreage).

(d) Prevented planting coverage will be provided against:

  (1) Drought, failure of the irrigation water supply, faHure or breakdown of irrigation equipment or facilities, or the Inability to prepare the land for irrigation using your established Irrigation method, due to an insured cause of loss only if, on the final planting date (or within the *late* planting period if you elect to try to plant the crop), you provide documentation acceptable to us to establish:

    (i) For non-irrigated acreage, the area that is preve ted from being planted has Insufficient soil moisture for germination of seed or progress toward crop maturity due to a prolonged period of dry weather. The documentation for prolonged period of dry weather must be verifiable using information collected by sources whose business it is to record and study the weather, including. but not limited to. focal weather reporting stations of the National Weather Service; or

    (ii) For Irrigated acreage:

      (A) Due to an insured cause of loss, there is not a reasonable expectation of having adequate water to carry out an irrigated practice or you are unable to prepare the land for irrigation using your established irrigation method:

      (f) If you knew or had reason to know on the final planting date or during the late planting period that your water will be reduced, no reasonable expectation exists; and

      (2) Available water resources will be verified using information from State Departments of Water Resources, U.S. Bureau of Reclamation, Natural Resources Conservation Service or other sources whose business includes collection of water data or regulation of water resources; or

      (B) The irrigation equipment or facilities have failed or broken down if such failure or breakdown is due to an insured cause of loss specified in section 12(d).

  (2) Causes other than ·drought, failure of the irrigation water supply, failure or breakdown of the irrigation equipment or facilities, or your inability to prepare the land for Irrigation using your established Irrigation method, provided the cause of loss is specified In the Crop Provisions. However if it is possible for you to plant on or prior to the final planting date when other producers in the area are planting and you faD to plant, no prevented planting payment will be made.

(e) The maximum·number of acres that may be eligible for a prevented planting payment for any crop wm be determined as follows:

  (1) The total number of acres eligible for prevented planting coverage for all crops cannot exceed the number of acres of cropland In your farming operation for the crop year, unless you are eligible for prevented planting coverage on double cropped acr age in accordance with section 17(f)(4): ·The· eligible· acres for each insured crop wiD be determined as follows:

    (i) If you have planted any crop in the county for·Which prevented planting Insurance was available (you will be considered to have · planted if your APH database contains actual planted acres) or have received a prevented planting Insurance guarantee in any one or more of the four most recent crop years. and the Insured crop is not required to be contracted with a processor to be insured:

      (A) The number of eligible acres will be the maximum number of acres certified for APH purposes, or insured acres reported. for the crop In any one of the four most recent crop years (not Including reported prevented planting acreage that was planted to a second crop unless you meet the double cropping requirements in section 17(f)(4)).

(B) If you acquire additional land for the current crop year, the number of eligible acres determined In section 17(e)(1)(i)(A) for a crop may be Increased by multiplying it by the ratio of the total cropland acres that you are farming this year (if greater) to the total cropland acres that you fanned in the previous year, provided that:

(1) You submit proof to us that you acquired additional acreage for the current crop year by any of the methods specified In section 17(f)(12);

(2) The additional acreage was acquired fn time to plant it for the current crop year using good farming practices; and

(3) No cause of foss has occurred at the time you acquire the acreage that may prevent planting (except acreage you leased the previous year and continue to lease in the current crop year).

(C) If you add adequate irrigation facilitieS to your existing non-irrigated acreage or if you acquire additional land for the current crop year that has adequate irrigation facilities, the number of eligible acres determined in section 17(e)(1)(1}(A) for irrigated acreage of a crop may be increased by multiplying it by the ratio of the total irrigated acres that you are farming this year (if greater) to the total irrigated acres that you fanned in the previous year, provided the conditions in sections 17(e}(1)Q)(B)(1}, (2) and (3) are met. If there were no irrigated acres in the previous year, the eligible Irrigated . acres for a crop will be limited to the lesser of the num r ·of eligible non- . Irrigated acres of the crop or the number of acres on which adequate irrigation facilities were added.

(ii) If you have not planted any crop in the county for which prevented planting insurance was available (you will be considered to have planted if your APH database contains actual planted acres) or have not received a prevented planting insurance guarantee in all of the four most recent crop years, and the insured crop is not required to be contracted with a processor to be insured:

(A) The number of eligible acres will be:

(1) The number of acres specified on your intended acreage report, which must be submitted to us by the sales closing date for all crops you insure for the crop year and that is accepted by us; or

(2) The number of acres specified on your Intended acreage report, which must be submitted to us within 10 days of the time you acquire the acreage and that is accepted by us, if, on the sales closing date, you do not have any acreage In a county and you subsequently acquire acreage through a method desaibed In section 17(f)(12) in time to plant it usfng good farming practices.

(B) The total number of acres listed on the intended acreage report may not exceed the number of acres of cropland in your fanning operation at the time you submit the intended acreage report.

(C) If you acquire additional acreage after we accept your Intended acreage report, the number of acres determined in section 17(e)(1)01(A) may be increased in accordance with section 17(e)(1)(1)(B) and (C).

(D) Prevented planting coverage wUl not be provided for any acreage included on the intended acreage report or any increased amount of acreage deterrnJned in accordance with section 17(e)(1)(ft)(C) if a cause of loss that may prevent planting occurred before the acreage was acquired, as determined by us.

(Iii) For any crop that must be contracted with a processor to be insured:

(A) The number of eligible acres will be:

(1} The number of acres of the crop · speciflsd in the processor contract, if the contract specifies a number of acres contracted for the crop year;

(2) The result of dividing the quantity of production stated in the processor contract by your approved yield, If the processor contract specifies a quantity of production that will be accepted (for the purposes of establishing the number of prevented planting acres, any reductions applied to the transitional yield for failure to certify acreage and production for four prior years will not be used); or

(3) Notwithstanding sections 17(e)(1)(iii)(A)(1) and (2), if a minimum number of acres or amount of production is specified in the processor contract, this amount will be used to determine the eligible acres.

(B) If a processor cancels or does not provide contracts, or reduces the contracted acreage or production from what would have otherwise been allowed, solely because the acreage was prevented from being planted due to an insured cause of loss, we will determine the number of eligible acres based on the number of acres or amount of production you had contracted in the county In the previous crop year. If the applicable Crop Provisions require that the price election be based on a contract price, and a contract is not in force for the current year, the price election will be based on the contract price in place for the previous crop year. If you did not have a processor contract in place for the previous crop year. you will not have any eligible prevented planting acreage for the applicable processor crop. The total eligible prevented planting acres In afl counties cannot exceed the total number of acres or amount of production contracted in all counties in the previous crop year.

(2) Any eligible acreage determined in accordance with section 17(e)(1) will be reduced by subtracting the number of acres of the crop (insured and uninsured) that are timely and late planted, Including acreage specified in section 16(b).

(f) Regardless of the number of eligible acres detennined in section· 17(e), prevented planting coverage will not be provided for any acreage:

(1) That does not constitute at least 20 acres or 20 percent of the Insurable crop acreage in the unit, whichever Is less (If the crop is In a whole-farm unit. the 20 acre -or 20 percen: requirement will be applied separately to each crop In the whole-fann unit). Any prevented planting acreage wHhin a field that contains planted acreage wm be considered to be acreage of the same crop, type. and practice that Is planted in the field unless:

(i) The acreage that was prevented from being planted constitutes at least 20 acres or 20 percent of the total insurable acreage in the field and you produced both crops. crop types. or followed both practices In the same field in the same crop year within any one of the four most recent crop years;

(ii) You were prevented from planting a first insured crop and you planted a second crop in the field (There can only be one first insured crop in a field unless the requirements in section 17(f)(1)(i) or (iii) are met); or

(iii) The insured crop planted in the field would not have been planted on the remaining prevented planting acreage C!:9u where rotation requirements would not be met or you already planted the total number of acres specified in the processor contract);

(2) For which the actuarial documents do not provide the Information needed to determine the premium rate. unless a written agreement designates such premium rate;

(3) Used for conservation purposes, Intended to be left unplanted under any program administered by the USDA or other government agency. or required to be left unharvested under the terms of the lease or any other agreement (The number of acres eligible for prevented planting will be limited to the number of acres specified in the lease for which you are required to pay either cash or share rent);

(4) On which the Insured crop is prevented from being planted, If you or any other person receives a prevented planting payment for any crop for the same acreage in the same crop year. excluding share arrangements. unless:

(i) It is a practice that is generally recognized by agricultural experts · or organic agricultural experts in the area- to plant the insured crop for harvest following harvest of the first insured crop, and additional coverage Insurance offered under the authority of the Ad Is available In the county for both crops In the same crop year;

(ii) For the insured crop that is prevented from being planted. you provide records acceptable to us of acreage and production that show. In at least two of the last four crop years:

(A) You have double cropped acreage on which the insured crop· that is prevented from being planted in the current crop year was grown (You may apply your history of douple cropping to any acreage of the Insured crop in the county (!&, if YOtl have double pped 100 acres of Vlheat and · soybeans In the county and you acquire an additional 100 acres in the county, you can apply that history of double cropped acreage to any of the 200 acres in the county as long as it does not exceed 100 acres)); or

(B) The acreage you are prevented from planting in the current crop year was double cropped with the insured crop that Is prevented from being planted (You may only use the history of double cropping for the same physical acres from which double cropping records were provided (!&. if a neighbor has double cropped 100 acres of wheat and soybeans in the county and you acquire your neighbor's 100 double cropped acres and an additional 100 acres in the county. you can only apply your neighbor's history of double cropped acreage to the same 100 acres that your neighbor double cropped)): and

QH) The amount of acreage you are double cropping In the current crop year does not exceed the number of acres for which you provided the records required in section 17(f)(4)(il);

(5) On which the Insured crop is prevented from being planted, if:

    Q) Any crop is planted within or prior to the late planting period or on or prior to the final planting date if no late planting period Is applicable, unless:

        (A) You meet the double cropping requirements in section 17(f)(4);

        (B) The crop planted was a cover crop; or

        (C) No benefit, including any benefit under any USDA program, was derived from the crop; or

    (ii) Any volunteer or cover crop is hayed, grazed or otherwise harvested within or prior to the late planting .period or on or prior to the final planting date if no late planting period is applicable;

(6) For which planting history or conservation plans indicate the acreage would have remained fallow for crop rotation purposes or on which any pasture or forage crop is in place on the acreage during the time planting of the insured crop generally occurs in the area. Cover plants that are seeded, transplanted, or that volunteer:

    (i} More than 12 months prior to the final planting date for the insured crop that was prevented from being planted will be considered pasture or a forage crop that is in place the cover crop is planted 15 months prior to the final planting date and remains In place during the time the insured crop would nonnally be planted); or

    (ii) Less than 12 months prior to the final planting date for the insured crop that was prevented from being planted will not be considered. pasture or a forage crop that is in place;    .

(7} That exceeds the number of acres eligible for a prevented planting payment;

(8) That exceeds the number of eHgible acres .physically available for planting;

(9) For which you cannot provide proof that you had the Inputs Qncluding. but not Hmited to, sufficient equipment and manpower) available to plant and produce a crop with the expectation of producing at least the yield used to determine your production guarantee or amount of insurance. Evidence that you previously had planted the crop on the unit w111 be considered adequate proof unless:

    Q) There has been a change in the availability of inputs since the crop was last planted that could affect your ability to plant and produce the insured crop;

    (ii) We determine you have insufficient inputs to plant the total number of insured crop acres (!&b. you will not receive a prevented planting payment if you have sufficient inputs to plant only 80 acres but you have already planted 80 acres and are claiming prevented planting on an additional 100 acres); or

    (ifi) Your planting pradlces or rotational requirements show the acreage would have remained fallow or been planted to another aop;

(10) Based on an irrigated practice production guarantee or amount of Insurance unless adequate irrigation facilities were In place to carry out an irrigated practice on the acreage prior to the insured cause of foss that prevented you from ·planting. · Acreage with an Irrigated practice production guarantee will be limited to the number of acres allowed for that practice under sections 17(e) and (f);

(11) Based on a crop type that you did not plant, or did not receive a prevented planting insurance guarantee for, In at least one of the four most recent crop years:

    (J) Types for which separate projected prices or price elections, as applicable, amounts of insurance, or production guarantees are available must be· Included ·In your APH database in· at least one of the four most · recent crop years (Crops for which the insurance guarantee is not based on APH must be reported on your acreage report in at least one of the four most recent crop years} except as allowed in section 17(e)(1)(H) or (iii); and

    (II} We will llmH prevented planting payments based on a specific crop · type to the number of acres allowed for that crop type as specified in sections 17(e} and (f); or

(12) 1f a cause of Joss has occurred·that may prevent planting at the time:

    (i) You lease the acreage (except acreage · ·you leesed the previous crop year and . contlnue·to lease In the current crop year);

    (ii) · ·You buy the acreage;

    (lli) The. acreage is released from a USDA program which prohibits harvest of a crop;

    (iv) You request a written agreement to insure the acreage; or

    (v) You acquire the acreage through means other than lease or purchase (such as Inherited or gifted acreage).

(g) If you purchased an additional coverage policy for a crop, and you executed a High-Risk Land Exclusion Option that separately Insures acreage which has been designated as 1ligh-rlsl( land by FCIC under a Catastrophic Risk Protection Endorsement for that crop, the maximum number of acres eligible for a prevented planting payment will be limited for each policy as specified in sections 17(e) and (f).

(h) If you are prevented from planting a crop for which you do not have an adequate base of eligible prevented planting acreage, as determined in accordance with section 17(e)(1), we will use acreage from another crop insured for the current crop year for which you have remaining eligible prevented planting aaeage.

(1) The crop first used for this purpose will be the insured crop that would have a prevented planting payment most similar to the payment for the crop that was prevented from being planted.

   (i) If there are still insufficient eligible prevented planting acres, the next crop used will be the insured crop that would have the next closest prevented planting payment.

   (ll) In the event payment amounts based on other crops are an equal amount above and below the payment amount for the crop that was prevented from being planted, eligible aaes for the crop with the higher payment amount will be used first.

(2) The prevented planting payment and premium will be based on:

   (i) The crop that was prevented from being planted if the insured crop with remaining eligible acreage would have resulted in a higher prevented .planting payment than would have been paid for the crop that was prevented from being.planted; or

   (ii) The crop from which eligible acres are being used if the insured crop with remaining eligible acreage will result in a lower prevented planting payment than would have been pafd for the crop that was prevented from being planted.

(3) For example, assume you were prevented from planting 200 acres of com andJtave 100 acres eligible for a com prevented planting guarantee that would result in a payment of $40 per acre. You also had 50 acres of potato eligibility that would result in a $100 per acre payment and 90 acres of grain sorghum eligibility that would result In a $30 per acre payment. Your prevented planting coverage will be based on 1OQ acres of com ($40 per acre), 90 acres of grain sorghum ($30 per acre), and an additional 10 acres of com (using potato effgible acres and paid as com at $40 per acre). Your prevented planting. payment would be $7,100 ($4,000 + $2,700 + $400).

(4) Prevented planting coverage will be allowed as specified in section 17(h) only if the crop that was prevented from being planted meets all policy provisions, except for having an adequate base of eligible prevented planting acreage. Payment may be made based on crops other than those that were prevented from being planted even though other policy provisions, including but not limited to, processor contract and rotation requirements, have not been met for the crop whose eligible acres are being used.

(5) An additional administrative fee will not be due as a result of using eligible prevented planting acreage as specified in section 17(h).

(i) The prevented planting payment for any eligible acreage within a unit wiU be detennined by:

(1) Multiplying the prevented planting coverage level percentage you elected, or that is contained in the Crop Provisions if you did not elect a prevented planting coverage level percentage, by:

   (i) Your amount of insurance per acre; or

   (ii) The amount determined by multiplying the production guarantee (per acre) for timely planted acreage of the insured crop (or type, if applicable) by your price election or your projected price, whichever is applicable;

(2) Multiplying the result of section 17(1)(1) by the number of eligible prevented planting acres in the unH; and

(3) Multiplying the result of section 17(i)(2) by your share.

18. Written Agreements.

Terms of this policy which are specifically designated for the use of written agreements may be altered by written agreement in accordance with the following:

(a) You must apply In writing for each written agreement (induding· renewal of ·a written agreement) no later than the sales closing 'date, except as provided In section 1'8(e);

(b) The application for a written·agreement must contain all variable terms of the contract between you and us that will be In effect if the· written agreement Is not approved;

(c) If ·approved by FCIC, the written agreement will indude all variable terms of the cantract, including, but not limHed to, the crop; practice, type or variety; guarantee; premium rate; and projected price, harvest price, price election or amount of insurance, as applicable, or the Information needed to determine such variable terms. If the written agreement is for a county:

(1) That has a price election or amount of insurance stated in the Special Provisions, or an addendum thereto, for the crop, practice, type or variety, .the written agreement will contain the pries election or· amount of.insurance stated In ·· ·the Special Provisions or an addendum thereto, for the crop, practice, type or variety;

· (2) That does not have price elections ·or amounts of Insurance stated in the Special Provisions, or an addendum thereto, for the crop, practice, , · type or variety, the written agreement will contain a price election or amount of insurance that does not exceed the price election or amount of insurance contained in the Special Provisions, or an addendum thereto, for the county that is used to establish the other terms of the written agreement, unless otherwise authorized by the Crop Provisions;

(3) For which revenue protection is not available for the crop, but revenue protection is available in the State for the crop, the written agreement will contain the information used to establish the projected price and harvest price, as appUcable, for that State; or

(4) In a State for which revenue protection is not available for the crop, but revenue protection is available for the crop in another State, the written agreement Is available for yield protection only, and will contain the information

needed to determine the projected price for the crop from another State as determined by FCIC;

(d) Each written agreement will only be valid for the number of crop years specified in the written agreement, and a multi-year written agreement

(1) WIIJ only apply for any particular crop year designated in the written agreement if an terms and conditions in the written agreement are still applicable for the crop year and the conditions under which the written agreement has been provided have not changed prior to the beginning of the insurance period (If conditions change during or prior to the crop year, the written agreement will not be effective for that crop year but may still be effective for a subsequent crop year if conditions under which the written agreement has been provided exist for such year);

(2) May be canceled in writing by:

(i) FCIC not Jess than 30 days before the cancellation date If it discovers that any term or condition of the written agreement. including the premium rate, is not appropriate for the crop; or

(ii) You *or* us on or before the cancellation date;

(3) That is not renewed in writing after it expires, is not applicable for a crop year, or is canceled. then insurance coverage will be in accordance with the terms and conditions stated in this policy, without regard to the written agreement; and

(4) Will be automatically canceled if you transfer your policy to another insurance provider (No notice will be provided to you and for any subsequent crop year, for a written agreement to be effective, you must timely request renewal of the written agreement in accordance with this section);

(e) A request for a written agreement may be submitted:·

(1) After the sales closing date, but on or before the acreage reporting date, if you demonstrate your physical fnabinty to submit the request on or before the sales closing date (ft&. you have been hospitalized or a blizzard has made it impossible to submit the written agreement request in person or by mail);

(2) For the first year the written agreement is requested:

(i) On or before the acreage reporting date to:

(A) Insure unrated land, or an unrated practice, type or variety of a crop; although, if required by FCIC, such written agreements may be approved only after appraisal of the acreage by us and:

(1) The crop's potential is equal to or exceeds 90 percent of the yield used to determine your production guarantee or amount of insurance; and

(2) You sign the written agreement no later than the date the first field is appraised or by the expiration date for you to accept the offer, whichever comes first; or

(B) Establish optional units in accordance with FCIC procedures that otherwise would not be allowed, change the premium rate or transitional yield for designated high-risk land, or insure acreage that is greater than five percent of the planted acreage in the unit where the acreage has not been planted and harvested or insured in any of the three previous crop years;

(ii) On or before the cancellation date to insure a crop in a county that does not have actuarial documents for the crop (If the Crop Provisions do not provide a cancellation date for the county. the cancellation date for other insurable crops in the same State that have similar final planting and harvesting dates will be applicable); or

(Oil) On·or before ttie date specified In the Crop Provisions or Special Provisions; or

(3) For adding land or a crop to either an existing written agreement or· a request for a written agreement, provided the request is submitted by th& applicable deadline specffied In section 18;

(f) A request for a written agreement must contain:

(1) For all written agreement requests:

(l) A completed "Request for Actuarial Change• form;

(ii) An APH form (except for polfcies that do not require APH) containing all the information needed to determine the approved· yield for the current crop year (completed APH form). signed by you, or an unsigned, completed APH form with the applicable production reports sfgned and dated by you that are based on verifiable records of actual yields for the crop and county for which the written agreement Is being requested ·(the actual yields do not necessarily have to be from the same physical · acreage for which you are requesting a written agreement) for at least the most recent crop year In which the crop was planted during the base period and verifiable records of actual yields if required by FCIC;

(iii) Evidence from agricultural experts or organic agricultural experts, as applfcable, that the crop can be produced fn the area if the request is to provide insurance for practices. types. or varieties that are not insurable, unless we are notified in writing by FCJC that such evidence Is not required by FCIC;

(iv) The legal description of the land (In areas where legal descriptions are available) and the FSA farm serial number including tract and fiefd numbers, if available. The submission must also Include an FSA aerial photograph, or field boundaries derived by a Geographic Information

System or Global Positioning System, or other legible maps delineating field boundaries where you intend to plant the crop for which insurance is requested;

(v) For any perennial crop, an inspection report completed by us; and

(vi) All other information that supports your request for a written agreement (including but not limited to records pertaining to levees, drainage systems, flood frequency data, soil types, elevation, etc.);

(2) For written agreement requests for counties without actuarial documents for the crop, the requirements in section 18(f)(1) (except section 18(f)(1)(il)) and:

(i) For a crop you have previously planted in the county or area for at least three years:

(A) A completed APH form signed by you (only for crop policies that require APH) based on verifiable production records for at least the three most recent crop years in which the crop was planted; and

(B) Verifiable production records for at least the three most recent crop years in which the crop was planted:

(1) The verifiable production records do not necessarily have to be from the same physical acreage for which you are requesting a written agreement; and

(2) Verifiable production records do not have to be submitted if you have Insured the crop in the county or area for at least the previous three crop years and have certified the yields on the applicable production reports or th3 yields are based on your insurance claim (although you are not required. to submit production records, you still must maintain production records In accordance with section 21);

(ii) For a crop you have not previously planted in the county or area .for at least three years:

(A) A completed APH form signed by you (only for crop policies that require APH) based on verifiable production records for at feast the three most recent crop years for a similar crop from acreage:

(1) In the county; or

(2) In the area if you have not produced the crop in the county; and

(B) Verifiable production records for at least the three most recent crop years in which the similar crop was planted:

(1) The verifiable production records for the similar crop do not necessarily have to be from the same physical acreage for which

you are requesting a written agreement; and

(2) Verifiable production records do not have to be submitted if you have insured the similar crop for at least the three previous crop years and have certified the yields on the appficable production reports or the yields are based on your insurance claim (although you are not required to submit production records, you still must maintain production records in accordance with section 21);

(C) If you have at feast one year of production records, but less than three years of production records, for the crop In the county or area but have production records for a similar crop in the county ·or area suCh that the combination of both sets of records results In at leasf three years of production records, you must provide · the information required in sections 18(f)(2Xi)(A) &. (B) for the years you grew the crop in the county or area and the infonnation required in sections 18(f)(2)(iiXA) & (B) regardfng the similar crop for the remaining years; and ·

(D) A similar crop to the crop for which a written agreement is being requested must:

(1) Be included in the same category · of crops, !Jb row crops (including, but not limited to, small grains,·coarse grains, and oil seed crops),· vegetable· crops grown in rows, tree crops, vine crops. bush crops etc... as defined by FCIC;

(2) Have ·substantially the same growing· season .·(i.e., normally planted around the same dates and harvested around the same dates);

(3) Require comparable agronomic conditions (Mb comparable needs for water, soil, etc.); and

(4) Be subject to substantially the same risks (frequency and severity of loss would be expected to be comparable from the same cause of toss);

(iii) The dates you and other growers in the area normally plant and harvest the crop, if applicable;

(iv) The name, location of, and approximate distance to the place the crop will be sold or used by you;

(v) For any irrigated practice, the water source. method of Irrigation, and the amount of water needed for an irrigated practice for the crop; and

(vi) All other information that supports your request for a written agreement (such as publications regarding yiefds, practices, risks, climatic data, etc.); and

(3) Such other information as specified in the Special Provisions or required by FCIC;

(g) A request for a written agreement will not be accepted if:

(1) The request is submitted to us after the applicable deadline contained In sections 18(a) or (e);

(2) All the information required in section 18(f) is not submitted to us with the request for a written agreement (The request for a written agreement may be accepted if any missing Information is available from other acceptable sources);

(3) The request is to add land to an existing written agreement or to add land to a request for a written agreement and the request to add the land is not submitted by the applicable deadfine specified in sections 18(a) or (e); or

(4) The request is not authorized by the policy;

(h) A request for a written agreement will be denied if:

(1) FCIC determines the risk Is excessive;

(2) Your APH history demonstrates you have not produced at least 50 percent of the transitional yield for the crop. type. and practice obtained from a county with similar agronomic conditions and risk exposure; .

(3) There is not adequate information available to establish an actuarially sound premium rate and insurance coverage for the crop.and acreage;

(4) The crop was not previously grown in the county or there is no evidence of a market for the crop based on sales receipts, contemporaneous feeding records or. a contract for the crop (applicable only. for counties without actuarial documents); or

(5) Agricultural experts or. organic agricultural experts determin ·ttte crop is not adapted to the county;

(i) A written agreement will be denied unless:

(1) FCIC approv the written agreement;

(2) The original written. agr ement is·signed by you and delivered· to. us. or postmarked. not later than the expiration date for you to accept the offer;

(3) We accept the written agreement offer; and

(4) The crop meets the minimum appraisal amount specffied in section 18(e)(2)(i)(A)(1). if applicable;

0) Multi-year written agreements may be canceled and requests for renewal may be rejected if the severity or frequency of your loss experience under the written agreement is significanUy worse than expected based on the information provided by you or used to establish your premium rate and the loss experience of other crops with similar risks in the area;

(k) With respect to your and our ability to reject an offer for a written agreement:

(1) When a sfngle Request for Actuarial Change form is submitted, regardless of how many requests for changes are contained on the form.

you and we can only accept or reject the written agreement fn its entirety (you cannot reject specific terms of the written agreement and accept others);

(2) When multiple Request for Actuarial Change forms are submitted, regardless of when the forms are submitted, for the same condition or for the same crop (I.e.. to insure com on ten legal descriptions where there are no actuarial documents in the county or the request Is to change the premium rates from the high-risk rates) all these forms may be treated as one request and you and we will only have the option of accepting or rejecting the written agreement in its entirety (you cannot reject specific terms of the written agreement and aceept others);

(3) When multiple Request for Actuarial Change forms are submitted, regardless of when the forms are submitted, for the cfrfferent conditions or for different crops. separate agreements may be issued and you and we wiD have the option to accept or reject each written agreement; and

(4) If we reject an offer for a written agreement approved by FCIC, you may seek arbitration or mediation f our decision to reject the offer In accordance with section 20;

(I) Any information that Is submitted by ·you after the applicable deadrtnes in sections 18(a) and (e) will not be considered, unless such Informatio is specifically requested In acCordance with section 1'8(f)(3);

(m) If the written agreement or the policy is canceled for any· reason, or the period for which an existing written agreement Is in effect ends, a request for renewal of the written agreement must contain all the information required by this secUon and· be submitted in accordance with section 18(a), unless otherwise specified by FCIC;

(n) If a request for a written agreement is not approved by FCIC · a request f r a. written agreement for any subsequent crop year that fails to address "the stated basis for the · denial will not be accepted (If the request for a wrltten agreement contains the same information that was previously rejected or denied, you will not have :any right to arbitrate. mediate or appeal the non-acceptance of yOur request); and

(o) If you disagree With any· determination made by FCIC under section 18, you may obtain administrative review in accordance with 7 CFR part 400, subpart J or appeal in accordance with 7 CFR part 11. unless· you have failed to comply with the provisions contained in section 18(g) or section 18(i)(2) or (4).

19. Crops as Payment.
You must not abandon any crop to us. We will not accept any crop as compensation for payments due us.

20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.

(a) If you and we fail to agree on any determination made by us except those specified in section 20(d) or (e). the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in

accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us. or our agent or loss adjuster, is disqualified from hearing the dispute.

(1) All disputes involving detennlnations made by us, except those specified in section 20(d) or (e), are subject to mediatlon or arbitration. However, if the dispute In any way Involves a policy or procedure interpretation. regarding whether a specific policy provision or procedure ls applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

   ) Any interpretation by FCIC will be binding in any mediation or arbitration.

(ii) Failure to obtain any required interpretation from FCIC will result In the nullification of any agreement or award.

(iii) An Interpretation by FCIC of a policy provision is considered a determination that is a matter of general applicability.

(iv) An interpretation by FCIC of a procedure may be appealed to the National Appeals Division in accordance with 7 CFR part 11.

(2) Unless the dispute ls resolved through mediation, the arbitrator must provide to you and us a written statement describing the issues in dispute, the factual findings. the determinations and the amount and basis for any award and breakdown by claim for any award. The statement must also include any amounts awarded for interest. Failure of the arbitrator to provide such written .statement will result in the nullification of all detennlnations of the arbitrator. All agreements reached through settlement, including those resulting from mediation, must be in writing and · contain at a minimum a statement of the . issues fn dispute and the amount of the setuement.

(b) Regardless of whether mediation is elected:

(1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

(2) If you fall to inJtiate arbitration in accordance with section 20(b)(1) and complete the process, you wfll not be able to resolve the dispute through judicial review;

(3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered; and

(4) In any suit, if the dispute in any way involves a policy or procedure Interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it Is applicable, or the meaning of any pollcy provision or

procedure, an interpretation must be obtained from FCIC in JCCOrdance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

(c) Any decision rendered In arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration.

(d) With respect to good farming practices:

(1) We wHI make decisions regarding what constitutes a good fanning practice and detenninatlons of assigned ·production for uninsured causes for your failure to use good fanning practices.

(i) If you disagree with our decision of what constitutes a good fanning practice, you must request a determination from FCIC of what constitutes a good fanning practice before filing any·suit against FCIC.

(ii) If you disagree with our detennlnation of the amount of assigned production, you must use the arbitration or mediation process contained Inthis section.

(iH) You may not sue us for our decisions regarding whether good fanning practices were used by you.

(2) FCJC will make determinations regarding what constitutes a good farming practice. If you do not agree with any determination made by FCIC:

(i) You may request reconsideration by FCIC ·of this detennlnation in accordance with the recensfderatfon process established for this purpose and published at 7 CFR part 400, subpart J; or

(ii) You may file.suit against FCIC.

(A)· You. are not required to request reconsideration from FCIC before filing suit. ·

(B) Any suit must be brought against FCIC in the United States district court for ·· the district in which the insured ·acreage is located.

(C) Suit must be filed against FCIC not later than one year after the date:

(1) Of the determination; or

(2) Reconsideration is completed, if · reconsideration was requested under section 20(d)(2)(i).

(e) Except as provided in sections 18(n) or (o), or 20(d) or (k), if you disagree with any other detenninatlon made by FCIC or any claim where FCIC is directly involved In the claims process· or directs us In the resolution of the claim, you may obtain an administrative review in accordanee with 7 CFR part 400, subpart J (administrative review) or appeal in accordance with 7 CFR part 11 (appeal).

(1) If you elect to bring suit after completion of any appear, such suit must be filed against FCIC not tater than one year after the date of the decision rendered in such appeal.

(2) Such suit must be brought in the United States

district court for the district in which the insured acreage is located.

(3) Under no circumstances can you recover any attorney fees or other expenses, or any punitive, compensatory or any other damages from FCIC.

(f) *In* any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding. Conflicts between this polfcy and any state or local laws will be resolved In accordance with section 31. If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.

(g) To resolve any dispute through mediation, you and we must both:

(1) Agree to mediate the dispute;

(2) ·Agree on a mediator; and

(3) • Be present, or have a designated representative who has authority to settle the case present, at the·mediation.

(h) ·Except as provided In section 20(i), no award or setUement In mediation, arbitration, appeal, administrative review or reconsideration process or judicial ·review can exceed the amount of liability established or which should have been established under the polfcy, except for interest awarded in aecordance with section 26.

(i) In a judicial review only, you may recover attorneys fees or other expenses, or any punitive. compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled. Requests for such a determin tion should be addressed to the following: USDAIRMA/Deputy Administrator of Compliance/ Stop 0806, 1400 Independence Avenue,· SW., Washington, D.C. 20250.0806.

·· 0> If FCIC elects to participate in the adjustment of your claim, or modifies, revises or corrects your claim, prior to payment, you may not bring an arbitration, mediation or litigation action against us. You must request administrative review or appeal in accordance with section 20(e).

(k) Any determination made by FCIC that is a matter of general applfcabflity is not subject to administrative review under 7 CFR part 400, subpart J or appeal under 7 CFR part 11. If you want to seek judicial review of any FCIC determination that is a matter of general appllcabifity, you must request a determination of non-appealability from the Director of the National Appeals Division in accordance with 7 CFR 11.6 before seeking judicial review.

21. Access to Insured Crop and Records, and Record Retention.

(a) We, and any emproyee of USDA authorized to investigate or review any matter relating to crop insurance, have the right to examine the insured crop and aU records related to the insured crop and any mediation, arbitration or litigation invoMng the insured crop as often as reasonably required during the record retention period.

(b) You must retain, and provide upon our request, or the request of any employee of USDA authorized to investigate or review any matter relating to crop insurance:

(1) Complete records of the planting, replanting, Inputs, production, harvesting, and disposition of the Insured crop on each unit for three years after the end of the crop year (This requirement also applies to all such records for acreage that Is not Insured);

(2) All records used to establish the amount of production you certified on your production reports used to compute your approved yield for three years after the calendar date for the end of the Insurance period for the crop year for which you initially certified such records, unless such records have already been provided to us {M, if you are a new Insured and you certify 2007 through 2010 crop year production records in 2011 to detennlne your approved yield for the 2011 crop year, you must retain all records from the 2007 through 2010 crop years through the 2014 crop year.· If you subsequenUy certify records of the 2011 crop year in 2012 to determine your approved yield for the 2012 crop year, you must retain the 2011 crop year records through the 2015 crop year and so forth for each subsequent year of production records certified); and

(3) While you are not required to maintain records beyond the record retention period specified in section 21(b)(2), at any time, ifwe·or FCIC have evidence that you, or anyone assisting you, knowingly misreported any information related to any yield you have certified, we or FCIC will replace all yields fn your APH database determined to be incorrect vyith the lesser of an assigned yield determined IN accordance with section 3 or the yield determined to be correct:

0) If an overpayment has been made to you, you will be· required to repay the overpaid amount; and

(li) Replacement of yields in accordance with section 21(b)(3) does not exempt you from other sanctions applicable under the terms of the policy or any applicabfe law.

(c) We, or any employee of USDA authorized to Investigate or review any matter relating to crop insurance, may extend the record retention period beyond three years by notifying you of such extension in writing.

(d) By signing the application for insurance authorized under the Act or by continuing insurance for which you have previously applied, you authorize us or USDA, or any person acting for us or USDA authorized to investigate or review any matter relating to crop insurance, to obtain records relating to the planting, replanting, Inputs, production, harvesting, and disposition of the insured *aop* from any person who may have custody of such records, including but not limited to, FSA offices. banks, warehouses, gins. cooperatives, marketing

associations, and accountants. You must assist in obtaining all records we or any employee of USDA authorized to investigate or review any matter relating to crop insurance request from third parties.

(e) Failure to provide access to the insured crop or the farm, authorize access to the records maintained by third parties or assist in obtaining such records will result in a determination that no Indemnity is due for the crop year fn which such failure occurred.

(f) Failure to maintain or provide records will result in:
   (1) The imposition of an assigned yield in accordance with section 3(f)(1) and 7 CFR part 400, subpart G for those crop years for which you do not have the required production records to support a certified yield;
   (2) A determination that no indemnity is due *if* you fail to provide records necessary to determine your loss;
   (3) Combination of the optional units into the applicable basic unit;
   (4) Assignment of production to the units by us if you fail to maintain separate records:
       (I) For your basic units; or
       .(H) For any uninsurable acreage; and
   (5) The imposition of consequences specified in section 6(g), as applicable.

(g) If the imposition of an assigned yield under section 21(f)(1) would affect an indemnity, prevented planting payment or replant payment that was paid in a prior crop year, such claim will be adjusted and you will be required to repay any overpaid amounts.

22. other Insurance.
(a) Other Like Insurance - Nothing in this section prevents you from obtaining other insurance not authorized under the Act. However, unless specifically required by policy provisions, you must not obtain any other crop insurance authorized under the Act on your share of the Insured crop. If you cannot dsmonstrate that yo!J did not intend to have more than one policy in effect, you may be subject to the ponsequences authorized under this policy, the Act, or any other applicable statute. If you can demonstrate that you did not Intend to have more than one policy in effect (For example, an application to transfer your policy or written notification to an insurance provider that states you want to purchase, or transfer, insurance and you want any other polldes for the crop canceled would demonstrate you did not intend to have duplicate policies), and:
   (1) One is an additional coverage policy and the other is a Catastrophic Risk Protection policy:
       (i) The additional coverage policy will apply if both policies are with the same Insurance provider or, if not, both insurance providers agree; or
       (ii) The policy with the earliest date of application will be in force if both insurance providers do not agree: or
   (2) Both are additional coverage policies or both are Catastrophic Risk Protection policies, the policy with the earliest date of applfcation will be in force and the other policy will be void, unless both policies are with:

() The same insurance provider and the insurance provider agrees otherwise; or
(ii) Different insurance providers and both insurance providers agree otherwise.

(b) Other Insurance Against Fire - If you have other insurance, whether valid or not, against damage to the insured crop by fire during the ·insurance period, and you have not excluded coverage for fire from this policy, we will be liable for loss due to fire caused by a naturally occurring event only for the smaller of:
   (1) The amount of indemnity detennined pursuant to this poJJcy without regard to such other insurance; or
   (2) The amount by which the loss from fire is determined to exceed the indemnity paid or payable under such other insurance.

(c) For the purpose of section 22(b), the amount of foss from fire will be the difference between the total value of the insured crop before the fire and the total value of the insured crop after the fire. This amount will· be· determined In accordance with the provisions in section 35.

23. · Conformity to Food Security Act.
Although ·your violation of a number of federal statutes, including the Act, may cause cancellation, termination, or voidance of your insurance contract, you should be specificaUy aware that your policy will be canceled *if* you are determined to be ineUgible to receive benefits under the Act due to violation of the controlled substance provisions (title XVII) of the Food Security Act of 1985 (Pub. L. 99-198) and the regulations promulgated under the Act by USDA. Your insurance policy will be canceled if you are determined, by the appropriate Agency, to be in violation of these provisions. We will recover any and all monies paid to you or received by you during your period of Ineligibility, and your premium will be refunded, less an amount for expenses and handling equal to 20 percent of the premium paid or to be paid by you.

24. Amounts Due Us.
(a) Interest will accrue at the rate of 1.25 percent simple Interest per calendar month. or any portion thereof, on any unpaid amount owed to us or on any unpaid administrative fees owed to FCIC. For the purpose of premium amounts ·owed to us or administrative fees owed to FCIC, interest Will start to accrue on the first day of the month following the premium billing date specified in the Special Provisions. We wiD collect any unpaid amounts owed to us and any interest owed thereon and, prior to the termination date, we will collect any administrative fees and interest owed thereon to FCIC. After the termination date, FCIC will collect any unpaid administrative fees and any interest owed thereon for any catastrophic risk protection polfcy and we will collect any unpaid administrative fees and any interest owed thereon for additional coverage polldes
(b) For the purpose of any other amounts due us, such as repayment of indemnities found not to have been earned, interest will start to accrue on the date that notice is issued to you for the collection of the unearned amount. Amounts found due under this paragraph will not be charged interest if payment is made within 30 days of issuance of the notice by us.

The amount will be considered delinquent if not paid within 30 days of the date the notice is issued by us.

(c) All amounts paid will be applied first to expenses of collection (see subsection (d) of this section) if any. second to the reduction of accrued interest. and then to the reduction of the principal balance.

(d) If we determine that H Is necessary to contract with a collection agency or to employ an aHomey to assist in collection. you agree to pay all of the expenses of collection.

(e)· The portion of the amounts owed by you for a policy authorized under the Act that are owed to FCIC may be collected In part through administrative offset from payments you receive from United States government agencies In accordance with 31 U.S.C. chapter 37. Such amounts include all administrative fees. and the share of the overpaid indemnities and premiums retained by FCIC plus any interest owed thereon.

25. (Reserved]

26. Interest Umltatfons.

We wifl pay simple interest computed on the net indemnity ultimately found to be due by us or by a final judgment of a court of competent jurisdiction. from and including the 61st day after the date you sign. date. and submit to us the properly completed claim on our form. Interest will be paid only if the reason for our failure to timely pay is NOT due to your failure to provide infonnation or other material necessary for the computation or payment of the indemnity. The interest rate wifl be that established by the Secretary of the Treasury under section 12 of the Contract Disputes Ad of 1978 (41 U.S.C. 611) and published in the Federal Reaister semiannually on or about January 1 and July 1 of each year. and may vary with each publication.

27. Concealment, Misrepresentation or Fraud.

(a) If you have falsely or fraudulently concealed the fact that you are ineligible to receive benefits under the Ad or if you or anyone assisting you has intentionally concealed or misrepresented any material fad relating to this policy:
  (1) This policy will be voided; and
  (2) You may be subject to remedial sanctions in accordance with 7 CFR part 400. subpart R.

(b) Even though the policy is void. you will still be required to pay 20 percent of the premium that you would otherwise be required to pay to offset costs incurred by us in the service of this policy. If previously paid, the balance of the premium will be retumed.

(c) Voidance of this policy will result in you having to reimburse all indemnHies paid for the crop year In which the voidance was effective.

(d) Voidance will be effective on the first day of the insurance period for the crop year In which the act occurred and will not affect the policy for subsequent crop years unless a violation of this section also occurred in such crop years.

(e) If you willfully and intentionally provide false or Inaccurate information to us or FCIC or you fail to comply with a requirement of FCIC. in accordance with 7 CFR part 400, subpart R. FCIC may impose on you:

(1) A civil fine for each violation in an amount not to exceed the greater of:
  (i) The amount of the pecuniary gain obtained as a result of the false or inaccurate information provided or the noncompliance with a requirement of FCIC; or
  01) $10,000; and

(2) A disqualification for a period of up to 5 years from receiving any monetary or non-monetary benefit provided under each of the following:
  (I) Any crop insurance polfcy offered under the Act;
  (II) The Farm Security and Rural Investment Act of 2002 (7 U.S.C. 7333 et seq.);
  (llf) The Agricultural Ad of 1949 (7 U.S.C. 1421 .);
  (iv) The Commodity CredH Corporation Charter Ad (15 U.S.C. 714 _ ) ;
  (v) The Agricultural Adjustment Act of 1938 (7 U.S.C. 1281 ftl.Hg.);
  (vi) Title XII of the Food Security Act of 1985 (16 U.S.C. 3801 §!.Bg.);
  (vii) The ConsoUdated Farm and Rural Development Act (7 U.S.C. 1921 m...ug.); and
  (viii) Any federal law that provides assistance to a producer of an agricultural commodity affected by a crop loss or a decline in the prices of agricultural commodities.

28. Transfer of Coverage and Right to Indemnity.

If you transfer any part of your share during the crop year. you may transfer your coverage rights. if the transferee is eligible for crop insurance. We will not be liable for any more than the liablnty determined in accordance with your policy that existed before the transfer occurred. The transfer of coverage rights must be on our form and will not be effective untal approved by us in writing. Both you and the transferee are jointly and severally liable for the payment of the premium and administrative fees. The transferee has all rights and responsibilities under this · policy consistent with the transferee's Interest.

29. Assignment of Indemnity. ·

(a) You may assign your right to an indemnity for the crop year only to creditors or other persons to whom you have a financial debt or other pecuniary obligation. You may be required to provide proof of the debt or other pecuniary obligation before we wm accept the assignment of Indemnity.

(b) All assignments must be on our form and must be provided to us. Each assignment form may contain more than one creditor or other person to whom you have a financial debt or other pecuniary obligation.

(c) Unless you have provided us wHh a properly executed assignment of Indemnlty. we will not make any payment to a lienholder or other person to w om you have a financial debt or other pecumary obligation even if you may have a lien or other assignment recorded elsewhere. Under no circumstances will we be liable:
  (1) To any lienholder or other person to whom you have a financial debt or other pecunaary obligation where you have failed to include such

lienholder or person on a properly executed assignment of indemnity provided to us; or

(2) To pay to all lienholders or other persons to whom you have a financial debt or other pecuniary obligation any amount greater than the total amount of indemnity owed under the policy.

(d) If we have received the properly executed assignment of indemnity form:

(1) Only one payment will be issued jofnUy in the names of all assignees and you; and

(2) Any assignee will have the right to submit all loss notices and forms as required by the policy.

(e) If you have suffered a loss from an Insurable cause and fail to file a claim for indemnity within the period specified in section 14(e). the assignee may submit the claim for indemnity not later than 30 days after the period for filing a claim has expired. We will honor the terms of the assignment only if we can accurately determine the amount of the claim. However. no action will lie against us for faUure to do so.

30. (Reserved]

31. Applicability of State and Local Statutes.

If the provisions of this policy conmct with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes. this policy. and the applicable regulations do not apply to this policy.

32. Descriptive Headings.

The descriptive headings of the various policy provisions are formulated for convenience only and are not Intended to affect the construction or meaning of any of the policy provisions.

33. Notices.

(a) All notices required to be given by you must be in writing and received by your crop insurance agent within the designated time unless otherwise provided by the notice requirement. Notices required to be given Immediately· may be by telephone or in person and confirmed in writing. Time of the notice will be determined by the time of our receipt of the written notice. If the date by which you are required to submit a report or notice falls on Saturday, Sunday, or a Federal holiday. or if your agenfs office Is. for any reason. not open for business on the date you are required to submit such notice or report. such notice or report must be submitted on the next business day.

(b) All notices and communications required to be sent by us to you will be mailed to the address contained in your records located with your crop Insurance agent. Notice sent to such address will be conclusively presumed to have been received by you. You should advise us immediately of any change of address.

34. Units.

(a) You may elect an enterprise unit or whole-farm unit in accordance with the following:

(1) For crops for which revenue protection Is available. you may elect:

(I) An enterprise unit if you elected revenue protection or yield protection: or

(ii) A whole-farm unit If you elected:

(A) Revenue protection and revenue protection is provided unless limited by the Special Provisions; or

(B) Yield protection only if whole-farm units are allowed by the Special Provisions;

(2) For crops for which revenue protection is not available, enterprise units or whole-farm units are available only if allowed by the Special Provisions;

(3) You must make such election on or before the earliest sales closing date for the Insured crops in the unit and report such unit structure on your acreage report:

(i) For counties in which the actuarial documents specify ·a fall or winter sales closing date and a spring sales closing date, you may change your unit erection on or before the· spring safes closing date (earliest spring sales dosing date for crops in the urift if eJecting ·a·whole-farm unit) if you do not have any insured fall planted acreage of the insured crop;

(ii) .Your unit se!ection will remain in effect from year to year unless·you· notify us in writing by the earliest sales closing date for the crop year for which you wish to change this election; and

(iii) These units may not be further divided except as specified herein;

(4) For an enterprise unit

(f) To qualify, an enterprise unit must contain all of the insurable acreage of the same Insured crop in:

(A) Two or more sections, if sections are the basis for optional units where the insured acreage is located;

(B) Two or more section equivalents determined in accordance with FCIC issued · procedures. if section equivalents are the basis for optional units where ·the insured acreage is located or are applicable to the insured acreage;

·(C) Two or more FSA farm serial numbers. if FSA farm serial numbers are the basis for optional units where the insured acreage is located;

(D) Any combination of two or more sections, section equivalents. or FSA farm serial numbers, if more than one of these are the basis for optional units where the acreage is located or are applicable to the Insured acreage (.§&, if a portion of your acreage is located where sections are the basis for optional units and another portion of your acreage is located where FSA farm serial numbers are the basis for optional units, you may qualify for an enterprise unit based on a combination of these two parcels);

(E) One section. section equivalent, or FSA farm serial number that contains

at least 660 planted acres of the insured crop. Ycu may qualify under this paragraph based only on the type of parcel that is utilized to estabUsh cpticnal units where ycur insured acreage is located (!&. if having two cr mere sections is the basis for optional units where the insured acreage is located, you may quartfy for an enterprise unit if you have at least 660 planted acres of the insured crop in one section); or

(F) Two or more units established by written agreement; and

(II) At least two of the sections. section equivalents, FSA farm serial numbers, or units established by written agreement in section 34(a)(4)(i)(A), (B), (C), (D), or (F) must each have planted acreage that constitutes at least the lesser of 20 acres or 20·percent of the insured crop acreage in the enterprise unit. If there is planted acreage In more than two sections, section equivalents; FSA farm. serial numbers or units established· by written agreement in section 34(a)(4)(i)(A), (B), (C), (D), or (F), these can ·be aggregated to form at least two parcels to meet this requirement For example, if sections are the basis for optional units where the insured acreage *is* located and you have 80 planted aaes in section one, 10 planted acres in section two, and 10 planted acres in section three, you may aggregate sections two and three to meet this requirement

(ifi) The crop must be insured under revenue protection or yield protection, unless otherwise specified in the Special Provisions;

(iv) If ycu want to ·change your unit structure from enterprise units to basic or optional units in any subsequent crop year, you must maintain separate records of acreage· and production:

(A) For each basic uni" to be eligible to use records to establish the production guarantee for the basic unit; or

(B) For optional units, to qualify for optional units and to be eligible to use such records to establish the production guarantee for the optional units;

(v) If ycu do not comply with the productfon reporting provisions in section 3(f) for the enterprise unit, your yield for the enterprise unit will be determined in accordance with section 3(f)(1);

(vi) You must separately designate on the acreage report each section or other basis in section 34(a)(4)(i) you used to quanfy for an enterprise unit; and

(vii) If we discover ycu do not qualify for an enterprise unit and such discovery is made:

(A) On or before the acreage reporting date, your unit division will be based on the basic or optional units, whichever you report on ycur acreage report and qualify for; or

(8) At any time after the acreage reporting date, we will assign the basic unit structure; and

(5) For a whole-farm unit:
(i) To qualify:
(A) All crops In the whole-farm unit must be insured:

(1) Under revenue protection *Qf* you elected the harvest price exclusion for any crop, ycu must elect it for all crops in the whole-farm unit), unless the Special Provisions allow whole-farm units for another plan of insurance and you insure ·all· crops in the whole-fann unit under. such plan (!&. if you plant com and soybeans for. which ycu h ve elected revenue protection and you plant-canola for which you have elected yield protection, the com, .soybeans and canota would b ssfgned the unit structure fn accordance with section 34(a)(5)(v));

(2) With us (!&. if you insure your com and canola with us and your soybeans with a cflfferent insurance provider, the com, soybeans and canola would be assigned the unit structure in accordance with section 34(a)(5)(v)); and

(3) At the same coverage level (!&. if you elect to insure ycur com and canola at the 65 percent coveraae level and your soybeans at the 75 percent coverage level, the com, soybeans and canola ··would be assigned the · unit ·structure in accordance with section 34(a)(5)(v));

(B) A whole-farm unit must contain all of the insurable acreage of at least two crops; and

(C) At least two of the insured crops must each have planted acreage that constitutes 10 percent or more of the total planted acreage liability of all insured crops in the whole-farm unit (For crops for which revenue protection is available, liability will be based on the applicable projected price only for the purpose of section 34(a)(5)(i)(C));

(ii) You will be required to pay separate administrative fees for each crop included in the whole-farm unit;

(iii) You must separately designate on the acreage report each basic unit for each crop in the whole-fann unit;

(iv) If you want to change your unit structure from a whole-farm unit to basic or optional units in any subsequent *aop* year. you must maintain separate records of acreage and production:

(A) For each baste uni to be eligible to use such records to establish the production guarantee for the basic units; or

(8) For optional units, to qualify for optional units and to be eligible to use such records to establish the production guarantee for the optional units; and

(v) If we discover you do not qualify for a whole-farm unit for at least one Insured crop because, even though you elected revenue protection for all your crops:

(A) You do not meet all of the other requirements in section 34(a)(5)(i), and such discovery is made:

(1) On or before the acreage reporting date, your unit division for all crops for which you elected a whole-farm unit will be based on basic or optional units, whichever you report on your acreage report and qualfly for; or

(2) At any time after the acreage reporting date, we will assign the basic unit structure for all crops for which you elected a whole-farm unit; or

(B) It was not possible to establish a projected price for at least one of your crops, your unit division will be based on the unit structure you report on your acreage report and qualify for only for the crop for which a projected price could not b& established unless the remaining crop In the unit would no longer qualify for a whole-farm unit, in such case your unit division for the remaining crops will be based on the unit structure you report on your acreage report and qualify for.

(b) Unless fimited by the Crop Provisions or Special Provisions, a basic unit as defined in section 1 of the Basic Provisions may be divided into optional units if, for each optional unit, you meet the following:

(1) You must plant the crop in a manner that results in a clear and discernible break in the planting pattern at the boundaries of each optional unit;

(2) All optional units you select for the crop year are identified on the acreage report for that crop year (Units will be determined when the acreage is reported but may be adjusted or combined to reflect the actual unit structure when adjusting a foss. No further unit division may be made after the acreage reporting date for any reason);

(3) You have records. that are acceptable to us, for at least the previous crop year for all optional units that you will report in the current crop year (You may be required to produce the records for all optional units for the previous crop year); and

(4) You have records of marketed or stored production from each optfonal unit maintained in such a manner that permits us to verify the production from each optional unit. or the production from each optional unit is kept separate until !oss adjustment is completed by us.

(c) Each optional unit must meet one or more of the following, unless otherwise specified In the Crop Provisions or flowed by written agreement:

(1) Optional units may be established if each optional unit Is rocated In a separate section where the boundaries are readily discernible:

(i) In the absence of sections, we may consider parcels of land legally fdentffied by other methods of measure, such as Spanish· grants, · provided the boundaries are readily discemibfe, if such parcels can be considered as the equivalent of sections for unit purposes in accordance with FCIC Issued procedures; or

(ii) In the absence of sections as described in section 34(c)(1) or other methods of measure used to establish section equivalents as described in section 34(c)(1)(i); optional units may be established if each optional unit is located in a separate FSA farm serial number in accordance with FCtc·issued·procedure;

(2) In addition to, or instead of, establishing optional units by section. section equivalent or FSA farm serial number, optional units may be based on irrigated and non-Irrigated acreage. To qualify as separate irrigated and non-irrigated optional units, · the non-irrigated acreage· may not continue into the irrigated acreage in·the same rows or planting pattern. ·The irrigated acreage may not extend beyond the point at which the irrigation system can ·dellvet the quantity of water needed to produce ·the yield on which the guarantee is based,·excepfthe comers of a field in which a center-pivot irrigation ·system is used may be considered as irrigated ·acreage if the comers of a field in which a center-pivot irrigation system is used do not. qualify as a separate non-irrigated optional unil In this case, ·production from both practices will be used to determine your approved yield; and

(3) In addition to, or Instead of, establishing optional units by section, section equivalent or FSA farm serial number, or irrigated and non-Irrigated acreage, separate optional units may be established for acreage of the insured crop grown and insured under an organic farming practice. Certified organic, transitional and buffer zone acreages do not individually qualify as separate units. (See section 37 for additional provisions regarding acreage insured under an organic farming practice).

(d) Optional units are not availab!e for crops insured under a Catastrophic Risk Protection Endorsement.

(e) If you do not comply fully with the provisions in this section, we will combine all optional units that are not in compUance with these provisions into the basic unit from which they were formed. We will

combine the optionaJ units at any time we discover that you have failed to comply with these provisions. If failure to comply with these provisions fs detennined by us to be Inadvertent. and the optional units are combined into a basic unit, that portion of the additional premium paid for the optional units that have been combined wiU be refunded to you for the units combined.

35. Multiple Benefits.
(a) If you are eligible to receive an indemnity and are also eligible to receive benefits for the same loss under any other USDA program, you may receive benefits under both programs. unless specffically limited by the crop insurance contract or by law.
(b) Any amount received for the same loss from any · USDA program, in addition to the crop Insurance payment. wrll not exceed the difference between the crop insurance payment and the actual amount of the foss, unless otherwise provided by law. The amount of the actual loss is the difference between the total value of the insured crop before the Joss and the total value of the insured crop after the loss.
  (1) For crops for which revenue protection Is not available:
    (i) If you have an approved yield, the total value of the crop before the foss is your . approved yield times the highest price election for the crop; and
    (ii) If you have an approved yield, the total value of the crop after the foss Is your production to count times the highest price election for the crop; or
    (iii) If you have an amount of insurance. the total value of the crop before the loss is the highest amount of insurance available for the crop; and
    (iv) If you have an. amount of insurance. the total value of the crop after the loss is your production to count times . the price contained in the · Crop Provisions for valuing production to. count.    :
  (2) For crops for ·which revenue protection is available and:
    (i) You elect yield protection:
      (A) The total value· of the crop before the loss is your approved yield times the applicable· projected price (at the 100 percent price level) for the crop; and
      (B) The total value of the crop after the loss is your production to count times the applicable projected price (at the 100 percent price level) for the crop; or
    (li) You elect revenue protection:
      (A) The total value of the crop before the loss is your approved yield times the higher of the applicable projected price or harvest price for the crop (If you have elected the harvest price exclusion, the applicable projected price for the crop will be used); and
      (8) The total value of the aop after the loss is your production to count times the harvest price for the crop.
(c) FSA or another USDA agency, as applicable, will detennlne and pay the additional amount due you for

any applicable USDA program. after first considering the amount of any crop Insurance Indemnity.

36. Substitution of Yields.
(a) When you have actual yields in your production history database that, due to an insurable cause of loss, are less than 60 percent of the applicable transitional yield you may elect, on an individual actual yield basis, to exclude and replace one or more of any such yields within each database.
(b) Each election made In section 36(a) must be made on or before the p uctfon reporting date for the insured crop and each such electiol'l will remain in ffect for succeeding years unless canceled by the production reporting date for the succeedfng crop year. If you cancel an election, the actual yield will be used In the database. For example. if you elected to substitute yields fn your database for the 1998 and 2000 crop year, for any subsequent crop year.· you can elect to cancel the substitution for either or both years.
(c) Each excluded actual yield Will be replaced with a yield equal ·to 60 percen of the applicable f:!ansHional yield for the crop year in which the yield is being replaced (For example, if you elect to exclude a 2001 crop year actual 'yield, the transitional 'yield in effect for the 200 crop year In the county will be used. If you also elect to exclude a 2002 crop year actual yield, the transitional yield in effect fot the 2002 crop year in the county wm be used). The· replacement yields Will be used In the same mann r as actual yields for the purpose of calculating the approved yield.
(d) Once you have elected to exclude an actual yield from e database. the replacement yield will remain in effect until such time as that crop year IS no longer il1cluded in the database unless this election is canceled in accordance    section 36(b).
(e) Although your· approved yield will be used to determine your . amount of premium owed. the premium rate will be increased to cover !he additional risk associated wHh the· substitution of higher yields.    ·· ·.    ·

37. Organic Farming Practices.
(a) In accordance With se9flon 8(b)(2), insurance will not be provided for any crop grown using an organic farming practice, unless 'the Information needed to determine a premium rate for an ,organic farming practice is specified on the actuarial table. or insurance is allowed by a written agreement.
(b) If insurance is provided for an organic farming practice as specified In section 37(a), only the following acreage will be insured under such practice:
  (1) Certified organic acreage;
  (2) Transitional acreage being converted to certified organic acreage In accordance with an organic plan; and
  (3) Buffer zone acreage.
(c) On the date you report your acreage. you must have:
  (1) For certified organic acreage. a written certification in effect from a certifying agent indicating the name of the entity certified, effective date of certification, certificate number, types of commodities certified. and name and address of the certifying agent (A ,certificate

issued to a tenant may be used to qualify a landlord or other similar arrangement);

(2) For transitional acreage, a certificate as described in section 37(c)(1), or written documentation from a certifying agent indicating an organic plan is in effect for the acreage; and

(3) Records from the certifying agent showing the specific location of each field of certified organic, transitional, buffer zone, and acreage not maintained under organic management.

(d) If you claim a foss on any acreage Insured under an organic farming practice, you must provide us with copies of the records required In section 37(c).

(e) If any acreage qualifies as certified organic or transitional acreage on the date you report such acreage, and such certifteatlon is subsequently revoked by the certifying agent, or the certifying agent no longer considers the acreage as transltfonal acreage for the remainder of the crop year, that acreage. will remain Insured under the reported practice for which it qualified at the time the acreage was reported. Any loss due to failure to comply with organic standards will be considered an uninsured cause of loss.

(f) Contamination by application or drift of prohibited substances onto land on which crops are grown using organic fanning practfces will not be an insured peril on any certified organic, transitional or buffer zone acreage

(g) In addition to the provisions contained in section 17(f), prevented planting coverage will not be provided for any acreage based on an organic fanning practice in· excess of the number of acres that will be grown under an organic farming practice and shown as such fn the records required in section 37(c).

(h) In lieu of the provisions contained in section 17(f)(1) that specify prevented planting acreage within a field that contains planted acreage will be considered to be acreage of the same practice that is planted in the field, prevented planting acreage will be considered as ·organic practice acreage if it is identified as certified organic, transitional, or buffer zone acreage ill the organic plan.

# EXHIBIT "B"

## AFFIDAVIT OF BRUCE GAMBLE



FILED
2014-DCL-03489
2/5/2015 2:35:00 PM
Eric Garza
Cameron County District Clerk
By Brenda Ramirez Deputy Clerk
4038683

AFFIDAVIT OF BRUCE GAMBLE

THE STATE OF TEXAS

COUNTY OF CAMERON

BEFORE ME, the undersigned authority, on this day personally appeared BRUCE GAMBLE, as Partner for BRUCE GAMBLE FARMS, known to me to be the person whose signature appears below, who, after being duly sworn, deposed and stated that the following statement is within his personal knowledge, that he is competent to make this Affidavit, and that all statements herein are true and correct.

"My name is BRUCE GAMBLE, and I reside in La Feria, Cameron County, Texas. I am over the age of twenty-one (21) years of age and competent to make this affidavit because I have personal knowledge of all facts set forth in this affidavit. The facts stated herein are true and correct.

I purchased crop insurance for my crops for Crop Year 2013 from Hudson Insurance Company. In purchasing said insurance I had an oral agreement with Casey Clipson with Crop Guard, Inc., the local agent, that I was to insure my crops from any loss that may I may sustain within crop year 2013. The terms of my agreement with Casey Clipson were performable within one year of the inception of the agreement.

FURTHER, Affiant sayeth not."

BRUCE GAMBLE

SUBSCRIBED AND SWORN TO BEFORE ME by the said BRUCE GAMBLE on this 5th day of February, 2015.

Notary Public, State of Texas



LUCINDA V ROSIGNOL
My Commission Expires
December 16.2018

EXHIBIT "B"

# EXHIBIT "C"

## AFFIDAVIT OF BRIAN JONES

FILED
2014-DCL-03489
2/6/2015 10:28:34 AM
Eric Garza
Cameron County District Clerk
By Brenda Ramirez Deputy Clerk
4049712

## AFFIDAVIT OF BRIAN JONES

THE STATE OF TEXAS

COUNTY OF CAMERON

BEFORE ME, the undersigned authority, on this day personally appeared BRIAN JONES, as Owner of BRIAN JONES FARMS, known to me to be the person whose signature appears below, who, after being duly sworn, deposed and stated that the following statement is within his personal knowledge, that he is competent to make this Affidavit, and that all statements herein are true and correct.

"My name is BRIAN JONES, and I reside in Edcouch, Hidalgo County, Texas. Iam over the age of twenty-one (21) years of age and competent to make this affidavit because I have personal knowledge of all facts set forth in this affidavit. The facts stated herein are true and correct.

I purchased crop insurance for my crops for Crop Year 2013 from Hudson Insurance Company. In purchasing said insurance I had an oral agreement with Casey Clipson with Crop Guard, Inc., the local agent, that I was to insure my crops -from any loss that may I may sustain within crop year 2013. The terms of my agreement with Casey Clipson were performable within one year of the inception of the agreement.

FURTHER, Affiant sayeth not."

BRIAN JONES

SUBSCRIBED AND SWORN TO BEFORE ME by the said BRIAN JONES on this 6th day of February, 2015.

Lucinda V. Rosignol
Notary Public, State of Texas

LUCINDA V RDSIGNOL
My Commission Expires
December 16, 201B

"EXHIBIT "C"

. EXHIBIT "D"

AFFIDAVIT  OF  JIM  GAMBLE

FILED
2014-DCL-03489
2/5/2015 2:35:00 PM
Eric Garza
Cameron County District Clerk
By Brenda Ramirez Deputy Clerk
4038683

## AFFIDAVIT OF JIM GAMBLE

THE STATE OF TEXAS

COUNTY OF CAMERON

BEFORE ME, the undersigned authority, on this day personally appeared JIM GAMBLE, as Partner for JIM GAMBLE FARMS. known to me to be the person whose signature· appears below. Who, after being duly sworn, deposed and stated that the following statement is within his personal knowledge, that he is competent to make this Affidavit, and that all statements herein are true and correct. ·

"My name is JIM GAMBLE. and I reside in La Feria. Cameron County, Texas. Iam over the age of twenty-one (21) years of age and competent to make this affidavit because · I have personal knowledge of all facts set forth in this affidavit. The facts stated herein . are true and correct.

I purchased crop insurance for my crops for Crop Year2013 from Hudson Insurance. Company. In purchasing said insurance I had an oral agreement with Casey Clipson with Crop Guard, Inc. the local agent. that I was to insure my crops from any loss that may I may sustain within crop year 2013. The terms of my agreement with Casey Clipson were performable within one year of the inception of the agreement.

FURTHER, Affiant sayeth not."

JIM GAMBLE

SUBSCRIBED AND SWORN TO BEFORE ME by the said JIM GAMBLE on this 5th day of February, 2015.

Notary Public, State of Texas



LUCINDA V ROSIGNOL
My Commission Expires
December 16, 2018



"EXHIBIT "D"